UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELLIPSO, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| VIRTUAL GEOSATELLITE LLC, | ) | Civil Action No. 1:06cv01373 (JR) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN E. DRAIM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MOTION FOR SUMMARY JUDGMENT AND FOR
AN AWARD OF ATTORNEYS FEES AND COSTS</u>**

John E. Draim ("Mr. Draim"), by counsel, hereby moves this Court for summary

judgment in his favor pursuant to Federal Rule of Civil Procedure 56 and for an award of

the attorneys fees and costs incurred in defending this action pursuant to D.C. Code §

36-404.  In support of this Motion, Mr. Draim submits the accompanying Memorandum

with Exhibits and Declarations of John E. Draim and John F. Anderson.

JOHN E. DRAIM

By Counsel

TROUTMAN SANDERS, LLP
1660 International Drive, Suite 600
McLean, Virginia  22102
(703) 734-4356

By:     __/s/ John F. Anderson_____
        John F. Anderson
        (D.C. Bar No. 393764)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.,                          )
                                        )
and                                     )
                                        )
VIRTUAL GEOSATELLITE LLC,               )        Civil Action No. 1:06cv01373 (JR)
                                        )
        Plaintiffs,                     )
                                        )
                v.                      )
                                        )
JOHN E. DRAIM,                          )
                                        )
        Defendant.                      )
                                        )

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AND
FOR AN AWARD OF ATTORNEYS FEES AND COSTS**

        John E. Draim ("Mr. Draim"), by counsel, submits this Memorandum in support of

his Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and

for an award of attorneys fees and costs pursuant to D.C. Code § 36-404.  As shown

below, plaintiffs' most recent Complaint asserting a claim for "theft of trade secrets"

under D.C. Code § 36-401, et seq. is fatally deficient for a variety of reasons – all of

which plaintiffs were aware of and completely ignored when they filed this action against

Mr. Draim.  The undisputed material facts reveal: (1) plaintiffs' claim for "theft of trade

secrets" is based on the filing of patent applications by Mr. Draim in 2000 and 2002 and

is barred by the three-year statute of limitations set forth in D.C. Code § 36-406; (2) that

the alleged "trade secrets" that form the basis of plaintiffs' claim were disclosed publicly

by the plaintiffs prior to any alleged "misappropriation" by Mr. Draim and were not the

subject of reasonable efforts to maintain their secrecy; (3) plaintiffs have discharged and

released the claim asserted against Mr. Draim in this Complaint; and (4) plaintiffs previously asserted and dismissed this claim in the earlier filed action before this Court and therefore they are estopped from relitigating the claim in this action.

This new Complaint is nothing more than a tactic by the plaintiffs to further harass Mr. Draim following the recent resolution and trial of the claims filed by the parties in 2001.  Those claims were litigated for five years prior to a trial being held before Judge Facciola on the single issue that the parties had not resolved – whether Mr. Draim was entitled to the payment of patent bonuses for patents on which he was a named inventor and that issued after he left plaintiffs' employment.  As shown below, not only should this action be dismissed, but Mr. Draim should be awarded his attorneys fees in defending this action since it was brought in bad faith.  D.C. § 36-404(1).

<u>**STATEMENT OF MATERIAL FACTS**</u>

**Employment History**

1.      Mr. Draim worked for the plaintiffs either as a consultant or an employee from 1992 until May 2000.  (Complaint ¶ 6).  During his employment with the plaintiffs, Draim agreed to assign his inventions to the plaintiffs.  (Complaint ¶ 7).  In May 2000 Draim resigned from the plaintiffs' employment and went to work for a company that had been formed earlier that year called VGS, Inc. ("VGS").  (Complaint ¶ 10).  VGS was formed by Peter Sahagen and several others who previously had been associated with the plaintiffs and other entities affiliated with David Castiel.  As a part of his employment agreement with VGS and later Space Resources of America ("SRA"), Draim assigned his inventions to either VGS or SRA and as a result Mr. Draim is not the owner of any of the patents referred to in plaintiffs' Complaint.  (Complaint ¶¶ 19, 20, 22, 24).

