# Exhibit 5

# Memorandum in Support of Motion for Summary Judgment and for an Award of Attorneys Fees and Costs by John E. Draim

# SMITH, DANAMRAJ & YOUST

A PROFESSIONAL CORPORATION

ATTORNEYS AND COUNSELORS
INTELLECTUAL PROPERTY LAW AND RELATED MATTERS

STEVEN W. SMITH
SHREEN K. DANAMRAJ
LAWRENCE R. YOUST

12900 PRESTON ROAD, SUITE 1200, LB 15
DALLAS, TEXAS 75230-1328

TELEPHONE (972) 720-1202
FAX (972) 720-1139

WRITER'S DIRECT DIAL NUMBER
(972) 392-2696

WRITER'S EMAIL ADDRESS
lawrence@sdylaw.com

November 3, 2000

Mr. John Draim
Space Resource America Corporation
1101 Pennsylvania Avenue N.W.
Suite 600
Washington, DC 20004

Re:    Virtual Geostationary Satellite Constellation and Method of Satellite Communications
       Our File No.: 1324-1010

Dear John:

In regard to the above-referenced matter, enclosed please find the following documents filed today with the United States Patent and Trademark Office:

  (1)  Original Patent Application with Formal Drawings;

  (2)  Declaration and Power of Attorney;

  (3)  Assignment with Recordation Cover Sheet; and

  (4)  Fee Calculation Sheet.

We will advise you promptly upon receipt of anything from the Patent and Trademark Office relating to this application.  In the meantime if you have any questions, please do not hesitate to give me a call.

Very truly yours,

Lawrence R. Youst

Enclosures

SRA 00208
CONFIDENTIAL
ATTORNEYS EYES ONLY

Attorney Docket No. 1324-1010

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In Re Application: | John E. Draim |
| Serial No. | Unknown |
| Filed: | November 2, 2000 |
| Art Unit: | Unknown |
| Examiner: | Unknown |
| For: | Virtual Geostationary Satellite Constellation and Method of Satellite Communications |
| Status: | Applicant Claims Small Entity Status |

Commissioner for Patents
Washington, D.C. 20231

### FEE CALCULATION

| | NUMBER | | NUMBER EXTRA | RATE | BASIC FEE $ 710.00 |
|---|---|---|---|---|---|
| Total Claims | 40 | - 20 = | 20 | x $18= | $ 360.00 |
| Independent Claims | 3 | - 3 = | 0 | x $80 = | $ 0.00 |
| | | | | **Total of Above** | $1070.00 |
| | | | **Reduction by 50% for filing by small entity** | | ($535.00) |
| | | | | **TOTAL FEES** | $535.00 |

The Commissioner is hereby authorized to charge any additional filing fee or credit any over payment to Deposit Account No.: 03-1130. All correspondence related to this application may be addressed to the undersigned at Smith, Danamraj & Youst, P.C., 12900 Preston Road, Suite 1200, LB-15, Dallas, Texas 75230.

Dated this 3rd day of November, 2000

Lawrence R. Youst
Attorney for Applicant(s)
Reg. No. 38,795

Date of Deposit: November 3, 2000.
"EXPRESS MAIL" mailing label number **EL593940130US**
I certify that the accompanying Patent Application is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and is addressed to Box Patent Application; Commissioner for Patents, Washington, DC 20231.

Lawrence R. Youst

SRA 00209
CONFIDENTIAL
ATTORNEYS EYES ONLY

Attorney Docket No. 1324-1010

# DECLARATION AND POWER OF ATTORNEY FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

This declaration is of the following type: (check one)

(X)     Original
( )     Design
( )     Supplemental
( )     National Stage of PCT

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

**Virtual Geostationary Satellite Constellation and Method of Satellite Communications**

the specification of which: (check one)

(X)     is attached hereto;
( )     was filed on   , as Application Serial No.   , and was amended on    (if applicable);
( )     was described and claimed in PCT International Application No.  filed on    and amended under PCT Article 19 on    (if any).

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a), and which is material to the examination of this application, namely, information where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application of which priority is claimed:

1

SRA 00210
CONFIDENTIAL
ATTORNEYS EYES ONLY

## PRIOR FOREIGN APPLICATION(S)

| Number | Country | Day/Month/Year Filed | Priority Claimed |
|---|---|---|---|

This declaration is of the following type: (if applicable)

( )   Divisional
( )   Continuation
( )   Continuation-in-part

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States Application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, we hereby acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| Application Serial No. | Filing Date | Status (patented, pending, abandoned) |
|---|---|---|

POWER OF ATTORNEY:   As a named inventor, I hereby appoint the following attorney(s) jointly and severally to prosecute this application and transact all business in the Patent and Trademark Office connected therewith and to file any and all International Application(s) with respect thereto and to act on my behalf before the competent International Authorities with respect thereto: Lawrence R. Youst (Reg. No. 38,795); Steven W. Smith (Reg. No. 36,684) and Shreen K. Danamraj (Reg. No. 41,696) of Smith, Danamraj & Youst, P.C., 12900 Preston Road, Suite 1200, LB 15, Dallas, Texas 75230-1328.

**SEND CORRESPONDENCE TO:**          **DIRECT TELEPHONE CALLS TO:**

Lawrence R. Youst                    Lawrence R. Youst
Smith, Danamraj & Youst, P.C.        (972) 392-2696
12900 Preston Road                   (972) 720-1139 (FAX)
Suite 1200, LB 15
Dallas, TX 75230-1328

2

**SRA 00211**
CONFIDENTIAL
ATTORNEYS EYES ONLY

I hereby declare that all statements made herein of our own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| 1 | John E. Draim<br><br>**Full Name** | *John E. Draim*<br>**Inventor's Signature** | 11/03/00<br>**Date** |
|---|---|---|---|
| | 9310 Telfer Court<br>Vienna, VA 22182<br>**Residence** | | U.S.A.<br><br>**Citizenship** |
| | 9310 Telfer Court<br>Vienna, VA 22182<br>**Post Office Address** | | |

3

SRA 00212
CONFIDENTIAL
ATTORNEYS EYES ONLY

FORM PTO-1595

1324-1010

RECORDATION FORM COVER SHEET
PATENTS ONLY

U.S. Department of Commerce
Patent and Trademark Office

**To the Honorable Commissioner of Patents and Trademarks**  Please record the attached original documents or copy thereof.

| 1. Name of conveying party(ies):  John E. Draim | 2. Name and Address of receiving party(ies): |
|---|---|
| | Name:     Space Resource International Corporation |
| | Address: 1101 Pennsylvania Avenue, N.W.<br>             Suite 600 |
| | City:     Washington |
| | State:   DC     Zip: 20004 |
| | Additional name(s) & address(es) attached? _____ Yes _X_ No |

3. Nature of Conveyance:

_X_ Assignment          _____ Merger

_____ Security Agreement      _____ Change of Name

_____ Other _____

Execution Date: November 3, 2000

4. Application number(s) or patent number(s).

_X_ This document is being filed together with a new application.

