# Exhibit 13

## Memorandum in Support of Motion for Summary Judgment and for an Award of Attorneys Fees and Costs by John E. Draim

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN E. DRAIM,
    Plaintiff

       v.

VIRTUAL GEOSATELLITE
HOLDINGS, INC., et al.
    Defendants

Civil Action No. 01-2690 (JR)

## DEFENDANT'S STATEMENT IN COMPLIANCE WITH RULE 26(a)(2)

Defendants Virtual Geosatellite Holdings, Inc., Mobile Communications Holdings,

Inc. and David Castiel, by and through their undersigned attorneys file their Statement in

Compliance with Rule 26(a)(2):

1)    Richard J. Barnett, B.Sc., Ph.D, C.Eng., M.I.E.E.
        Telecomm Strategies, Inc.
        6404 Highland Drive
        Chevy Chase, Maryland 20815
        (301) 656-8969

Attached hereto is a copy of Dr. Barnett's report of December 16, 2002 and a copy

of Dr. Barnett's *Curriculum Vitae*. Dr. Barnett has not published in the last ten years nor

has he testified in any trial or deposition in the last four years.

THOMAS J. MITCHELL, ESQ.
Attorney for Defendants
D.C. Bar No. 449326
P.O. Box 459
Laurel, Maryland 20725-0459
Tel:    (301) 604-1797
Fax:    (301) 604-4127

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have mailed a copy of the foregoing Defendant's

Statement in Compliance with Rule 26(a)(2), first class, this 20th day of December, 2002 to:

Thomas M. Corea, Esq.
Daniel F. Perez, Esq.
Bickel & Brewer
4800 Bank One Center
1717 Main Center
Dallas, TX  75201

Craig C. Reilly, Esq.
John F. Anderson, Esq.
Richards, McGettigan, Reilly & West, P.C.
225 Reinekers Lane, Suite 700
Alexandria, VA  22314-2822

THOMAS J. MITCHELL, ESQ.



**TELECOMM STRATEGIES** Inc.

6404 Highland Drive
Chevy Chase, MD 20815
U.S.A.
Tel: +1-301-656-8969
Fax: +1-240-465-0086

Mr. Thomas J. Mitchell, Esquire
P.O. Box 459
Laurel, Maryland 20725-0459

and

Mr. Isidoro Rodriguez, Esquire
Rodriguez & Sibley
1133 21st Street, NW Suite 800
Washington, DC 20036

Attorneys for Plaintiffs Mobile Communications Holdings *et al.*

December 16, 2002

Dear Messrs Mitchell and Rodriguez,

You have asked me to review, analyze and comment on the following technical submissions:

(1)     The Virtual Geo system as described in the patent #5,957,409 issued September 28, 1999;

(2)     The paper entitled "Demonstration of the Cobra Teardrop Concept..." by Draim et al. presented at the 15th Annual USU Conference on Small Satellites, August 2001;

(3)     The patent application filed by Virtual Geo's patent attorneys Fish and Richardson on August 16, 2000, titled "Constellation of Elliptical Orbit Satellites with Line of Apsides Lying in or near the Equatorial Plane" and listing Draim as inventor; application No. 09/640.656;

(4)     The provisional patent application titled "Creating an Array of Virtual Geostationary Satellites that Provide 2 degree Separations at Apogee (and throughout the Active Arcs), and Non-Interference with the Geo Ring", submitted to the US Patent and Trademark Office on February 3, 2000 by Draim et al., Docket No. 06662/034001;

(5)     Various papers published by Ellipso and/or Virtual Geo staff, in particular those of John Draim.

I have attached a copy of all documents that I reviewed and that form the basis of my analysis.

In the comments given below I refer several times to "the Plaintiffs". By this I mean either Mobile Communications Holdings, Inc., Ellipso, Inc., Virtual Geosatellite Holdings, Inc. and/or Virtual Geosatellite, LLC.

I am familiar with Virtual Geo's technology having assisted the company since Virtual GeoSatellite, LLC's inception. I have worked on their application with the FCC for authority to deploy the Virgo system, and their various submissions to the FCC and the International Telecommunications Union (ITU) working groups related to the Virtual Geo technology and the use of "virtual slots".

My summary is as follows.

1)    Virtual Geo consists of three major elements:

    a.    A technology that emulates the world of geostationary ("geo") satellites (the majority of currently deployed commercial satellites, in that it enables the satellites following its orbits to appear nearly stationary over the earth, thus its name "Virtual Geo". This technology also allows a satellite in a virtual geo orbit to avoid this geo space by a large angle, thus permitting the reuse of FCC allocated frequencies. This application is the subject of several patents awarded to Virtual Geo, especially the 5,957,409 listing Draim as co-inventor.

        Note that the ability to reuse geo frequencies is a very valuable asset of the Virtual Geo technology as it permits the beneficiary to deploy its system and thus offer services to a wide variety of customers which might otherwise not have access to the overcrowded geo orbit. These newly enabled customers can provide a wide range of services, including network television, direct broadcast TV, long distance telephone service, high speed internet service and video services.

    b.    The application of that technology to more than one set of satellites, thus allowing several competitors to use that same technology and its benefits in order to provide future high speed and broadband services. This is done by separating each satellite orbit from that of a competitor by a specific minimum angle, thus defining a space, named by the Company the "virtual space". The locations of the satellites in that space are referred to as "virtual slots". This application is the subject of the provisional patent application filed in February 2000 listing Draim as co-inventor, Docket No. 06662/034001.

    c.    A system called Virgo filed with the FCC for authority to build, deploy and operate. This is the subject of patent application Docket No. 06662/034001, listing Draim as co-inventor.

