# Exhibit 16

Memorandum in Support of Motion for
Summary Judgment and for an Award of
Attorneys Fees and Costs by John E. Draim

# S E T T L E M E N T   A G R E E M E N T

This Settlement Agreement ("Settlement Agreement") dated as of July 20, 2005

is made by and among:

PETER D. SAHAGEN ("Sahagen"); SST GLOBAL TECHNOLOGY, LLC

("SST"), a Delaware limited liability company formerly known as SAHAGEN SATELLITE

TECHNOLOGY GROUP, LLC ("SSTG"), a Delaware limited liability company; SPACE

RESOURCE CORPORATION ("Space Resource"), a Delaware corporation; SPACE

RESOURCE INTERNATIONAL ("Space Resource International"), a Bermuda corporation;

SPACE RESOURCE AMERICA CORP., a Delaware corporation; VGS, INC. ("VGS"), a

Delaware corporation, all of the above c/o Ardustry Entertainment, LLC, 9255 Sunset Boulevard,

Suite 1000, West Hollywood, California 90069; JOHN DRAIM ("Draim"), residing at 9310

Telfer Court, Vienna, Virginia 22182; NEEL HOWARD ("Howard"), residing at 200 Skidmore

Boulevard, Gaithersburg, Maryland 20877; TOM H. QUINN ("Quinn"), residing at 1217 28th

Street, N.W., Washington, D.C. 200007; RICHARD A. INCIARDI ("Inciardi"), residing at

19800 Helmond Way, Montgomery Village, Maryland 20886 (all of the above individuals and

corporations collectively, the "Sahagen Parties");

and

DAVID CASTIEL ("Castiel"), residing at 4819 Indian Lane, N.W., Washington,

D.C. 20016; ELLIPSO, INC. ("Ellipso"), a Delaware corporation with a principal place of

business located at 4410 Massachusetts Avenue, N.W., No. 385, Washington, D.C. 20016;

VIRTUAL GEOSATELLITE, LLC ("Virtual Geo"), a Delaware limited liability company with a

principal place of business located at 4410 Massachusetts Avenue, N.W., No. 385, Washington,

D.C. 20016; MOBILE COMMUNICATIONS HOLDINGS, INC. ("MCHI"), a Delaware

corporation with a principal place of business located at 4410 Massachusetts Avenue, N.W., No. 385, Washington, D.C. 20016; VIRTUAL GEOSATELLITE HOLDINGS, INC. ("Virtual Geo Holdings"), a Delaware corporation with a principal place of business located at 4410 Massachusetts Avenue, N.W., No. 385, Washington, D.C. 20016; JILL STERN ("Stern"), residing at 4846 Glenbrook Road, N.W., Washington, D.C. 20016; and JANE K. CHAPMAN ("Chapman"), as executrix of the Estate of John Chapman, deceased, residing at 316 Pine Creek Avenue, Fairfield, Connecticut 06430 (collectively, the "Castiel Parties")(each, and all of them individually, a "Party" and collectively, the "Parties"). Individuals Draim, Howard, Inciardi, Quinn, Stern and Chapman, while parties to one or more of the lawsuits identified below, are not necessary parties to this Settlement, but only to the settlement of the individual cases in which they are parties, and they will sign, or counsel for them will sign, only the Release (in the form of Appendices C-J hereto) and the Stipulation of Dismissal With Prejudice in the case in which they appear, as appropriate.

## W I T N E S S E T H:

WHEREAS, several of the Parties to this Settlement Agreement are currently parties to, and participants in, the actions entitled SST Global Technology, LLC v. Chapman, et al., 02 Civ. 7687 (CSH)(S.D.N.Y.); Draim v. Virtual Geosatellite, LLC, et al., Case No. 01-1588-A (JR)(D.C.D.C.); MCHI, et al. v. Draim, Case No. 01-08202 (JR)(D.C. D.C.); Ellipso, Inc., et al. v. Inciardi, Case No. 02-0433 (JR)(D.C.D.C.); and/or Virtual Geosatellite, LLC, et al. v. Sahagen, et al., Case No. 3286-00 (Super. Ct., D.C.) (each an "Action" and collectively, the "Actions"); and

WHEREAS, one or more of the Sahagen Parties claims ownership of the

- 2 -

intellectual property set forth and described in Exhibit A to this Settlement Agreement; and