**Plaintiffs' Alleged Trade Secrets**

2.      On September 10, 1999, plaintiffs filed a provisional patent application with the USPTO titled "Fixed Satellite Constellation System Employing Non-Geosynchronous Elliptical Orbits with Common Ground Tracks" that was assigned application number 60/153,289 ("the '289 provisional application").  Mr. Draim is listed as a co-inventor on this provisional application.  (Complaint ¶ 8).  A copy of the '289 provisional application is attached as Exhibit 1.  (Draim Decl. ¶ 2).  Plaintiffs filed a non-provisional patent application based on the '289 provisional application that issued as U.S. Patent No. 6,954,613 on October 11, 2005.  (Complaint ¶¶ 17, 32).

3.      On February 3, 2000, plaintiffs filed a provisional patent application with the USPTO titled "Creating an Array of Virtual Geostantional [sic] Satellites that Provide 2 Degree Separations at Apogee (and throughout active arcs), and Non-Interference with the Geo Ring" that was assigned application number 60/180,025 ("the '025 provisional application").  (Complaint ¶ 9).  Mr. Draim is listed as a co-inventor on this provisional application.  (Complaint ¶ 9).  A copy of the '025 provisional application is attached as Exhibit 2.  This provisional application refers to a satellite system that could provide 168-slots (active satellites) at all times.  (Exhibit 2, pg. 5; Draim Decl. ¶ 3).  Plaintiffs subsequently filed a non-provisional patent application based on the '025 provisional application entitled "Virtually Geostationary Satellite Array" that eventually issued as U.S. Patent No. 6,695,260 on February 24, 2004.  (Complaint ¶ 23).

**Mr. Draim's Alleged Misappropriation**

4.      On November 3, 2000, Mr. Draim filed a patent application with USPTO that plaintiffs state was designed to "interfere" with the subject matter in the '025

provisional application.  (Complaint ¶ 18).  Attached as Exhibit 3 is a copy of a USPTO

cover sheet dated November 3, 2000, for a patent application filed by Mr. Draim that

was produced to the plaintiffs in response to discovery in January 2003 (Draim 00298)

and was marked as Exhibit 3 to the deposition of Mr. Draim taken on April 11, 2003.

This document was also introduced as Exhibit 17 in the trial before Judge Facciola on

April 18, 2006.  (Anderson Decl. ¶ 4).  During this same deposition on April 11, 2003,

plaintiffs presented Mr. Draim with a letter dated October 23, 2000 to SRA's patent

counsel (marked as Deposition Exhibit 4) that references a mark-up of the 168-slot

patent filing.  This same letter was introduced as Exhibit 16 in the trial before Judge

Facciola on April 18, 2006.  A copy of the October 23, 2000 letter is attached as Exhibit

4.  (Anderson Decl. ¶ 5).

    5.    On April 15, 2003, in response to a Subpoena issued to SRA, a copy of

the 168-slot patent application was produced to plaintiffs' counsel in the earlier action

(SRA 0208-0272).  A copy of that application is attached as Exhibit 5.  (Anderson Decl.

¶ 6).  Following a request from plaintiffs' counsel for a copy of the file history for that

patent application, the file history was produced on April 17, 2003 to plaintiffs' counsel in

the previous action.  A copy of the letters to plaintiffs' counsel in that action dated April

15 and 16, 2003, enclosing the file history that had been numbered SRA 3036-3487 are

attached as Exhibit 6.[1]  Part of the production provided to plaintiffs' counsel in April

2003, was SRA document numbers 3115-3172, which is a copy of the International

Application for the 168-slot invention that was published under the Patent Cooperative

---

[1] A copy of the 450 pages of the file history for this patent application that were
produced on April 17, 2003 can be made available to the Court if it wishes to review
those documents.

Treaty on May 16, 2002.  A copy of this published application is attached as Exhibit 7. (Anderson Decl. ¶ 7).  This International Application is identical to the application filed with the USPTO for the 168-slot invention in November 2000 (compare Exhibit 5, SRA 216-272 to Exhibit 7, SRA 3117-3172).