Execution date of the application: November 3, 2000

Title: **Virtual Geostationary Satellite Constellation and Method of Satellite Communications**

| A. Patent Application No.(s) | B. Patent No.(s) |
|---|---|
| Additional numbers attached? _____ Yes _X_ No | Additional numbers attached? _____ Yes _X_ No |

| 5. Name and address of party to whom correspondence concerning document should be mailed: | 6. Number of applications and patents involved: ___1___ |
|---|---|
| Name:    Lawrence R. Youst | |
| Address: Smith, Danamraj & Youst, P.C.<br>             12900 Preston Road<br>             Suite 1200, LB-15 | 7. Amount of fee enclosed or authorized to be charged: $40 |
| City:     Dallas | 8. Deposit Account No:<br>(Attach duplicate copy if paying by deposit account)<br>**This form is submitted in triplicate.** |
| State:   Texas    Zip:  75230-1328 | |

**DO NOT USE THIS SPACE**

9. Statement and signature.

*To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of the original document.*

Dated the 3rd day of November, 2000

Lawrence R. Youst (Reg. No. 38,795)

Total Number of Pages Including Cover Sheet, Attachments and Document: __3__

SRA 00213
CONFIDENTIAL
ATTORNEYS EYES ONLY

Attorney Docket No. 1324-1010

## ASSIGNMENT

WHEREAS, the undersigned has made an invention entitled "Virtual Geostationary Satellite Constellation and Method of Satellite Communications" for which I have executed a Letters Patent of the United States on even day herewith;

WHEREAS, Space Resource International LTD, a corporation existing under the laws of Bermuda, doing business at 1101 Pennsylvania Avenue N.W., Suite 600, Washington, DC 20004 (hereinafter referred to as "Assignee") desires to acquire the entire right, title and interest in, to and under the above invention and application and any patents which may be granted on said invention in the United States and in any and all foreign countries;

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, I do sell, assign, and transfer, unto Assignee, the full and exclusive right, title and interest in and to any and all patents which may be granted therefor in the United States and its territorial possessions and in any and all foreign countries and to any and all divisions, reissues, continuations and extensions thereof.

I hereby authorize and request the Patent Office of the United States and any and all foreign countries to issue any and all of said patents, when granted to Assignee as the Assignee of my entire right, title and interest in and to the same, for the sole use and enjoyment of Assignee, its successors and assigns.

Further, I agree that I will communicate to Assignee, or its representatives. any facts known to me respecting said invention, and testify in any legal proceedings, sign all lawful papers, execute all divisions, continuation, substitution, renewal and reissue applications, execute all necessary papers to cause any and all of said patents to be issued to Assignee, make all

1

SRA 00214
CONFIDENTIAL
ATTORNEYS EYES ONLY

rightful oaths and generally do everything necessary or desirable to aid Assignee, its successors and assigns, to obtain and enforce proper protection for said invention in the United States and in any and all foreign countries.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my seal on the date indicated below.

EXECUTED at District of Columbia, on this _3rd_ day of November, 2000.

_John E. Draim_
John E. Draim

BEFORE ME, the undersigned authority, on this day personally appeared **John E. Draim** know to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _3rd_ day of November, 2000.

_Erica Piscitelli_
Notary Public

[SEAL]

My Commission Expires:

ERICA PISCITELLI
Notary Public, District of Columbia
My Commission Expires June 30, 2004

2

SRA 00215
CONFIDENTIAL
ATTORNEYS EYES ONLY

# VIRTUAL GEOSTATIONARY SATELLITE CONSTELLATION AND METHOD OF SATELLITE COMMUNICATIONS

## TECHNICAL FIELD OF THE INVENTION

The present invention is generally related to satellite communication systems and, more particularly, to a constellation of nongeostationary satellites that increases global communication capacity but does not interfere with satellites in the geostationary satellite ring or with each other.

1

SRA 00216
CONFIDENTIAL
ATTORNEYS EYES ONLY

## BACKGROUND OF THE INVENTION

Geostationary satellites ("geosatellites") were first proposed many years ago for use with communication systems. Geosatellites operate based on the physical concept that a satellite, at the proper working radius, orbits the earth at the same angular velocity as the earth's rotation. These satellites therefore appear to be fixed relative to a point on the earth. This arrangement allows an antenna on the earth to continually point at the satellite which facilitates use of the geosatellites for communications applications.

It has been found, however, that there are a number of drawbacks associated with geosatellite systems. One major drawback is the cost to raise a satellite into a geostationary orbit. Geostationary orbits occur at an altitude of around 36,000 kilometers. The cost to boost a satellite into this high circular orbit is approximately proportional to the height of the orbit. It is therefore expensive to boost a satellite into geostationary orbit. The cost associated with the deployment of satellites must generally be amortized over the lifetime of the satellite, making use of geosatellites very expensive.

Another problem results from the geometry of coverage of a geosatellite system. For example, a three-satellite

2

SRA 00217
CONFIDENTIAL
ATTORNEYS EYES ONLY

geosatellite system could have the satellites spaced equally along the equator, at 120-degree intervals. Their limit of visibility on the equator is calculated from the relationship:

$$2(\cos^{-1}(RE/a_{geo})) = 2(\cos^{-1}(6,378/35,786)) = 2(79.73°) = 159.47°$$

5      where RE is the radius of the earth in kilometers (6,378 km), and $a_{geo}$ is the radius out to the geostationary ring in kilometers (35,786 km). Taking the difference between the above value and 120°, it is clear that there is approximately 40° of overlapping coverage by two adjacent geosatellites for
10    an observer on the equator, with even less at greater latitudes.

Many services require transmission of their information on a global basis. Because each of the geosatellites only covers one part of the world, some other means must be
15    utilized to disseminate the information from the source to the satellites covering the rest of the world.

Information begins its transmission toward a satellite at a gateway station. That gateway station transmits up to the satellite in orbit via a radio-frequency (rf) link. The
20    satellite then retransmits the information to communicate to, or "cover" a portion of the earth. The same information may also be transmitted to another of the satellites to cover another part of the earth. Information is generally either

3

SRA 00218
CONFIDENTIAL
ATTORNEYS EYES ONLY

sent over a landline between gateway stations or via satellite-to-satellite transmission, generally referred to as an intersatellite link (ISL). Such land communication requires additional equipment and expense. While the geosatellite ISL not only requires additional equipment, but also results in time delays in transmissions due to the distance of transmission between satellites. Such systems require a second antenna on each of the satellites in addition to complicating control and pointing structures. Even then, the distance may cause noise in the communication channel or frequency, primarily because of signal attenuation.

One of the most difficult-to-solve problems results from the geometry of the geo orbit. There is only one available orbital ring (or "band") for these geosatellites, which is along the equator. This band is already saturated with satellites. The ring of geosatellites consists of multiple "slots" of two-degree width, at an earth-centered angle and identified by their longitudinal position. This arrangement has been adopted to allow for communications with a minimum of electronic interference (using high gain, directional antennas). This geo-ring around the equator thus provides a total of 180 slots (360° / 2°). All of the geosatellites are at or near a 0° inclination angle, i.e., they are in the

SRA 00219
CONFIDENTIAL
ATTORNEYS EYES ONLY

equatorial plane.  Most of the geo slots are now occupied, making it difficult to find positions for additional geosatellites.   To complicate matters, there are newer nongeostationary satellite systems that operate in inclined planes and cross the equatorial geo belt twice per orbit.  The nongeostationary satellites, however, cannot be allowed to interfere with the communication of the geosatellites when operating at the same frequencies.