From these descriptions I conclude that Virtual Geo is a technology that emulates the currently used Geostationary arc, using elliptical orbits and

active arcs to avoid interfering with current satellites, thus enabling the reuse of spectrum, and permitting the assignment of orbital parameters, well coordinated with each other, that provide access to a multitude of virtual slots.

2) COBRA, which stands for Communications Orbiting Broadband Repeating Array, is a technology, which, as described in the paper referred to in (2) above, permits the reutilization of spectrum and the creation of multiple orbital locations, or slots. COBRA achieves these objectives using elliptical orbits with apogee and perigee altitudes, respectively, of 26,978 kilometers and 807 kilometers, practically identical to those of Virgo.

From the benefits and the basic design COBRA appears identical to Virtual Geo, or to Virgo itself. In addition to apogee and perigee, other parameters seem identical or near-identical between the two systems:

a. Page 3 of the COBRA paper (reference (2) above) reveals that COBRA uses satellites in 8-hour orbits, the same as Virgo;

b. COBRA operates preferably in the Ku band, the same as Virgo which is seeking authority from the FCC to operate in that frequency band;

c. COBRA defines three "regions" of preferred coverage per hemisphere, the same as Virgo;

d. The semi-major axis of the orbit is 20,261 kilometers, almost identical to Virgo;

e. The inclination angle is 63.41 degrees, almost identical to that of Virgo;

f. The eccentricity is 0.6458, nearly the same as Virgo;

g. The paper states "A significant variation in the appearance of a repeating ground track elliptical orbit is very evident when using other than 90 degrees or 270 degrees argument of perigee". The same sentence appears in 5,957,409, page 8, lines 23-27: "Placement of apogees over a selected latitude and longitude for optimal coverage of a potential market area. This is done through proper selection of all the orbital parameters, *with particular attention given to the selection of the argument of perigee, ω*". (emphasis added).

h. The picture on page 4 of the COBRA paper shows ω=226 degrees for a "left leaning" orbit, and w= 314 degrees for a right leaning orbit, both 44 degrees on each side from Virgo's 270 degrees.

i. On page 4 of the COBRA paper the authors state that they "... have studied elliptical orbits with 'maximum lean' ..."

j.    On page 5 of the COBRA paper the authors state that the "payload duty cycle" can be adapted to fit the elliptical character of the orbit, a concept already discussed in 5,957,409 and other related patents listing Draim as co-inventor, especially Patent No. 5,845,206 owned by Virtual Geo.

k.    On page 8 of the COBRA paper the authors describe how the so-called 2-degree spacing in-track yields 24 active satellites per teardrop. The concept of using 2 degree spacing in-track is the main subject of patent application Docket No. 06662/034001 cited above.

l.    On Page 10 of the COBRA paper the operating altitude is given as 21,000-27,000 km, within the 18,000-27,000 km in the Virgo embodiment of the invention. (Note that the narrower range of operational altitudes is due to the "leaning" of the orbit in the non-Virgo embodiment).

m.    The reference to "leaning 3 hour elliptical orbits" is clearly a reference to Application No. 9/640.565, filed by Draim on behalf of the Plaintiffs.

n.    On page 12 of the COBRA paper the authors list the potential applications:  broadcast radio/TV, broadband Internet, the military, and those using inter-satellite links.  These are the applications sought in Virgo's FCC application submitted in January 1999, and to which Draim contributed as an employee of the Plaintiffs.

o.    In their "Conclusion", the authors of the COBRA paper stress the importance of "non interfering with geos", "non-interfering with other teardrop" systems, "high elevation angles" and "cost effectiveness", exactly the attributes that make Virgo special, and attractive to regulators.

This cursory review indicates that, while one must leave it to the US Patent and Trademark Office to appreciate the novelty, or lack thereof, of this new interpretation of Virtual Geo technology, it seems undeniable that all ideas evoked and used in this paper were developed in the context of Virgo's development, and that of Ellipso.  The main point is that COBRA is a Virgo system with "leaning" orbits, two concepts already described and protected by patents and/or patents pending by the Plaintiffs, and all these USPTO activities list Draim as inventor and/or co-inventor.  At the same time as the authors were employed by the Plaintiffs, Virtual Geo and the "leaning" of orbits were already patented and/or patent pending by the Plaintiffs, with Draim as inventor and/or co-inventor for these same patents.  Specifically:

a.    As indicated earlier, the "leaning" variation was mentioned in the original patent 5,957,409, page 3, line 23.

b.    In the patent application "line of apsides", docket No. 9/640.565 the "leaning" concept as applied to elliptical orbits is already credited to the Plaintiffs.

3)    From the referenced papers, dated Fall 1999 and early 2000, Draim, and others employed by the Plaintiff's, had already described, and presented (in particular to the FCC) the benefits of using multiple Virtual Geo orbits, 2 degree spaced, to produce a reuse of spectrum of unprecedented importance.

From the above comments, I conclude that the authors of the COBRA paper utilized the patented system known as Virtual Geo (Plaintiffs are patent holders), or Virgo, and combined it with the Line of Apsides (same Plaintiffs are patent holders) to produce a variation that 5,957,409 anticipated in any event.  Based on that it seems to me that the intellectual property used to "develop" COBRA was known by Draim while employed by the Plaintiffs, and that intellectual property is already owned by the Plaintiffs.

Qualifications:

I am a graduate engineer and currently President of Telecomm Strategies, Inc, an engineering consulting company specializing in satellite communications.  My detailed Curriculum Vitae is attached.

Sincerely,

Dr. Richard J. Barnett
Telecomm Strategies, Inc.