WHEREAS, one or more of the Castiel Parties claims ownership of the intellectual property set forth and described in Exhibit B to this Settlement Agreement; and

WHEREAS, Sahagen currently owns stock and/or membership interests in Ellipso and Virtual Geo; and

WHEREAS, the Sahagen Parties, on the one hand, and the Castiel Parties, on the other, desire to settle and compromise all claims and disputes between them in accordance with the provisions of this Settlement Agreement, including, without limitation, any and all claims that were or could have been raised in the Actions or in any other litigation in which they participated in the past, any and all claims relating to, or arising as a consequence of, their claim of ownership of the intellectual property set forth and described in Exhibits A and B to this Settlement Agreement, and any and all claims relating to, or arising as a consequence of, Sahagen's ownership of stock and/or membership interests in Ellipso and Virtual Geo;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged by each Party, it is agreed as follows:

## ARTICLE I

### Settlement and Dismissal of the Actions

1.1.  Incident to the execution of this Settlement Agreement, each and every Party to this Settlement Agreement who is also a party in one or more of the Actions shall, through their counsel of record in said Action, execute Stipulations of Dismissal With Prejudice in the form deemed appropriate by their counsel.  Counsel of record for defendants in each Action

shall, within five (5) business days of the execution of this Settlement Agreement, file said

stipulation with the court in which said Action is pending and shall, simultaneous therewith,

request that said stipulation be "so ordered" by the Court.

  1.2. Sahagen represents and warrants that in connection with, and as a condition

precedent to, this Settlement Agreement, SPACE RESOURCE INTERNATIONAL / SPACE

RESOURCE CORPORATION shall satisfy any and all claims and/or demands that were and/or

could have been asserted by Draim against the Castiel Parties, whether asserted in any Action or

otherwise.

  1.3. Sahagen represents and warrants that in connection with, and as a condition

precedent to, this Settlement Agreement, he shall personally satisfy any and all claims and/or

demands that were and/or could have been asserted by Inciardi against the Castiel Parties,

whether asserted in any Action or otherwise. Inciardi has agreed to, and by signing his Release,

does thereby waive and release any and all claims and/or demands that were and/or could have

been asserted by Inciardi against the Castiel Parties and/or the Sahagen Parties, or any of them,

whether asserted in any Action or otherwise.

  1.4. There shall be no monetary payment from any of the Castiel Parties to any of

the Sahagen Parties, or from any of the Sahagen Parties to any of the Castiel Parties, in

connection with the consummation of this Settlement Agreement. Each Party shall bear its own

expenses, costs and attorneys' fees in the Actions, as well as in the negotiation and execution of

this Settlement Agreement.



## Article II

### Transfer of Stock Interests in Ellipso and Virtual Geo

2.1. Sahagen hereby agrees to transfer and assign to Ellipso and Virtual Geo any and all stock and/or membership interests he currently holds in said entities. In connection with the foregoing, Sahagen agrees that he shall, within five (5) business days of the execution of this Settlement Agreement, return to Ellipso and/or Virtual Geo any and all certificates or other evidences of his ownership interest in said entities. Should Sahagen fail to locate and return such certificates or evidences of ownership within said period, the Parties agree that all such certificates or other evidences shall be deemed cancelled and withdrawn, the intent being that Sahagen shall have no ownership interest in either such entity following the consummation of this Settlement Agreement.

2.2. Notwithstanding the foregoing, should Sahagen reach an agreement with John Keough, or New England Phoenix, and should Sahagen request that Ellipso issue shares pursuant to the letter which appears as Exhibit C hereto, that request shall be honored. Following the cancellation on the corporation's books of the shares or membership interests owned by Sahagen, Ellipso (but not Vitural Geo) shall re-issue an equal number of shares (24,716) to John Keough or New England Phoenix without further action; if John Keough requests transfer to another entity, the Ellipso Board will have to approve that entity as a transferee.

### ARTICLE III

### Acknowledgment of Ownership

3.1. The Castiel Parties, and each of them, hereby acknowledge and agree that one or more of the Sahagen Parties is, to the extent that the Patent Office confers ownership, the

lawful owner of the patents, claims and protectable improvements set forth and described in Exhibit A to this Settlement Agreement. In connection with the foregoing, the Castiel Parties, and each of them, hereby covenant and agree that they will not make commercial use of said technologies or improvements without the express written consent of the relevant Sahagen Parties.