6.    On November 13, 2000, Mr. Draim filed a patent application titled "System and Method for Implementing a Constellation of Non-Geostationary Satellites that does not Interfere with the Geostationary Satellite Ring" that was assigned application number 09/709,280 ("the '280 application").  (Complaint ¶ 20).[2]  This application resulted in U.S. Patent No. 6,701,126 being issued on March 2, 2004 (the '126 Patent). (Complaint ¶ 27).  A copy of the '126 Patent is attached as Exhibit 8.  (Anderson Decl. ¶ 8).  In April 2003 a copy of the '280 application and a copy of the file history for the '126 Patent was produced to plaintiffs' counsel by SRA.  (SRA 30–87, 602-847).  As a part of that production, a copy of the International Application for the '280 application published on May 23, 2002 was also provided to plaintiffs' counsel.  A copy of the International Application (SRA 618-673) is attached as Exhibit 9.  (Anderson Decl. ¶ 9).

7.    On December 29, 2000, Mr. Draim filed a patent application titled "System and Method for Implementing a Constellation of Non-Geostationary Satellites that Provides Simplified Satellite Tracking" that was assigned application number 09/750,047 ("the '047 application").  (Complaint ¶ 22).  The '047 application was published pursuant to 35 U.S.C. §122 on September 19, 2002.  (Complaint ¶ 25).

---

[2] Plaintiffs' Complaint incorrectly refers to this filing as the '820 application.  (Anderson Decl. ¶ 8).

8.     On February 22, 2002, Mr. Draim filed a patent application titled "System and Method for Satellite Communications" that was assigned application number 10/079,411 ("the '411 application").  (Complaint ¶ 24).  The '411 application was published pursuant to 35 U.S.C. §122 on September 26, 2002.  (Complaint ¶ 26).

9.     In late December 2002 and continuing into early January 2003, David Castiel wrote Mr. Draim and his wife a series of letters referring to these applications, asserting that Mr. Draim had "fenced" property of Ellipso and demanding that the applications be assigned to Virtual Geo.  A copy of these letters is attached as Exhibit 10.  (Draim Decl. ¶ 4).

### Previous Litigation Between the Parties

9.     In October 2001 Mr. Draim filed an action in the United States District Court for the Eastern District of Virginia, asserting various claims against the plaintiffs in this action and against David Castiel.  That case was transferred to the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1631 and was assigned Civil Action No. 1:01cv2690 (JR/JMF).  (Anderson Decl. ¶ 2).

10.     On November 5, 2001, the plaintiffs in this action (along with Mobile Communications Holdings, Inc.) filed an action against Mr. Draim in the D.C. Superior Court.  A copy of that Complaint is attached as Exhibit 11.  (Anderson Decl. ¶ 3). Paragraph 31 of that Complaint alleges that since Mr. Draim left MCHI he "has filed several patent applications based upon purported inventions that are actually based upon the proprietary technology of the Ellipso System and the Virgo System".  One of the four counts asserted in that Complaint was for violation of the District of Columbia Uniform Trade Secrets Act (Count III).  Mr. Draim removed that case to the United

States District Court and eventually that case was consolidated with Mr. Draim's earlier

filed action under Civil Action No. 1:01cv2690 (JR/JMF).  An Amended Complaint

containing the same allegation relating to Mr. Draim filing patent applications and the

same claim under the D.C Trade Secrets Act was filed by the plaintiffs on March 4,

2002.  (Anderson Decl. ¶ 3).  A copy of that Complaint is attached as Exhibit 12.  (See

Exhibit 12, ¶ 31 and Count III).

   11. Attached as Exhibit 13 is an expert report from Dr. Bartlett produced in the

earlier litigation in December 2002 by the plaintiffs in this action.  (Anderson Decl. ¶ 10).

In that report Dr. Bartlett lists various materials he has reviewed and opines as to the

similarities of the Virtual Geo system that was described in patents issued and applied

for by the plaintiffs in this current action and the COBRA system that was the subject of

patent applications filed by Mr. Draim's employers following May 25, 2000.  In addition,

Dr. Bartlett states that he worked with Virtual GeoSatellite LLC since its inception, that

he is familiar with the Virtual Geo technology and that he has worked on the filings with

the FCC for authority to deploy the Virgo system.  He then states that the Virgo system

that plaintiffs filed with the FCC for authority to build, deploy and operate is the subject

of the provisional patent application that was filed on February 3, 2000 (which has been

designated the '025 provisional application).