In a single repeating ground track, a set of five 8-hour Virtual GEO type satellites has previously been proposed, by the inventor of the invention, with elliptical orbit satellites that appear to 'hang' in the sky by reason of angular velocities at and near apogee, where they approximate the rotation rate of the earth.  Three so-called "Active Arcs" are created with centers located at the apogee point in either the northern or southern hemispheres, that always contains one active (i.e., communicating) satellite.  The other two satellites, that are not active, are in transit between end points of the active arcs.  Most importantly, active virtual GEO satellites occupy a different portion of the sky than any of the geosatellites.

Even with the use of virtual GEO satellites, it has been found that capacity will be an issue as communication traffic

5

SRA 00220
CONFIDENTIAL
ATTORNEYS EYES ONLY

continues to increase.  As such, a need has arisen for a nongeostationary satellite system that provides increased global communication capacity.  A need has also arisen for such a nongeostationary satellite system that does not interfere with current communications using geosatellites.

5

6

SRA 00221
CONFIDENTIAL
ATTORNEYS EYES ONLY

## SUMMARY OF THE INVENTION

It is one aspect of the present invention to provide an improved satellite communications system.

It is another aspect of the present invention to provide arrays of nongeostationary satellites.

It is yet another aspect of the present invention to provide arrays of nongeostationary satellites that may be deployed and utilized in a manner that increases communication capacity.

It is still another aspect of the present invention to provide arrays of nongeostationary satellites wherein the nongeostationary satellites do not interfere with each other.

It is another aspect of the present invention to provide arrays of nongeostationary satellites at a lower cost than can be provided by geostationary satellites.

A further aspect of the present invention is to provide arrays of nongeostationary satellites wherein the nongeostationary satellites do not interfere with the geostationary satellites in the ring about the earth.

The present invention generally includes a method and system of creating a train of virtual GEO satellites that stretch across each of the entire ground tracks, including three active arcs (i.e., in an 8-Hour virtual GEO system) in

7

SRA 00222
CONFIDENTIAL
ATTORNEYS EYES ONLY

such a manner that a 2° separation between adjacent virtual GEO satellites will be maintained, creating a 2-degree slot system for the active regions of the virtual GEO system.

As utilized herein, the terms "virtual geo," "virtual GEO" or "VIRGO" are synonymous with the term "virtual geostationary satellite." Furthermore, even when using the same frequency bands presently used by geosatellites, these nongeostationary satellites, which shall mean any satellite not active within the geostationary satellite array, will not interfere with any satellites in the geo world. The nongeostationary satellites of the present invention actually maintain about 40° of separation, in latitude, from the equatorial ring. In addition, the nongeostationary satellites of the present invention will not interfere with each other because they will maintain at least 2° of spatial separation along their ground tracks in the active region.

As such, 168 virtual GEO slots could be formed in accordance with the present invention. This system may have six active arcs contained within two repeating ground tracks in the Northern Hemisphere, and another six active arcs contained within two repeating ground tracks in the Southern Hemisphere. Effectively, 168 new communications satellite slots have been created for global use, which is a 93%

SRA 00223
CONFIDENTIAL
ATTORNEYS EYES ONLY

increase over the presently existing 180 geosatellite slot system.    Specifically, in each of twelve active arcs, 14 active virtual GEO satellites can be operational (12x14=168) at any time.   The total number of satellites in such a system,

5   based upon a 60% duty cycle, is 280 (168/0.6=280).

The virtual GEO system of the present invention therefore augments global telecommunications capacity without mutual interference with geosatellites or with other nongeosatellites.  A completely different section of the sky

10  is being utilized in the new design, than is presently being utilized in the well-known geo ring of equatorial 24-hour geostationary satellites.    Also, all the virtual GEO satellites are 'flying in formation' maintaining the proper separation to avoid any mutual interference.

9

SRA 00224
CONFIDENTIAL
ATTORNEYS EYES ONLY

## BRIEF DESCRIPTION OF THE DRAWINGS

For a more complete understanding of the features and advantages of the present invention, reference is now made to the detailed description of the invention along with the accompanying figures in which corresponding numerals in the different figures refer to corresponding parts and in which:

Figure 1 shows a basic layout of five elliptical orbits having one satellite in each orbit according to the present invention;

Figure 2 is a flowchart showing a power distribution methodology of a virtual GEO satellite of the present invention;

Figures 3A-3B are block diagrams showing the electronics for a virtual GEO satellite and ground communication equipment used according to the present invention;

Figure 4 shows the characteristics of a basic ellipse including the bunching together of satellites near apogee;

Figure 5 is a Cartesian plot showing a ground track for the elliptical orbits of Figure 1 according to the present invention;

Figure 6 shows the movement of a virtual GEO satellite through a ground track during a twenty-four hour period in accordance with the present invention;

10

SRA 00225
CONFIDENTIAL
ATTORNEYS EYES ONLY

Figure 7 is a Cartesian plot of 70 virtual GEO satellites in one ground track in accordance with the present invention;

Figure 8 is a Cartesian plot of 84 active virtual GEO satellites covering the Northern Hemisphere in two ground tracks in accordance with the present invention; and

Figure 9 is a Cartesian plot of 168 active virtual GEO satellites covering the Northern and Southern Hemispheres in four ground tracks in accordance with the present invention.

SRA 00226
CONFIDENTIAL
ATTORNEYS EYES ONLY

<u>DETAILED DESCRIPTION OF INVENTION</u>

While the making and using of various embodiments of the present invention are discussed in detail below, it should be appreciated that the present invention provides many applicable inventive concepts which can be embodied in a wide variety of specific contexts. The specific embodiments discussed herein are merely illustrative of specific ways to make and use the invention and do not define the scope of the invention.

The present invention discloses a communication system including ground communication equipment and a constellation of virtual GEO satellites in elliptical orbits at lower altitudes than that necessary for geostationary orbits. These orbits simulate many of the characteristics of the geostationary orbit from the viewpoint of ground communication equipment on the earth. Specifically, the virtual GEO satellites in the present elliptical orbits spend most of their time near the apogees of their orbits, i.e., the time when they are most distant from the earth. The virtual GEO satellites spend only a minority of their time near their perigee. For example, a virtual GEO satellite in an 8-hour elliptical orbit may spend five to six of those hours near its apogee. By appropriately choosing characteristics of the

12

SRA 00227
CONFIDENTIAL
ATTORNEYS EYES ONLY

orbit of the virtual GEO satellites, the orbit velocity, at and near apogee, approximates the rotational velocity of the earth.  Thus, the present invention defines a communication system using a constellation of virtual GEO satellites chosen and operating such that a desired point on the earth always tracks and communicates with a virtual GEO satellite at or near apogee.

Before describing a virtual GEO satellite arrangement according to the present invention, the nomenclature utilized herein to describe the characteristics of satellite orbits will be first described.  The "mean motion" is a value indicating the number of complete revolutions per day that a satellite makes.  If this number is an integer, then the number of revolutions each day is uniform.  This means that the ground tracks of the satellites repeat each day; i.e., each ground track for each day overrides previous tracks from the preceding day.