3.2. The Sahagen Parties, and each of them, hereby acknowledge and agree that one or more of the Castiel Parties is, to the extent that the Patent Office confers ownership, the owner of the patents, claims and protectable improvements set forth and described in Exhibit B to this Settlement Agreement. In connection with the foregoing, the Sahagen Parties, and each of them, hereby covenant and agree that they will not make commercial use of said technologies or improvements without the express written consent of the relevant Castiel Parties.

## ARTICLE IV.

### Releases; Covenant Not To Sue

4.1. Incident to the execution of this Settlement Agreement, the Castiel Parties, and each of them, shall execute and deliver to Wayne S. Williams, Esq. general releases of all claims in favor of said parties as against the Sahagen Parties, and each of them, in the form annexed hereto as Exhibit H. It is understood and agreed that said releases are intended to, and shall, fully release and discharge the Sahagen Parties, and each of them, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, whether know or unknown, and whether in law, admiralty or equity, which the Castiel Parties, or any one of them, ever had,



may now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of the execution of this Settlement Agreement including, without limitation, any and all claims that were or could have been raised in the Actions, any and all claims relating to, or arising as a consequence of, the Parties' claim of ownership of the intellectual property set forth and described in Exhibits A and B to this Settlement Agreement, and any and all claims relating to, or arising as a consequence of, Sahagen's ownership of stock and/or membership interests in Ellipso and Virtual Geo.

4.2.  Incident to the execution of this Settlement Agreement, the Sahagen Parties, and each of them, shall execute and deliver to Tighe Patton Armstrong Teasdale, PLLC, LLP general releases of all claims in favor of said parties as against the Castiel Parties, and each of them, in the form annexed hereto as Exhibit I.  It is understood and agreed that said releases are intended to, and shall, fully release and discharge the Castiel Parties, and each of them, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, whether know or unknown, and whether in law, admiralty or equity, which the Sahagen Parties, or any one of them, ever had, may now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of the execution of this Settlement Agreement including, without limitation, any and all claims that were or could have been raised in the Actions, any and all claims relating to, or arising as a consequence of, the Parties' claim of ownership of the intellectual property set forth and described in Exhibits A and B to this Settlement Agreement, and any and all claims relating to,



or arising as a consequence of, Sahagen's ownership of stock and/or membership interests in Ellipso and Virtual Geo.

4.3. Separate from, and in addition to, the general releases set forth and described in Articles 4.1 and 4.2., supra, the Castiel Parties and the Sahagen Parties, and each of them, hereby agree and covenant not to sue the other, or any one of the others, by reason of the practice by said other party, its successors or assigns, of inventions covered by the claims of patents owned by way of assignment or otherwise, by said other party, its successors or assigns, in a patent infringement or declaratory judgment action, suit or proceeding in any United States District Court or state court challenging the intellectual property owned by the other party (it being understood that state court actions are not permitted for patent infringement under the Constitution and federal patent statutes, but it being agreed that no state court action shall be commenced by any party hereto against any other party hereto in the nature of a patent infringement suit).

Each party agrees on behalf of itself and on behalf of its successors and assigns, that with the exception of infringements that may arise out of, in connection with, or incidental to the practice of inventions covered by the claims of patents it owns, by assignment or otherwise, it shall not infringe patents owned by the other party, its successors or assigns.

In the event a third party takes a controlling interest in a Sahagen Party or a Castiel Party which is the owner, by assignment or otherwise, of patents covered hereunder, this covenant not to sue shall run to such new controlling-interest Party, except for intentional and malicious patent infringement.

- 8 -



This covenant shall apply to any court of competent jurisdiction worldwide, and shall not be construed as a license, nor affect any remedies available under Articles 3.1 or 3.2, supra. This covenant shall apply to any company, partnership or other legal entity, even if not a party hereto, which is owned or controlled by David Castiel or by Peter D. Sahagen.

## ARTICLE V

### Miscellaneous Provisions

5.1. **No Admission.** Each Party to this Settlement Agreement agrees that this Settlement Agreement is not intended as, and does not constitute, an admission by any Party of any fault, liability, or wrongdoing.