   12. Attached as Exhibit 14 is the Pretrial Statement filed by the defendants in

the earlier action (plaintiffs in the present action) on April 24, 2003.  (Anderson Decl. ¶

11).  In paragraph 5, plaintiffs state their unique patented technology was the basis

upon which they applied to the FCC in January 1999 for a license to operate a global

satellite system.  In paragraph 28 of this statement filed with the Court they state that

Mr. Draim used MCHI technology and developed and applied for patents on the COBRA variation of the MCHI technology including the patent applications filed on September 29, 2000, November 13, 2000 and December 29, 2000. (Exhibit 14, ¶ 28). In addition, they state that in November 2000, Mr. Draim sold the 168-slot patent to SRI and applied for a patent in SRI's name. (Exhibit 14, ¶ 34).

13.    The consolidated case was set for trial on May 5, 2003. On April 28, 2003, Mobile Communications Holdings, Inc. filed a voluntary petition under Chapter 11 of the Bankruptcy Code and requested that all proceedings be stayed, including the trial that was to begin the following week. The request for a stay was granted and the trial was taken off calendar. Mr. Draim then petitioned the Bankruptcy Court for a lift of the automatic stay and the Bankruptcy Court granted Mr. Draim's request on June 18, 2003. The bankruptcy action was dismissed on July 24, 2003. (Anderson Decl. ¶ 12).

14.    After several settlement conferences before Judge Facciola, in 2005 the parties agreed to dismiss various claims and to have a single issue presented to the Court for determination. The plaintiffs in this case agreed to dismiss the claims asserted against Mr. Draim in that action (including the claim under the D.C. Uniform Trade Secrets Act) and Mr. Draim agreed to dismiss his claims against David Castiel and his claims for rescission of the patent assignments and his claim for an equity interest in Virtual Geosatellite, LLC ("Virtual Geo"). The remaining issue to be tried was whether Mr. Draim was entitled to payments for bonuses for the patents on which he was a named inventor and that issued after he resigned from his employment with the plaintiffs in this action. This agreement was reflected in the Joint Statement filed with the Court on March 17, 2006, that is attached as Exhibit 15. (Anderson Decl. ¶ 13).

15.    On November 28, 2005, this Court entered an Order referring that matter to Judge Facciola for all purposes, including the entry of judgment.  That case was tried before Judge Facciola on April 18, 2006.  On May 15, 2006, Judge Facciola issued his Findings of Fact, Conclusions of Law and Order in which he found that Mr. Draim was entitled to an award of $78,125.02 for patent bonuses plus prejudgment interest from the date of issuance of each patent.  On May 23, 2006, the Court entered a Final Judgment in the amount of $78,125.02 plus $15,393.87 in prejudgment interest.  The defendants in that action (plaintiffs in this action) filed a motion to amend the Findings of Fact and Conclusions of Law and Order and a motion for a new trial.  Those motions were denied on March 14, 2007 and a notice of appeal was filed on April 11, 2007.  (Anderson Decl. ¶ 14).

## Other Litigation

16.    The formation of VGS and SRA by Peter Sahagen prompted the filing of various lawsuits in Delaware, New York and the District of Columbia.  (Complaint ¶ 23).  After several years of litigation, Castiel and the Castiel entities settled their claims against Sahagen and the Sahagen entities.  (Complaint ¶ 30).  A copy of the Settlement Agreement executed by Castiel and the Castiel entities in July 2005 is attached as Exhibit 16.  (Anderson Decl. ¶ 15).  The Settlement Agreement specifically mentions the consolidated Draim action that was pending in this Court (page 2) and states that the parties intend to resolve all claims and disputes between them including their claim of ownership to the intellectual property set forth in Exhibits A and B (page 3).  Exhibits A and B identify the patents issued from the applications referred to paragraphs 8, 9, 17, 20, and 22-29 of the Complaint.

17.    In conjunction with the Settlement Agreement, a General Release of all claims and causes of action, whether known or unknown was executed that specifically included John Draim as a releasee.  (Exhibit 16).

18.    On July 20, 2006, plaintiffs filed another Complaint in the D.C. Superior Court against Mr. Draim, again alleging that Mr. Draim misappropriated trade secrets when he left their employment in May 2000.  Mr. Draim removed the Complaint to this Court on August 3, 2006.  Mr. Draim filed a Motion to Dismiss the Complaint on August 9, 2006, raising the same issues presented in this Motion of Summary Judgment but not attaching the various exhibits that accompany this Memorandum.  Plaintiffs opposed the Motion to Dismiss and the Court denied the Motion to Dismiss on March 20, 2007, indicating that the record on the Motion to Dismiss was insufficient and that the issues raised were not appropriate for a resolution on a Motion to Dismiss.   During the conference with the Court on April 12, 2007, plaintiffs refused to agree to a dismissal of the Complaint, thereby requiring Mr. Draim to incur the cost and expense of preparing and filing this Motion for Summary Judgment.