Mean motion (n) is conventionally defined as the hours in a day (24) divided by the hours that it takes a satellite to complete a single orbit.  For example, a satellite that completes an orbit every three hours ("a 3-hour satellite") has a mean motion of 8.

13

**SRA 00228**
**CONFIDENTIAL**
**ATTORNEYS EYES ONLY**

The "elevation angle" (Δ) is the angle from the observer's horizon up to the satellite. A satellite on the horizon would have 0° elevation while a satellite directly overhead would have 90° elevation. Geosatellites orbit near the equator, and usually have a 20-30° elevation angle from points in the United States.

The "inclination" (I) is the angle between the orbital plane of the satellite and the equatorial plane. Prograde orbit satellites orbit in the same orbital sense (clockwise or counter-clockwise) as the earth. For prograde orbits, inclination lies between 0° and 90°. Satellites in retrograde orbits rotate in the opposite orbital sense relative to the earth, so for retrograde orbits the inclination lies between 90° and 180°.

The "critical inclination" for an elliptical orbit is the planar inclination that results in zero apsidal rotation rate. This results in a stable elliptical orbit whose apogee always stays at the same latitude in the same hemisphere. Two inclination values satisfy this condition: 63.435° for prograde orbits or its supplement 116.565° for retrograde orbits.

The "ascending node" is the point on the equator where the satellite passes from the Southern Hemisphere into the

14

**SRA 00229**
**CONFIDENTIAL**
**ATTORNEYS EYES ONLY**

Northern Hemisphere.   The right ascension of the ascending node ("RAAN") is the angle measured eastward in the plane of the equator from a fixed inertial axis in space (the vernal equinox) to the ascending node.

The "argument of perigee" is a value that indicates the position where orbital perigee occurs.   Arguments of perigee between 0° and 180° locate the position of perigee in the Northern Hemisphere and hence concentrate the coverage in the Southern Hemisphere.   Conversely, arguments of perigee between 180° and 360° locate the perigees to the Southern Hemisphere and hence concentrate the coverage on the Northern Hemisphere.

The longitudinal spacing between ascending nodes is called "S" and is calculated by S=360°/n=120°.   "Mean anomaly" (M) relates to the fraction of an orbit period elapsed since perigee, expressed as an angle.   The mean anomaly three hours into a 12-hour orbit is 90°, i.e., one-fourth of a period.

Referring now to Figure 1, therein is depicted five elliptical orbits each having one virtual GEO satellite of the present invention, this system is generally designated 10. Virtual GEO satellite 12 is shown in an elliptical orbit 14 around the earth.   The communication equipment on satellite 12 communicates with earth ground stations 16 and 18.   Virtual GEO satellite 20 is shown in a separate independent elliptical

SRA 00230
CONFIDENTIAL
ATTORNEYS EYES ONLY

orbit 22, also in communication with earth ground stations 16 and 18.  Satellite 12 can communicate directly to satellite 20 via a communication link indicated by dotted line 26.

Like geo-based systems, the virtual GEO satellites implemented in accordance with the method and system of the present invention are virtually continuously in the same general location or region in the sky.  Unlike geo-based systems, however, the ground communication equipment of the present invention does not always communicate with the same satellite.  For example, in the illustrated embodiment, ground station 16 is initially in communication with satellite 12 but is later in communication with satellite 20.  The virtual GEO satellites move slightly relative to the earth when they are at or near apogee.  One important advantage of the present invention is that the one virtual GEO satellite at apogee later moves to perigee, and still later to other locations overflying other continents and areas including, for example, ground stations 24 and 26.  Hence, that same virtual GEO satellite can later communicate with those other areas.  Therefore, this system allows a store-and-dump type system.  For example, information from ground station 18 can be stored on board satellite 12 and later retransmitted when satellite 12 overflies ground station 24.  This system also allows all

16

SRA 00231
CONFIDENTIAL
ATTORNEYS EYES ONLY

the virtual GEO satellites in the array to communicate with the other virtual GEO satellites in the constellation.

It should also be noted that the system of the present invention allows for operation over specific geographic locations that are preferentially covered; for example, continents can be followed by the constellation to the exclusion of other areas, e.g., ocean areas between the continents. In the illustrated embodiment, for example, the United States, Europe and portions of Asia and Russia are preferentially covered.

Importantly, the virtual GEO satellites according to the present invention orbit at about half the altitude of geosatellites. A geosatellite orbits at an altitude of about 36,000 km. An eight-hour virtual GEO satellite orbits at average altitudes of 16,000 to 18,000 km, with a peak or apogee altitude of about 27,000 km. Also, geosatellites require apogee motors, to boost them from their original orbits into the final geo orbit. These apogee motors can and often do double the weight of the geosatellite.

As such, the present invention yields a communications system, which costs fewer dollars per launch because of the reduced satellite weight, a smaller delta-V and smaller launch vehicles. Also, since the geosatellites orbit at a higher

17

SRA 00232
CONFIDENTIAL
ATTORNEYS EYES ONLY

altitude, they must operate at a higher power, and use a larger illuminating antenna, all other conditions on the ground being equal. As such, geosatellites have a much larger overall size. It should be noted that the size of the satellites tends to increase as the square of the distance. Therefore, the geosatellite needs to be at least twice as large and twice as powerful as a low altitude satellite.

The system of the present invention also provides for very high elevation angles. Maximizing the elevation angle prevents interference with existing satellites such as true geostationary satellites. For example, communication between ground station 16 only occurs when satellite 12 is above line 30 which represents the altitude at which there is a 40° separation between the virtual GEO satellites of the present invention and geosatellites. This feature of the present invention allows the virtual GEO satellites to be operated without any possibility of interference with geosatellites in the geo band. In fact, the virtual GEO satellites of the present invention are preferably tracked at and near their apogee positions. The virtual GEO satellites near perigee are moving too rapidly, and hence are not tracked. More generally, the system of the present invention operates such that the virtual GEO satellites are only being utilized at

18

SRA 00233
CONFIDENTIAL
ATTORNEYS EYES ONLY

certain times during their orbits, i.e., at and near apogee. As such, the virtual GEO satellites are only utilized when their position is such that there is no possibility of the line of sight between the ground station and the virtual GEO satellite interfering with the geostationary band of satellites. This allows the satellite communication of the present invention to take place on the same communication frequency band normally assigned to geosatellites.

Moreover, the present invention teaches that when the virtual GEO satellites are not communicating, either because the virtual GEO satellites are no longer at their tracked apogee portion and/or when the virtual GEO satellites are in a region where they might interfere with geostationary satellites, the main transmission is turned off. During this time, the power supply is utilized to charge the battery.

This improves the power characteristics of virtual GEO satellites as compared with geosatellites. Geosatellites are utilized virtually 100% of the time (except when in eclipse) and hence their power supplies must be capable of full-time powering. This means, for example, if the satellite requires 5 kW to operate, then the power supply and solar cells must be capable of supplying a continuous 5 kW of power. The virtual GEO satellites of the present invention, however, are not

19

SRA 00234
CONFIDENTIAL
ATTORNEYS EYES ONLY

utilized 100% of the time.  During the perigee portions of the orbit, the virtual GEO satellites are typically not using their transmit and receive capability and hence, do not use a large part of their power capability.  As such, the virtual

5  GEO satellites of the present invention store the power that is being produced during this time of non use.  Therefore, the size of the power supply as compared with geosatellites is reduced by a factor of the percentage of time that the virtual GEO satellite is not utilized.