5.2. **Further Assurances.** The Parties agree to perform (or procure the performance of) all further acts and things, and execute and deliver (or procure the execution and delivery of) such further documents as may be required by law or as the other Parties may reasonably require to implement and/or give effect to this Settlement Agreement and the transactions contemplated by it.

5.3. **Representations And Warranty As To Authority.** Each of the Parties represents and warrants to the other Parties that such Party has full power and authority to enter into and perform the acts contemplated to be performed pursuant to this Settlement Agreement. The Parties acknowledge and agree that this Settlement Agreement constitutes a valid and legally binding obligation of the Parties, enforceable in accordance with its terms and conditions. The Parties represent and warrant that they need not give any notice to, make any filing with, or obtain any authorization, consent, or approval of any government or governmental agency in

order to consummate the transactions contemplated by this Settlement Agreement. The Parties

further represent and warrant that there is no right, agreement, or law that limits its and/or their

ability to enter into this Settlement Agreement or that would be violated by its entering into this

Settlement Agreement. The execution, delivery and performance of this Settlement Agreement

and all other agreements contemplated hereby have been duly authorized by the Parties.

     5.4. **Non-Contravention**. Each of the Parties represents and warrants that

neither the execution and delivery of this Settlement Agreement, nor the consummation of the

transactions contemplated hereby, will violate any constitution, statute, regulation, rule,

injunction, judgment, order, decree, ruling, charge, or other restriction of any government,

governmental agency, or court to which the Parties are subject, or conflict with, result in a

breach of, or constitute a default under any agreement, contract, lease, license, instrument, or

other arrangement to which the Parties are a party.

     5.5. **Notices**. All notices, requests, demands and other communications hereunder

shall be in writing and shall be deemed to have been duly given if delivered by hand or mailed,

registered or certified mail, return receipt requested, postage prepaid, to the following

representatives:

    (a)     If to Castiel (or any Castiel Party):

        Thomas Earl Patton, Esq. or
        David J. Taylor, Esq.
        Tighe Patton Armstrong Teasdale, PLLC
        1747 Pennsylvania Ave., N.W. Suite 300
        Washington, DC 20006

    (b)     If to Sahagen (or any Sahagen Party):

        Wayne S. Williams, Esq.
        c/o Ardustry Entertainment, LLC



9255 Sunset Boulevard
Suite 1000
West Hollywood, CA 90069

(c)    If to Draim, with additional notice to:
John F. Anderson, Esq.
Troutman Sanders, LLP
1660 International Drive, Suite 600
McLean, Virginia 22102

Any party may designate a new representative for the receipt of notices under this

Settlement Agreement by giving notice to the above representatives in accordance with this article.

5.6. **Binding Effect.** This Agreement shall be binding upon, and shall inure to the

benefit of, the Parties, their respective parent entities, subsidiaries and affiliates, and their

respective directors, officers, employees, principals, shareholders, owners, agents,

representatives, predecessors, successors, administrators and assigns, to the full extent permitted

by law.

5.7. **Modifications Must Be In Writing.** This Settlement Agreement, including

exhibits, embodies the entire agreement and understanding of the Parties hereto and terminates

and supersedes all prior independent agreements and understandings between and among them.

This Settlement Agreement shall not be modified or amended except in a writing signed by all

the Parties to this Settlement Agreement.

5.8. **Severability.** If any provision of this Settlement Agreement is held to be

invalid, void, illegal, or unenforceable for any reason by a court of competent jurisdiction, the

validity, legality and enforceability of the remaining provisions of this Settlement Agreement

shall not in any way be affected or impaired and shall continue in full force and effect, and the

provisions of this Settlement Agreement shall be construed and interpreted, to the fullest extent

- 11 -



legally possible, to give effect to the intent of any provision held invalid, void, illegal, or unenforceable.

5.9. **No Waiver.**  Any waiver of any provision contained in or right provided by this Settlement Agreement is ineffective unless in writing.  The failure of any Party to this Settlement Agreement to insist on strict compliance with any of the terms, covenants, or conditions of this Settlement Agreement by any other Party shall not be deemed a waiver of such term, covenant, or condition and any waiver or relinquishment of any right or power under this Settlement Agreement at anyone time shall not be deemed a waiver or relinquishment of any right or power for all or any other times.