**Public Disclosure of Inventions by Plaintiffs**

19.    In January 1999 plaintiffs filed an application for authority to launch and operate a global fixed-satellite service system employing nongeostationary satellites in sub-synchronous elliptical orbits with the Federal Communications Commission.  A copy of the FCC application is attached as Exhibit 17. (Anderson Decl. ¶ 16).  On March 23, 1999, the FCC made a finding that the application (along with several others) would be available for review and comments from the public.  A copy of the FCC Notice relating to plaintiffs' January 8, 1999 application is attached as Exhibit 18.  (Anderson Decl. ¶

16).  Page 4 of Exhibit 18 refers to plaintiffs' FCC application.  The FCC application filed in January 1999 describes the same satellite constellation as the one set forth in the '289 provisional application, including reprints of charts contained in the '289 provisional application.  For example, compare Exhibit 17, Table 3.2-1 on page 14 to Exhibit 1, Table 1; Exhibit 17, Table 3.2-2 on page 17 to Exhibit 1, Table 2.  (Draim Decl. ¶ 5).

20.     At a conference in Geneva in November 1999, Jay Brosius (plaintiffs' employee) gave three public presentations to an international cross-section of attendees that described the Virgo system claimed in the '289 provisional application.  Attached as Exhibit 19 are documents produced by the plaintiffs in the previous litigation concerning the Geneva presentation.  (Anderson Decl. ¶ 17).

21.     Attached as Exhibit 20 is an article authored by David Castiel, John Draim and Jack Anderson describing the Virgo system that was publicly distributed at the Fifth European Conference on Satellite Communications in Toulouse, France in November 1999.  This paper describes the same satellite constellation that is claimed in the '289 provisional application.  (Draim Decl. ¶ 7).

22.     Attached as Exhibit 21 is a presentation given by plaintiffs' representatives in May 2000 at the World Radiocommunication Conference in Istanbul, Turkey that describes not only the basic Virgo orbits in the '289 provisional application but also the 168-slot improvements in the '025 provisional application.  (Draim Decl. ¶ 8).

**ARGUMENT**

**Summary of Argument**

Plaintiffs filed this action once again asserting a claim against Mr. Draim for violation of the District of Columbia Trade Secrets Act, D.C. Code § 36-401, *et seq.*

("the Act").  To prevail on a claim for relief under the Act, a plaintiff must prove that a **trade secret** has been misappropriated.  The Act defines a trade secret as information that derives actual or potential independent economic value from not being generally known to another and the information is the subject of reasonable efforts to maintain its secrecy.  D.C. Code § 36-401(4).  Plaintiffs assert that the two provisional patent applications filed on September 10, 1999 and February 3, 2000 (while Mr. Draim was still employed with the plaintiffs) contain the misappropriated trade secrets.  Therefore in order to prevail, plaintiffs must prove that at the time of the alleged misappropriation by Mr. Draim, the information contained in those two provisional patent applications **was not known to the public** and that the information was **the subject of reasonable efforts to maintain its secrecy**.

The Act also requires that "an action for misappropriation must be brought within 3 years after the misappropriation is discovered or, by the exercise of reasonable diligence, should have been discovered".  D.C. Code § 36-406.  As discussed in detail below, the facts are undisputed that plaintiffs knew of the alleged misappropriation in November 2001 when they filed their first Complaint against Mr. Draim alleging a claim for misappropriation under the Act.  Furthermore, during that litigation and more than three years prior to the filing of this action, the plaintiffs were provided with copies of all the documents underlying their current claim in this action.  Plaintiffs' own letters and their filings with this Court in 2002 and 2003 reveal the full extent of their knowledge relating to Mr. Draim's alleged misappropriation.