10     The power sources for virtual GEO satellites of the present invention may be any known means, including solar cells, nuclear reactors, or the like.  If the virtual GEO satellite is utilized half the time, then the power source need only be sized to provide half the power.  At times when

15  the virtual GEO satellite is not being utilized, the power source provides power to a battery storage cell, which holds the power in reserve for times when the virtual GEO satellite is being utilized.

     Figure 2 depicts this power consumption methodology of

20  virtual GEO satellites of the present invention in a flowchart format that is generally designated 50.  Step 52 represents controlling the antenna.  This requires that the processor keep track of the virtual GEO satellite's position in orbit.

20

SRA 00235
CONFIDENTIAL
ATTORNEYS EYES ONLY

The pointing angle between the virtual GEO satellite and the position of the geo ring is determined in step 54.  Step 56 determines if there is any possibility of interference.  If there is any possibility of interference, satellite communications are disabled in step 58.  If interference is not possible at step 56, then the satellite is enabled at step 60.  An enabled satellite can be, but is not necessarily, turned on.  Therefore, step 62 determines if the satellite is powered.  This may be determined from the repeating ground track, or other information.  If the satellite is not powered at step 62, the battery is charged at step 64.  If the satellite is powered, then power is drawn from both the supply and the battery at step 66.

A detailed block diagram of the electronics in a virtual GEO satellite of the present invention such as satellite 12 and a ground station, such as ground stations 16 and 18 are shown in Figures 3A-3B.  This block diagram shows elements, which carry out communication between ground station 18, satellite 12 and ground station 16.  In addition, intersatellite link 26 is shown from satellite 12 to satellite 20. The video input to be distributed is received as video input 200, and input to a video coder 202 which produces digital coded video information.  This digital coded video is

21

SRA 00236
CONFIDENTIAL
ATTORNEYS EYES ONLY

multiplexed with a number of other channels of video information by video multiplexer 204. The resultant multiplexed video 206 is modulated and appropriately coded by element 208 and then up-converted by transmitter element 210.

5    The up-converted signal is transmitted in the Ku band, at around 14 GHz, by antenna 212. Antenna 212 is pointed at satellite 12 and is controlled by pointing servos 213. The transmission from antenna 212 is received by phased array antenna 214 of satellite 12. The received signal is detected

10   by receiver 216, from which it is input to multiplexer 218. Multiplexer 218 also receives information from the intersatellite transponders 238.

The output of multiplexer 218 feeds the direct transponders 250, which through a power amplifier 252 and

15   multiplexer 254 feeds beam former 256. Beam former 256 drives a transmit, steerable phased-array antenna 260 which transmits a signal in a current geo frequency band to antenna 262 of ground station 16. This signal preferably uses the same frequency that is utilized by current geosatellites. The

20   phased-array antenna 260 is steered by an onboard computer, which follows a preset and repeating path, or from the ground. This information is received by receiver 264, demodulated at 266, and decoded at 268 to produce the video output 270.

22

SRA 00237
CONFIDENTIAL
ATTORNEYS EYES ONLY

Satellite 12 includes another input to multiplexer 218 from the steerable antenna 260, via the intersatellite link 26 and receiver 240. Transmit information for intersatellite link 26 is multiplexed at 242 and amplified at 246 prior to being multiplexed.

Output 222 of input multiplexer 218 represents a storage output. Satellite 12 may include electronics with the capability to store one hour of TV program information. The TV channels typically produce information at the rate of 6 megabytes per second. The channels are typically digitally multiplexed to produce information on 4-6 channels at a time. Therefore, the present invention preferably uses 22 gigabytes of storage to store more than one hour of information at about 4.7 megabytes per second. The information stored will be broadcast over the next continent. The storage unit 224, accordingly, is a wide SCSI-2 device capable of receiving 4.7 megabytes per second and storing 22 GB. Upon appropriate satellite command, the output of the storage unit is modulated and up-converted at 226.

In addition, Figure 3A depicts an onboard processor 280, which determines the position in the orbit and the steering of the antenna from various parameters. Power supply 290 supplies power to all of the various components and circuitry.

23

SRA 00238
CONFIDENTIAL
ATTORNEYS EYES ONLY

Power supply 290 includes a source of power, here shown as a
solar array 292, and an energy storage element, here shown as
a battery array 294.  Importantly, according to the present
invention, the solar array 292 is sized to provide an amount
5    of power that is less than that required to power the
satellite communication which is referred to herein as the
power ratio of the device.  The power ratio depends on the
kind of orbit that the virtual GEO satellite will have, and
how long the virtual GEO satellite will be transmitting during
10    each elliptical orbit.  The preferred power ratio is 0.6, this
will power a virtual GEO satellite which is communicating 60
percent the time.  During the remainder of the orbit, the
transmitter and receiver on board the virtual GEO satellite is
off allowing solar array 292 to provide power to charge
15    battery 294.

Some of the general principles of elliptical orbits will
now be described with reference to Figure 4.  An ellipse 80 is
seen that has a focus 82.  The satellites orbit along the path
of ellipse 80, with the center of the earth being at the focus
20    position 82 ("the occupied focus").  Satellite 84 is
positioned at the apogee and satellite 86 is positioned at the
perigee of ellipse 80, which are the points respectively
farthest from and closest to focus 82 of ellipse 80.  The

24

**SRA 00239**
**CONFIDENTIAL**
**ATTORNEYS EYES ONLY**

amount of difference between these distances defines the eccentricity of ellipse 80. The distance from focus 82 to the apogee is called the radius of apogee, $r_a$, while the distance from focus 82 to the perigee is called the radius of perigee,

5    $r_p$. As the eccentricity of an ellipse approaches zero, the ellipse becomes less elliptical, eventually approaching a circle when the eccentricity is zero. A more eccentric ellipse is less like a circle. The characteristics of the ellipse are therefore determined as a function of its

10   eccentricity.

The position of a satellite in orbit follows Kepler's laws of motion, which states that the orbiting element will sweep out equal areas of the orbit in equal times. This results in the satellite moving very rapidly when it is at an

15   approaching perigee, but very slowly when it reaches apogee. As stated above, at apogee, the angular rate of the virtual GEO satellites of the present invention approximates the rotation velocity of the earth. At this time, therefore, the virtual GEO satellites appear to hang relative to the earth.