5.10. **Counterparts.**  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute a single instrument.

5.11. **Headings.**  Headings in this Settlement Agreement are for purposes of reference and convenience only, and shall not be considered in the interpretation of the language herein.

5.12. **Interpretation.**  The Parties to this Settlement Agreement acknowledge that each of them has been represented by counsel of their own choice throughout all of the negotiations which preceded the execution of this Settlement Agreement and in connection with the preparation and execution of this Settlement Agreement.  None of the Parties hereto, nor their counsel, shall be deemed the drafter of this Settlement Agreement for purposes of construing the provisions hereof.  The language in all parts of this Agreement shall be in all cases construed according to its fair meaning, not strictly for or against any of the Parties hereto.



5.13. **Voluntary Agreement: No Duress.** This Settlement Agreement is executed voluntarily and without any duress or undue influence on the Parties or their employees, agents, or attorneys, and no party is relying upon any inducements, promises, or oral or written representations not contained herein made by any other Party or otherwise. Each Party has had a full opportunity to review and understand this Settlement Agreement and to receive the advice of independent legal counsel regarding the terms, meaning and execution of this Settlement Agreement.

5.14. **Confidentiality.** The Parties to this Settlement Agreement shall not disclose to any person, directly or indirectly, any information concerning the terms of this Agreement except to its attorneys, accountants or other professionals who have been advised of the confidential nature of this Settlement Agreement, for the purposes of obtaining necessary professional advice, or as may be required by law, except that nothing herein shall preclude the disclosure of such information on a need to know basis to actual or potential investors in a legal entity which is, or is a successor to, a Party hereto.

5.15. **Governing Law.** This Agreement and its application shall be governed by the laws of the District of Columbia.

IN WITNESS WHEREOF, the Parties hereto have executed or caused this Settlement Agreement to be executed by their duly authorized representatives as of the date first above written.



PETER D. SAHAGEN



SST GLOBAL TECHNOLOGY, LLC

by:

Peter D. Sahagen, Chairman


SAHAGEN SATELLITE TECHNOLOGY
GROUP

by:

Peter D. Sahagen, Chairman


SPACE RESOURCE CORPORATION

by:

Peter D. Sahagen, Chairman


SPACE RESOURCE INTERNATIONAL

by:

Peter D. Sahagen, Chairman


SPACE RESOURCE AMERICA CORP.

by:

Peter D. Sahagen, Chairman

VGS, INC.

by: _____

Peter D. Sahagen, Chairman


_____

DAVID CASTIEL


ELLIPSO, INC.

by: _____

David Castiel, President and CEO


VIRTUAL GEOSATELLITE, LLC

by: _____

David Castiel, Chairman and CEO

MOBILE COMMUNICATIONS

HOLDINGS, INC.

by: _____

David Castiel, President


VIRTUAL GEOSATELLITE HOLDINGS, INC.

by: _____

David Castiel, President

# APPENDIX A

Patent claims owned by Sahagen Parties, as of 20 April 2005:

US Patents

(1) **Constellation for Simplified Tracking** US Patent 6,714,521, issued 03/30/04 (all claims).

(2) **Systems and Method for non-geo satellites that do not interfere** US Patent 6,701,126, issued 03/02/04 (all claims).

and continuation, continuation-in-part, and divisional patents issued not listed herein.

Also:

(3) PCT/US01/50322 and resulting worldwide patents.

(4) PCT/USO1/43072 and resulting worldwide patents.

# APPENDIX B

Patent claims owned by Castiel parties as of 20 April 2005 (all claims):

US Patents (title, patent number and date issued).