The claims for misappropriation asserted by plaintiffs in the earlier action (including their claim under the Act) were dismissed as a part of the parties' agreement

for Mr. Draim to dismiss his claims against Mr. Castiel and his claims for ownership of stock and rescission of the patent assignments in return for the plaintiffs to dismiss all of their claims against Mr. Draim.  Pursuant to that agreement, the only issue left to be resolved by the Court was whether Mr. Draim was entitled to a payment for patent bonuses for patents on which he was a named inventor and that issued after he left plaintiffs' employment.  Plaintiffs cannot now refile the identical claim against Mr. Draim that they dismissed once the patent bonus issue was resolved in Mr. Draim's favor.

An additional ground for dismissing this action is the General Release that was executed as a part of the global settlement agreement with the Sahagen-related entities in July 2005.  That General Release specifically states that all claims against John Draim, whether known or unknown, are released and discharged.

The Act provides that if a claim of misappropriation is made in bad faith the Court may award the prevailing party reasonable attorneys fees.  D.C. Code § 36-404. Plaintiffs' refiling of the same claim it presented and dismissed in the earlier action, a claim that it released and settled in the Settlement Agreement executed in July 2005, a claim that it knew about for more than three years prior to the filing of this action and a claim that is based on information that plaintiffs publicly disclosed prior to the alleged misappropriation, reflect the bad faith nature of this action and call for not only its dismissal, but for an award of attorneys fees in defending this action as well.

### Plaintiffs' claims are barred by the statute of limitations

As shown in the accompanying exhibits, it is clear that any claim under the Act would be barred by the statute of limitations.  The Act requires that any action must be brought within three years of the alleged misappropriation.  There is no question that

plaintiffs were aware of Mr. Draim's filing of the patent applications complained of in the Complaint by at least April 2003 -- more than three years before this action was filed in July 2006.  By the end of April 2003, plaintiffs had in their actual possession a copy of all the patent applications filed by Mr. Draim and SRA and complained of in this action.

Plaintiffs' Complaint refers to four separate patent applications that Mr. Draim filed after he left plaintiffs' employment.  These include the November 3, 2000 application called the "satellite slot application" in the Complaint; the '280 application filed on November 13, 2000; the '047 application filed on December 29, 2000; and the '411 application filed on February 22, 2002.  (Complaint ¶¶ 18, 20, 22, 24).  Plaintiffs admit in the Complaint that two of these applications were published in September 2002 and therefore would not be within the three-year statute of limitations.  (Complaint ¶¶ 25, 26, 28).  In an attempt to overcome the statute of limitations defense as to the other two patent applications, plaintiffs allege in the Complaint that the specifics of the patent application filed in November 2000 "remain unknown" and that the '280 application remained confidential and not published until March 2, 2004 and therefore this action was brought within three years of March 2, 2004.  (Complaint ¶¶ 18, 27-28).  Plaintiffs' assertion of these blatantly false allegations in a pleading should not be condoned by the Court.

As to the November 2000 patent application the facts are clear – plaintiffs knew all there was to know about that patent application long before July 20, 2003 (three years before this action was filed).  On December 24, 2002, David Castiel wrote to Mr. Draim (with a copy to his wife) stating "It has come to our attention that on November 3, 2000, you filed a non-provisional patent, using the provisional application of February

2000 as the basis to establish a priority date" and claiming that he had "fenced" Ellipso's property and that the Company would avail itself of all legal remedies to protect its intellectual property from fraudulent misappropriation, conversion and theft. (Exhibit 10). During Mr. Draim's deposition on April 11, 2003, he was questioned about two documents relating to this patent application. (Exhibits 3 and 4). Furthermore, in April 2003 plaintiffs were provided with copies of not only the initial application filed in November 2000, but the entire file history related to that patent. (Exhibits 5 and 6). Not only were plaintiffs given a copy of these materials by counsel for SRA in the earlier litigation, but on May 16, 2002, this patent application was published and publicly available pursuant to the International Patent Cooperation Treaty. (Exhibit 7). A copy of the published International Application was included in SRA document production to the plaintiffs in April 2003. The pretrial statement filed by the plaintiffs in the earlier action on April 24, 2003, references the 168-slot patent application filed in November 2000 indicating that Mr. Draim had filed a patent application for that invention for his new employer. (Exhibit 14, pg. 11, ¶ 34).