20   All elliptical orbits, including those described herein, are subject to effects of long-term perturbations. If effects of these long term perturbations are not compensated, this could cause continental coverage to drift with the passage of

25

SRA 00240
CONFIDENTIAL
ATTORNEYS EYES ONLY

time.  These perturbation effects are mainly effects from the
Earth's J2 rotation harmonic.  As the earth is not a perfect
sphere, it actually bulges at the equator, this causes
gravitational effects on objects, which orbit the earth.  For
posigrade orbits (i>90°) the line of nodes will regress.  For
inclinations greater than critical (63.4°>i>116.6°), the line
between the perigee and apogee (line of apsides) will regress;
for other inclinations, I<63.4° or I>116.6°, the line of
apsides will progress.  Exactly at the critical angles I=63.4°
or I=116.6°, the line of apsides will remain stable which is
a very desirable feature in maintaining apogee at a certain
latitude.  In the equatorial plane, the combined effect of
these two major perturbations cause the apogee to advance or
move counterclockwise from the sense of looking down from the
celestial north pole.  All of the satellites in a given array
design would be affected similarly.  Fortunately, this effect
could be compensated by slightly increasing the period of each
satellite in the array by an amount, which offsets the J2
perturbation.  This affects the system by causing a point on
the earth to take a slightly longer time to reach the
satellite's next apogee arrival point.  This effect is
compensated by slightly increasing the satellite's period.

26

SRA 00241
CONFIDENTIAL
ATTORNEYS EYES ONLY

The advance of perigee is suppressed by setting the inclination at one of the critical values.

Figure 5 show a Cartesian plot of a ground track for a virtual GEO satellite array of the present invention having 15 virtual GEO satellites in the five elliptical orbits seen in Figure 1. The virtual GEO satellites have a mean motion of three. The ground track may be adjusted so as to pass directly over desired areas by adjusting the right ascensions of all the orbits while maintaining their equal spacing. The argument of perigee is adjusted to obtain apogees over or nearly over the targeted latitude and longitude. In the illustrated embodiment, it can readily be seen that the virtual GEO satellites favor the Northern Hemisphere as the apogees of the elliptical orbits are over the Northern Hemisphere. The virtual GEO satellites appear to hover or dwell along three equally-spaced meridians being spaced at 120° intervals. The geometry of the elliptical orbits of the virtual GEO satellites of the present invention provides a very high elevation angle, and hence avoids interference with the existing geosatellites. The preferred orbits have apogee and perigee altitudes of 26,967.6 km and 798.3 km, respectively.

27

SRA 00242
CONFIDENTIAL
ATTORNEYS EYES ONLY

The virtual GEO satellites remain at apogee during the time while they are being tracked from the ground. Hence, these virtual GEO satellites are only tracked, and communicated with, while their velocity closely matches the velocity of the earth. In the illustrated embodiment, three virtual GEO satellites in each arc are at or near apogee and are active. When the virtual GEO satellites begin to approach the perigee stage, their velocity increases relative to the earth's rotation and they are no longer being tracked by the communication equipment on the earth. In the illustrated embodiment, two virtual GEO satellites in each loop are at or near perigee and are inactive

This system defines significant advantages over the geo system. Its operating altitudes are half that of existing geo systems. This greatly reduces link margins and emitted power requirements. Apogees are placed on the meridians of longitude of the heavily-populated areas for which the constellation is optimized, here, North America, Europe, Asia and Russia. Apogee points may also be adjusted to approximate the targeted area latitudes as well. The satellite tracking arcs over the targeted areas remain roughly overhead with slow angular movement during periods when the virtual GEO satellite is active. Since the virtual GEO satellites move from one

28

SRA 00243
CONFIDENTIAL
ATTORNEYS EYES ONLY

geographic area to another, information once transmitted can be re-broadcast at another location.

Referring now to Figure 6, a Cartesian plot of a twenty-four hour repeating ground track illustrating the movement of one virtual GEO satellite of the present invention is depicted. The position of the satellite is pictured on an hourly basic. At time 0:00, the satellite is at apogee over North America. One hour later, at time 1:00 the satellite has moved very little since it is near the apogee portion of its orbit and its velocity very closely matches the velocity of the earth. Still one hour later, at time 2:00, the satellite remains over North America, but begins to increase in speed as it moves toward perigee. By time 3:00, the satellite is over South America. At time 4:00 the satellite is at perigee approaching the Indian Ocean. At time 5:00 the satellite is over Indonesia and is beginning to slow down as it approaches apogee. The satellite travels over Asia and Russia from time 6:00 to time 8:00 at which time the satellite is at apogee where its velocity again very closely matches the velocity of the earth. The satellite repeats its elliptical orbit having its next perigee at time 12:00 over the South Pacific Ocean, its next apogee at time 16:00 over Norway, its following

29

SRA 00244
CONFIDENTIAL
ATTORNEYS EYES ONLY

perigee at time 20:00 near the Tasman Sea before returning to apogee at time 24:00 over North America.

The virtual GEO satellite system of the present invention provides other unique advantages. For example, the system allows for selective expansion of the communications coverage by adding additional virtual GEO satellites into the above described elliptical orbits and into additional elliptical orbits. As seen in figure 7, a 70-satellite constellation of virtual GEO satellites in a single ground track is depicted. As above, each of the virtual GEO satellites has an approximately 8-hour elliptical orbit that is composed of a basic ground track with three active loops, repeating every day. The orbit of these virtual GEO satellites has an apogee altitude of 26,967.6 km, a perigee altitude of 798.3 km, an altitude over the equator of 5,430.6 km, an altitude at the start and end of active arcs of 17,789.7 km, a latitude at the start and end of active arcs of 45.1° (N or S) and a maximum latitude reached in active arcs of 63.41°.

In this illustrated embodiment, fourteen active virtual GEO satellites occupy each of the arcs. As such, up to fourteen independent systems, utilizing the same frequency band, can employ the fourteen slowly moving slots in each loop of the ground track, for a total of 42 "customers" for three loops.

30

SRA 00245
CONFIDENTIAL
ATTORNEYS EYES ONLY

There is no interference between the virtual GEO satellites and satellites in the geostationary satellite ring, as the virtual GEO satellites will remain inactive until they are in a position at greater than 40° separation in latitude from the geo ring (see figure 1). In addition, there is no interference among the virtual GEO satellites while in the active region because they will preferably maintain at least 2° of separation.

As can be seen, the virtual GEO satellites tend to bunch up in the region near apogees that occurs at roughly 63.4° latitude. The mean anomaly spacing to ensure a 2° satellite separation near apogee is 15°. As the daily ground track covers 1080° (3 x 360⁰), the number of virtual GEO satellites per ground track could be as high as 72 (1080°/15°). It has been found, however, that phasing problems may occur between different users if the maximum number of virtual GEO satellites in one ground track is 72. The preferred number of virtual GEO satellites usable within each ground track is 70, as depicted in figure 7, with 42 active virtual GEO satellites and 28 inactive virtual GEO satellites which yields a 60% duty cycle. Having exactly 14 satellites per active arc creates a mean anomaly spacing to 15.42857° (1080°/70). The actual

31

SRA 00246
CONFIDENTIAL
ATTORNEYS EYES ONLY

minimum width of the slots, at apogee, using a mean anomaly spacing of 15.42857° is 2.06°.

With the 70 virtual GEO satellites in a single ground track, continuous coverage will be provided underneath all three loops. There will be, however, small triangular outage regions along the equator, midway between the peaks of the loops, up to about 20° of latitude. As the width of the active portion of one of the loops spans less than 60° of longitude, a second ground track displaced by 180° from the first may be added to fill up the gaps left by the first ground track. As seen in figure 8, with only the active virtual GEO satellites depicted, the second ground track may be employed so that there are now six loops in the Northern Hemisphere. In this configuration, there will be continuous coverage of the entire the Northern Hemisphere down to and including all the equatorial regions. Placed in such a manner, the tracks do not cross one another during the active periods of the virtual GEO satellites. In fact, the tracks appear as six distinct parabolic shaped loops in the Northern Hemisphere.