(1) Elliptical Satellite System Emulating GEO Characteristics 6,795,687, 09/21/04
(2) Antenna Null  6,766,166, 07/20/04
(3) Elliptical Satellite System Emulating GEO Characteristics 6,678,519 01/13/04
(4) Virtually Geostationary Satellite Array 6,695,260 02/24/04
(5) Elliptical Satellite System Emulating GEO Characteristics 6,611,683 08/26/03
(6) Non-Geostationary Orbit Satellite Constellation for Continuous Coverage of Northern Latitudes: 6,597,989
(7) Elliptical Satellite System Emulating GEO Characteristics 6,577,864 06/10/03
(8) Redundant Satellite System 6,487,476 11/26/02
(9) Elliptical Constellations /w Line of Apsides in Eq'tl Plane  6,457,678 10/01/02
(10) Elliptical Satellite System Emulating GEO Characteristics 6,263,188 07/17/01
(11) Adaptively Positioned Solar Array 6,227,497 05/08/01
(12) Elliptical Orbit Satellite System and Deployment 6,102,335 08/15/00
(13) Dual Ring Array of Satellites (Gear Array) 5,979,832 11/09/99
(14) Elliptical Satellite System Emulating GEO Characteristics 5,957,409 09/28/99
(15) Non-Geo Stationary…above 25 Degree and its Extension…5,931,417,
(16) Elliptical Orbit Satellite System with Controllable Coverage 5,788,187 08/04/98
(17) Elliptical Satellite System Emulating GEO Characteristics 5,845,206 01/21/98
(18) Elliptical Orbit Satellite System with Controllable Coverage 5,669,585 09/23/97
(19) Elliptical Orbit Satellite System with Controllable Coverage 5,582,367 12/10/96

and continuation, continuation-in-part, and divisional patents issued not listed herein.

Also:

(20) PCT/US99/01291 and resulting worldwide patents
(21) PCT/US95/02113 and resulting worldwide patents
(22) PCT/US96/03867 and resulting worldwide patents

and

(23) Portable Telephone 6,249,672.

JUL-22-2005 FRI 04:26 PM Tighe Patton Armstrong        FAX NO. 2024542805                P. 18/21

## GENERAL RELEASE

**TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT**

**DAVID CASTIEL, as Releasor,**

for good and valuable consideration, receipt of which is hereby acknowledged, hereby releases and discharges

**PETER D. SAHAGEN, SST GLOBAL TECHNOLOGY, LLC, SAHAGEN SATELLITE TECHNOLOGY GROUP, LLC, SPACE RESOURCE CORPORATION, SPACE RESOURCE INTERNATIONAL, VGS, INC., JOHN DRAIM, NEEL HOWARD, TOM QUINN, and RICHARD A. INCIARDI, as Releasees,**

from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the Releasees, the Releasor, Releasor's successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever, whether known or unknown, from the beginning of the world to the day of the date of this release.

The words "Releasor" and "Releasee" include all releasors and all releasees under this Release.

This Release may not be changed orally.

IN WITNESS WHEREOF, the Releasor has hereunto set Releasor's hand and seal on the 20 day of July, 2005.

/David Castiel

## ACKNOWLEDGMENT

STATE OF *Washington* )

~~COUNTY OF~~ *District of Columbia* )    ss:

On July *20*, 2005 before me, the undersigned, personally appeared David Castiel, personally known to me or proved on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his personal capacity, and that by affixing his signature on the instrument, executed the instrument.

_____
Notary Public

My commission expires:     Juanita M. Spears
                            Notary Public, District of Columbia
                            My Commission Expires 01-31-2008

-2-

## GENERAL RELEASE

**TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT**

**PETER D. SAHAGEN, as Releasor,**

for good and valuable consideration, receipt of which is hereby acknowledged, hereby releases and discharges

**DAVID CASTIEL, ELLIPSO, INC., VIRTUAL GEOSATELLITE, LLC, MOBILE COMMUNICATIONS HOLDINGS, INC., VIRTUAL GEOSATELLITE HOLDINGS, INC., JILL STERN, and JANE K. CHAPMAN, as Releasees,**

from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the Releasees, the Releasor, Releasor's successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever, whether known or unknown, from the beginning of the world to the day of the date of this release.

The words "Releasor" and "Releasee" include all releasors and all releasees under this Release.

This Release may not be changed orally.

IN WITNESS WHEREOF, the Releasor has hereunto set Releasor's hand and seal on the ___ day of July, 2005.

_____
Peter D. Sahagen

## ACKNOWLEDGMENT

STATE OF                    )
                                        ss:
COUNTY OF                 )

On July __, 2005 before me, the undersigned, personally appeared Peter D. Sahagen, personally known to me or proved on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his personal capacity, and that by affixing his signature on the instrument, executed the instrument.

_____
Notary Public

My commission expires: 6-11-2008