The facts are equally clear as to plaintiffs' knowledge, awareness and the public disclosure of the '280 application. On May 23, 2002, this patent application was published and was publicly available pursuant to the International Patent Cooperative Treaty. (Exhibit 9). On December 26, 2002, Mr. Castile sent Mr. Draim and his wife another threatening letter, this time referring to the patent application filed on November 13, 2000. (Exhibit 10). In April 2003, plaintiffs were provided with complete copies of the patent application filed on November 13, 2000 (SRA 30–87) and the file history relating to that patent (SRA 602-847). As a part of that production, a copy of the

International Application published in May 2002 was provided to the plaintiffs. (Exhibit 9, SRA 618-673). As shown in the pretrial statement filed by the plaintiffs in the earlier action on April 24, 2003, the November 13, 2000 patent application is specifically referred to by SRA's patent attorneys' file number. (Exhibit 14, pg. 10, ¶ 28).

Plaintiffs have no basis whatsoever to claim that they were not aware of these publicly available materials since copies of them were produced to their counsel in the earlier litigation in April 2003. The false and misleading allegations in the Complaint that the '280 application remained confidential and was not disclosed until it was issued in March 2004 and that as to the November 3, 2000 application "the specifics of this patent application remain unknown" reveal the bad faith and improper nature of the plaintiffs in bringing this action. Plaintiffs' claim under the Act is barred by the three-year statute of limitations and should be dismissed.

### Plaintiffs Voluntarily Disclosed the Inventions Claimed in the '289 and '025 Provisional Applications

The basis of plaintiffs' trade secrets claim is the inventions claimed in the patent applications filed in September 1999 and February 2000 referred to in paragraphs 8 and 9 of the Complaint. However, it is clear that no efforts were made to keep the inventions described in those two provisional patent applications secret. In fact, plaintiffs undertook concerted, public efforts to disclose and market the inventions claims in those applications. (Draim Decl. ¶ 9).

As to the '289 provisional application describing the "Virtual Geo Satellite System", plaintiffs disclosed that system in the FCC filing in January 1999. (Exhibit 17). This FCC application was made public and open for comments by the FCC in March 1999. (Exhibit 18). Tables 3.2-1 and 3.2-2 in the FCC filing (Exhibit 18) are identical to

Tables 1 and 2 of the '289 provisional application (Exhibit 1).  Plaintiffs' own expert

stated the FCC filing disclosed the inventions claimed in the provision applications and

plaintiffs admitted that fact in their Pretrial Statement filed with the Court in April 2003.

In November 1999 (two months after the '289 provisional application was filed) plaintiffs

made presentations to the public in which the Virtual Geo Satellite System was shown

and described (Exhibit 19) and distributed a paper at another conference detailing the

Virtual Geo Satellite System (Exhibit 20).  The slides presented to three "packed rooms"

at the ITU in Geneva show the same satellite constellation described in the '289

provisional application.  In addition, the article presented by the plaintiffs at the

European Conference on Satellite Communications in November 1999 also describes

the same constellation in the '289 provisional application including reprints of Table 1

and the Cartesian View Figure from the '289 provisional application.  (Draim Decl. ¶ 7).

As to the '025 provisional application filed in February 2000 relating to the 168-

slot invention, that improvement was also publicly disclosed by the plaintiffs in May

2000 at the World Radiocommunication Conference in Istanbul.  (Exhibit 20).  The

slides from that presentation not only depict the earlier Virtual Geo Satellite System but

also detail the orbits and parameters in the '025 provisional application relating to the

168-slot improvement.  (Compare Exhibit 20, page 46 to the diagram in Exhibit 2, page

5) (Draim Decl. ¶ 8).

There is no basis for plaintiffs to claim that the inventions described in the two

provisional applications are trade secrets.  By the time Mr. Draim filed the first of the

applications complained of by the plaintiffs (November 2000), the inventions described

in those applications were generally known to the public and plaintiffs were not taking

any efforts to maintain their secrecy.  In fact, once a patent application was filed,

plaintiffs would undertake efforts to publicize the invention in order to increase interest

in the company and to obtain investors.  (Draim Decl. ¶ 9).

### Plaintiffs Previously Dismissed Their Trade Secrets Claim

In November 2001 plaintiffs filed an action against Mr. Draim raising various

claims – including a claim under the Act.  Those claims were litigated for almost five

years during which time Mr. Draim was deposed and documents were produced by Mr.