In a similar manner, such a constellation may also be constructed to include six loops in the Southern Hemisphere, as seen in figure 9. These virtual GEO satellites have orbits

32

SRA 00247
CONFIDENTIAL
ATTORNEYS EYES ONLY

that are the inverse of those for the Northern Hemisphere having perigees that lie in the Northern Hemisphere and apogees that lie in the Southern Hemisphere. As such, with four ground tracks deployed, two in the Northern Hemisphere and two in the Southern Hemisphere, 288 slots may effectively be created, using the 15-degree mean anomaly spacing. Between 14 and 15 satellites (out of 24) lie within the bounds of the active duty arcs, in each of the loops at all times. Conversely between 9 and 10 satellites are in the standby mode in each loop (including both Northern Hemisphere and Southern Hemisphere inactive satellites). As stated above, however, due to phasing concerns, the preferred number of virtual GEO satellites usable within the disclosed system is 280 satellites, which corresponds to 70 per ground track with exactly 14 satellites per active arc with a mean anomaly spacing of 15.42857° and a minimum width of the slots at apogee being 2.06°.

The coordinated employment of such a system provides a new standard for greatly increasing the number of the world's communications satellites, with no interference to any of the geosatellites, and also no interference to each other. A total of 280 virtual GEO satellites, will provide 168 active slots. This will nearly double the 180 2-degree slots that

33

SRA 00248
CONFIDENTIAL
ATTORNEYS EYES ONLY

are currently available in the geo-ring. Specifically, with 168 added slots, the world potential capacity may be increased by 168/180, or 93.3%. As such, the method and system of the present invention can be utilized to improve the elliptical satellite orbits described in the past by increasing communications capacity with the addition of 168 slots.

While this invention has been described in reference to illustrative embodiments, this description is not intended to be construed in a limiting sense. Various modifications and combinations of the illustrative embodiments, as well as other embodiments of the invention, will be apparent to persons skilled in the art upon reference to the description. It is therefore intended that the appended claims encompass any such modifications or embodiments.

SRA 00249
CONFIDENTIAL
ATTORNEYS EYES ONLY

What is claimed is:

1.   A satellite constellation comprising:

a first plurality of virtual geostationary satellites having a first set of elliptical orbits and forming a first repeating ground track, the first set of elliptical orbits having apogees above a first hemisphere such that the satellites of the first plurality of virtual geostationary satellites appear from the ground to be virtually geostationary when at and near the apogees, the satellites of the first plurality of virtual geostationary satellites maintaining a minimum separation angle of at least 2°.

2.   The satellite constellation as recited in claim 1 wherein the first ground track further comprises three distinct loops each having an active arc wherein the satellites of the first plurality of virtual geostationary satellites are active.

35

SRA 00250
CONFIDENTIAL
ATTORNEYS EYES ONLY

1       3.   The satellite constellation as recited in claim 2

2    wherein the satellites of the first plurality of virtual

3    geostationary satellites maintain a minimum separation angle

4    of at least 40° between active satellites of the first

5    plurality of virtual geostationary satellites and a

6    geostationary satellite ring.


1       4.   The satellite constellation as recited in claim 2

2    wherein the active arcs have a maximum latitude of about 63°.


1       5.   The satellite constellation as recited in claim 2

2    wherein the active arcs have a minimum latitude of about 45°.


1       6.   The satellite constellation as recited in claim 2

2    wherein each of the active arcs includes 14 active satellites

3    of the first plurality of virtual geostationary satellites.


1       7.   The satellite constellation as recited in claim 1

2    wherein the first plurality of virtual geostationary

3    satellites includes 70 satellites.

**SRA 00251**
**CONFIDENTIAL**
**ATTORNEYS EYES ONLY**

8.   The satellite constellation as recited in claim 1 wherein the apogees of first set of elliptical orbits have an altitude of about 27,000 km.

9.   The satellite constellation as recited in claim 1 further comprising a second plurality of virtual geostationary satellites having a second set of elliptical orbits and forming a second repeating ground track that is separated from the first repeating ground track by 180°, the second set of elliptical orbits having apogees above the first hemisphere such that the satellites of the second plurality of virtual geostationary satellites appear from the ground to be virtually geostationary at and near the apogees, the satellites of the second plurality of virtual geostationary satellites maintaining a minimum separation angle of at least 2°.

37

SRA 00252
CONFIDENTIAL
ATTORNEYS EYES ONLY

1    10.   The satellite constellation as recited in claim 1

2  further comprising a second plurality of virtual geostationary

3  satellites having a second set of elliptical orbits and

4  forming a second repeating ground track, the second set of

5  elliptical orbits having apogees above a second hemisphere

6  such that the satellites of the second plurality of virtual

7  geostationary satellites appear from the ground to be

8  virtually geostationary at and near the apogees, the

9  satellites of the second plurality of virtual geostationary

10  satellites maintaining a minimum separation angle of at least

11  2°.

38

**SRA 00253**
**CONFIDENTIAL**
**ATTORNEYS EYES ONLY**

1    11.   A satellite constellation comprising:

2    a first plurality of virtual geostationary satellites

3    having a first set of elliptical orbits and forming a first

4    repeating ground track;

5    a second plurality of virtual geostationary satellites

6    having a second set of elliptical orbits and forming a second

7    repeating ground track that is separated from the first

8    repeating ground track by 180°, the first and second sets of

9    elliptical orbits having apogees above a first hemisphere;

10    a third plurality of virtual geostationary satellites

11    having a third set of elliptical orbits and forming a third

12    repeating ground track; and

13    a fourth plurality of virtual geostationary satellites

14    having a fourth set of elliptical orbits and forming a fourth

15    repeating ground track that is separated from the third

16    repeating ground track by 180°, the third and fourth sets of

17    elliptical orbits having apogees above a second hemisphere,

18    the satellites of the first, second, third and fourth

19    pluralities of virtual geostationary satellites appear from

20    the ground to be virtually geostationary at and near the

21    apogees, the satellites of the first, second, third and fourth

22    pluralities of virtual geostationary satellites maintaining a

23    minimum separation angle of at least 2°.

39

SRA 00254
CONFIDENTIAL
ATTORNEYS EYES ONLY

12.   The satellite constellation as recited in claim 11 wherein each of the ground tracks further comprise three loops each having an active arc wherein the satellites of the first, second, third and fourth pluralities of virtual geostationary satellites are active.

13.   The satellite constellation as recited in claim 12 wherein the satellites of the first, second, third and fourth pluralities of virtual geostationary satellites maintains a minimum separation angle of at least 40° between active satellites of the first, second, third and fourth pluralities of virtual geostationary satellites and a geostationary satellite ring.