Draim and SRA.  By no later than April 2003 plaintiffs were aware of all the alleged uses

of the information in filing patent applications in that action.  In December 2002 plaintiffs

had produced an expert report opining as to the similarities of the two technologies

(Exhibit 13) and had filed with the Court a Pretrial Statement referring to the patent

applications filed by Mr. Draim (Exhibit 14).  Armed with that knowledge and with the

encouragement of Judge Facciola, the parties agreed to dismiss various claims and to

have the Court try a single issue.  As result, the claims against Mr. Draim were

dismissed (including the claim under the Act) and Mr. Draim dismissed his claims

against David Castiel and his claims for stock ownership and rescission.  (Exhibit 15).

There is no question that the plaintiffs and Draim each agreed to dismiss certain

claims in the previous action and to have the Court resolve the sole remaining claim

relating to patent bonuses.  To the extent plaintiffs had any viable claim under the Act,

plaintiffs agreed to dismiss that claim in the earlier action.

### Plaintiffs Released All Claims Against Mr. Draim

Finally, in July 2005 plaintiffs entered into the Settlement Agreement referenced

in paragraph 30 of the Complaint.  (Exhibit 16).  As a part of that Settlement Agreement,

a General Release was executed whereby all claims, known and unknown, against the

various releasees (specifically including John Draim) were discharged and released.

(Exhibit 16, General Release following Appendix A and B).  To the extent plaintiffs had

any viable claim under the Act against Mr. Draim, plaintiffs have released that claim.

### Mr. Draim is Entitled to an Award of his Attorneys Fees and Costs

The Act provides that the Court may award reasonable fees to the prevailing

party if a claim for misappropriation is made in bad faith.  D.C. Code § 36-404.[3]  If ever a

case calls for the application of this provision, this is the one.  After five years of

litigation and forcing Mr. Draim to try his claim for patent bonuses, plaintiffs re-filed a

claim under the Act on July 20, 2006, soon after the Court entered a Final Judgment in

Mr. Draim's favor.  This lawsuit was nothing but a tactic on plaintiffs' part to attempt to

force Mr. Draim to forego the judgment he obtained in the earlier filed action or incur

additional attorneys fees in defending this meritless claim.  Plaintiffs not only knew the

frivolous nature of the claim when it was filed, but they refused to dismiss the claim

even after Mr. Draim filed a Motion to Dismiss in which he outlined all the reasons why

the claim was barred and had no merit.

As described in this Memorandum and shown in the exhibits, the patent

applications filed by Mr. Draim in 2000 and 2002 were all publicly available in 2002.  But

not only were they publicly available, **they were actually given to plaintiffs' counsel**

**in April 2003** – more than three years before this action was filed.  Plaintiffs' knowingly

false (or at the least grossly negligent) allegations in the Complaint to overcome this

---

[3] Mr. Draim will submit a declaration from his counsel detailing the fees and costs
incurred in defending this action following a decision by the Court.

clear statutory bar reveal their bad faith.  Furthermore, plaintiffs pursued these claims

even after counsel raised this defense in the pleadings filed in August 2006.

Their bad faith is also shown by the fact that the plaintiffs publicly disclosed the

inventions claimed in the two provisional applications once those applications had been

submitted to the PTO.  The inventions in those applications were not trade secrets –

they were inventions that plaintiffs sought patent protection for and then publicized in

order to obtain investors in their operations.  Plaintiffs took no efforts to maintain the

secrecy of the inventions once a patent application had been filed and their allegation of

"trade secret" protection for those inventions is baseless.

Finally, plaintiffs' bad faith is exhibited by their agreeing to dismiss their claims

against Mr. Draim in the earlier case in return for his dismissing his claims against Mr.

Castiel and his claims for his equity interest in the plaintiffs and then re-filing the same

claim against Mr. Draim within months of the adverse verdict.

## CONCLUSION

For the reasons stated above, Mr. Draim requests that the Complaint be

dismissed and that he be awarded his attorneys fees and costs incurred in defending

this action pursuant to D.C. Code § 36-404 (1).

JOHN E. DRAIM

By Counsel

TROUTMAN SANDERS, LLP
1660 International Drive, Suite 600
McLean, Virginia  22102
(703) 734-4356

By:    John F. Anderson
       John F. Anderson
       (D.C. Bar No. 393764)