14.   The satellite constellation as recited in claim 12 wherein the active arcs have a maximum latitude of about 63°.

15.   The satellite constellation as recited in claim 12 wherein the active arcs have a minimum latitude of about 45°.

16.   The satellite constellation as recited in claim 12 wherein each of the active arcs includes 14 active satellites.

SRA 00255
CONFIDENTIAL
ATTORNEYS EYES ONLY

17.   The satellite constellation as recited in claim 11 wherein the first, second, third and fourth pluralities of virtual geostationary satellites includes 280 satellites.

18.   The satellite constellation as recited in claim 12 wherein there are 168 active satellites.

19.   The satellite constellation as recited in claim 11 wherein the first hemisphere is the Northern Hemisphere and the second hemisphere is the Southern Hemisphere.

41

SRA 00256
CONFIDENTIAL
ATTORNEYS EYES ONLY

1    20.  A method for satellite communications comprising the

2    steps of:

3    providing  a  first  plurality  of  virtual  geostationary

4    satellites having a first set of elliptical orbits that form

5    a first repeating ground track, the first set of elliptical

6    orbits having apogees above a first hemisphere such that the

7    satellites of the first plurality of virtual geostationary

8    satellites    appear    from    the    ground    to    be    virtually

9    geostationary when at and near the apogees; and

10   maintaining  a  minimum  separation  angle  of  at  least  2°

11   between  the  satellites  of  the  first  plurality  of  virtual

12   geostationary satellites.


1    21.  The method as recited in claim 20 further comprising

2    the step of activating the satellites of the first plurality

3    of virtual geostationary satellites when the satellites of the

4    first plurality of virtual geostationary satellites are in

5    active arcs of three loops of the first ground track.

42

SRA 00257
CONFIDENTIAL
ATTORNEYS EYES ONLY

22.   The method as recited in claim 21 further comprising the step of maintaining a minimum separation angle of at least 40° between active satellites of the first plurality of virtual geostationary satellites and a geostationary satellite ring.

23.   The method as recited in claim 21 wherein the active arcs have a maximum latitude of about 63°.

24.   The method as recited in claim 21 wherein the active arcs have a minimum latitude of about 45°.

25.   The method as recited in claim 21 wherein the step of providing the first plurality of virtual geostationary satellites further comprises providing 70 virtual geostationary satellites, 14 of which are in each of the active arcs.

26.   The method as recited in claim 20 wherein the apogees of first set of elliptical orbits have an altitude of about 27,000 km.

43

SRA 00258
CONFIDENTIAL
ATTORNEYS EYES ONLY

27.  The method as recited in claim 20 further comprising the steps of providing a second plurality of virtual geostationary satellites having a second set of elliptical orbits that form a second repeating ground track that is separated from the first repeating ground track by 180°, the second set of elliptical orbits having apogees above the first hemisphere such that the satellites of the second plurality of virtual geostationary satellites appear from the ground to be virtually geostationary at and near the apogees and maintaining a minimum separation angle of at least 2° between the satellites of the second plurality of virtual geostationary satellites.

SRA 00259
CONFIDENTIAL
ATTORNEYS EYES ONLY

28.  The method as recited in claim 27 further comprising the steps of providing a third plurality of virtual geostationary satellites having a third set of elliptical orbits that form a third repeating ground track, the third set of elliptical orbits having apogees above a second hemisphere such that the satellites of the third plurality of virtual geostationary satellites appear from the ground to be virtually geostationary at and near the apogees and maintaining a minimum separation angle of at least 2° between the satellites of the third plurality of virtual geostationary satellites.

45

SRA 00260
CONFIDENTIAL
ATTORNEYS EYES ONLY

29.   The method as recited in claim 28 further comprising the steps of providing a fourth plurality of virtual geostationary satellites having a fourth set of elliptical orbits that form a fourth repeating ground track that is separated from the third repeating ground track by 180°, the fourth set of elliptical orbits having apogees above the second hemisphere such that the satellites of the fourth plurality of virtual geostationary satellites appear from the ground to be virtually geostationary at and near the apogees and maintaining a minimum separation angle of at least 2° between the satellites of the fourth plurality of virtual geostationary satellites.

30.   The method as recited in claim 29 wherein the first hemisphere is the Northern Hemisphere and the second hemisphere is the Southern Hemisphere.

46

SRA 00261
CONFIDENTIAL
ATTORNEYS EYES ONLY

1        31.   The method as recited in claim 20 further comprising

2    the step of providing a second plurality of virtual

3    geostationary satellites having a second set of elliptical

4    orbits that form a second repeating ground track, the second

5    set of elliptical orbits having apogees above a second

6    hemisphere such that the satellites of the second plurality of

7    virtual geostationary satellites appear from the ground to be

8    virtually geostationary at and near the apogees and

9    maintaining a minimum separation angle of at least 2° between

10    the satellites of the second plurality of virtual

11    geostationary satellites.

47

**SRA 00262**
**CONFIDENTIAL**
**ATTORNEYS EYES ONLY**

# VIRTUAL GEOSTATIONARY SATELLITE CONSTELLATION AND METHOD OF SATELLITE COMMUNICATIONS

## ABSTRACT OF THE DISCLOSURE

A satellite constellation comprising a plurality of virtual geostationary satellites in elliptical orbits that form one or more repeating ground tracks is disclosed. The elliptical orbits have apogees above either the Northern or Southern hemispheres such that the virtual geostationary satellites appear, from the ground, to be virtually geostationary when at and near their apogees. The virtual geostationary satellites maintain a minimum separation angle of at least 2° resulting in a 2-degree slot system for the active regions of the satellite constellation, thereby preventing interference among the virtual geostationary satellites. In addition, the virtual geostationary satellites maintain approximately 40° of separation in latitude from the equatorial ring of geostationary satellites, thereby preventing interference with geostationary satellites and allowing reuse of the same frequency bands presently use by geostationary satellites.

SRA 00263
CONFIDENTIAL
ATTORNEYS EYES ONLY



*Fig.1*

SRA 00264
CONFIDENTIAL
ATTORNEYS EYES ONLY



CONTROL
ANTENNA — 52

50

DETERMINE ANGLES
OF SATELLITE RELATIVE
TO GEO — 54

56

INTERF
POSS
? — YES → DISABLE
SATELLITE — 58

NO — 60

*Fig.2*

ENABLED

62

NO — POWERED
? — YES

64

POWER
CHARGE THE BATTERY

66

POWER DRAWN FROM
SUPPLY & BATTERY

80

82

86

84

$r_p$

$r_a$

*Fig.4*

SRA 00265
CONFIDENTIAL
ATTORNEYS EYES ONLY



*Fig.3A*

SRA 00266
CONFIDENTIAL
ATTORNEYS EYES ONLY



*Fig.3B*

SRA 00267
CONFIDENTIAL
ATTORNEYS EYES ONLY



*Fig.5*

SRA 00268
CONFIDENTIAL
ATTORNEYS EYES ONLY



*Fig.6*

SRA 00269
CONFIDENTIAL
ATTORNEYS EYES ONLY



*Fig.7*

SRA 00270
CONFIDENTIAL
ATTORNEYS EYES ONLY



*Fig.8*

SRA 00271
CONFIDENTIAL
ATTORNEYS EYES ONLY



*Fig.9*

SRA 00272
CONFIDENTIAL
ATTORNEYS EYES ONLY