# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC.,<br>A Delaware Corporation,<br><br>and<br><br>VIRTUAL GEOSATELLITE LLC, a<br>Delaware Limited Liability Company,<br><br>Plaintiffs<br>v.<br><br>John E. DRAIM, an individual,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPPOSITION TO MOTION FOR
ATTORNEYS FEES AND COSTS**

Case No. 1:06cv01373 (JR)

_____

The Plaintiff hereby respectfully requests that this court deny the Defendant's Motion for Attorney's Fees and Costs under DC Code 36-404(1), in the above-captioned case, as the present action was filed in good faith.  A Memorandum in Opposition to Attorney's Fees and Costs is hereby submitted.

BY: counsel

/s/ David Bogart Dort

David Bogart Dort, DC. Bar No. 465,728

**Dort IP PLLC
(Rubinstein Law Group, P.C.)**
2020 14th Street N, Suite 700
Arlington, VA 22201
Telephone:    (202)-423-1085
Facsimile:    (202)-318-7729
Email: ddort@dort.com; ddort@rublaw.com
Attorneys for Plaintiff,
Ellipso, Inc.
Virtual Geosatellite LLC

-1-

1
2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

3
4   ELLIPSO, INC.,                        )
5   A Delaware Corporation,               )
                                          )
6   and                                   )
                                          )
7   VIRTUAL GEOSATELLITE LLC, a           )
    Delaware Limited Liability Company,   )
8                                         )
9                      Plaintiffs         )
10         v.                             )
                                          )
11  John E. DRAIM, an individual,         )
                                          )
12                     Defendant.         )

)
)
)
)
**MEMORANDUM IN SUPPORT OF
OPPOSITION TO MOTION FOR
ATTORNEYS FEES AND COSTS**

Case No. 1:06cv01373 (JR)

13
14

**MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEYS
FEES AND COSTS**

15  Defendant, John E. Draim, is not entitled to Attorney's fees or costs in the above
16  captioned case because the claim of misappropriation in the present action was not
17  made in bad faith.  DC Code §36-404(1) states that a court may award reasonable
18  attorney's fees to the prevailing party if "a claim of misappropriation is made in bad faith."
19  As shown by the arguments and evidence discussed below, Ellipso did not bring this
20  present action in bad faith, as evidenced by the following:

21      1)  Each and every claim of the Defendant's patent US Patent 6,701,126, (the '126
22          patent), issued March 2, 2004, and currently assigned to a third party, was initially
23          rejected in Reexamination as anticipated (disclosed) by Ellipso's US Patent
24          6,954,613 (the '613 patent) (see Plaintiff's Exhibit 1), indicating that any trade
25          secrets included in the '613 patent and its parent provisional application (the '280
26          application) may have been misappropriated and claimed by the Defendant in his
27          '126 patent and subsequently assigned to a third party.
28

2) Ellipso's action for Trade Secret misappropriation again the Defendant would have survived the Defendant's Motion for Summary Judgment had the Plaintiff been given an opportunity to respond (see previously filed Motion to Vacate).

3) On April 18, 2006, in a trial in a previous case, *Draim v. Virtual Geosatellite Holdings, Inc. et al.* (1:01 cv 2690), the Defendant admitted under oath to subsequently assigning technical subject matter that he had previous assigned to Ellipso, to a third party.

4) The Defendant has not been released by any settlement agreement (Defendant's Exhibit  and/or previous judgments or litigation (Exhibit 4).

Therefore, the court must deny the Defendant's Motion for Attorneys Fees and Costs.

## BACKGROUND AND RELEVANT FACTS

In a complaint filed in DC Superior Court on July 20, 2006 ("the Complaint") the Ellipso parties (herein "Ellipso") alleged that the Defendant's actions, primarily in the form of claiming intellectual property belonging to Ellipso as his own, and transferring that intellectual property to a third party, constituted trade secret misappropriation under DC Code §36-404 ("the Act").  Thus, independent of any actions of a third party, the Defendant's alleged trade secret misappropriation of Ellipso's intellectual property has forced Ellipso to perform worldwide "locate and recover operations" for its misappropriated intellectual property, at great expense.[1]  Further, Ellipso has lost business opportunities due to the Defendant's alleged trade secret misappropriation.

In response to a denied Motion to Dismiss, the Defendant was invited by this Court to file a Motion for Summary Judgment to expedite the matters that had been asserted in the Defendant's Motion to Dismiss.  In summary, in the Motion for Summary Judgment, the Defendant asserted that: a) the technical subject matter set

---

[1] Indeed, thanks to its investigative efforts, Ellipso learned that Draim or his assignee sought to obtain a patent, which is a companion to the '126 patent, through the European Patent Office.  This patent application, and subsequent denial by the European Patent Office, does not appear to have been disclosed to Ellipso during discovery of the *Draim v. Virtual Geosatellite Holdings, Inc. et al.* case.

1
2
3
4
5
6
7

forth in the Complaint was not a "trade secret" under the Act; b) that even if the subject matter set forth in the Complaint was a trade secret, Ellipso was barred by the statute of limitation of three years from discovery of the misappropriation or reasonable diligence.  Further, the Defendant asserted that: c) he had been released by Ellipso in a settlement agreement of July 20, 2005 with third parties, and d) that the trade secret cause of action had been dismissed with prejudice in a previous case between the parties.  The Defendant stated that each one of the Defendant's assertions was related to Ellipso's good faith filing of the present action.

8
9
10
11
12
13
14
15

On June 28, 2007, this Court granted the Defendant's Motion for Summary Judgment of May 15, 2007 "as conceded" by the Plaintiff, due to the Court's Order that the Plaintiff would not be granted additional time to answer the Defendant's Motion for Summary Judgment in the expanded thirty day period agreed to by the parties on April 12, 2007.   This Opposition is being filed simultaneously (previously filed) with a Motion to Vacate the Order of June 28, 2007, in which the Plaintiff has provided evidence of non-receipt of the Motion of May 15, 2007.   However, the court allowed Ellipso until July 9, 2007 to respond to the Request for Attorney's Fees and Costs by Defendant.

16
17
18
19
20

For the reasons stated below, the Defendant is not entitled to Attorney's fees and costs in the present case, pursuant to DC Code §36-404(1) as the above-captioned case was filed and prosecuted in good faith.  Even if the court grants the Defendant's Motion for Summary Judgment (and denies the previously filed Plaintiff's Motion to Vacate), the defendant is not entitled to fees or costs in this case.

21
22

**I.  Ellipso has a Clear, Good Faith Cause of Action against Draim for Misappropriation of Trade Secrets under DC Code §36-404 that is not barred by the Statute of Limitations.**

23
24
25

a. Proceedings in US Reexamination 90/007974, of US Patent 6,701,126 indicate that trade secret material in the '126 patent (as well as other patent applications) may have been inappropriately "copied" from Ellipso's (confidential) patent applications, including material from Ellipso's 6,954,613 patent.

26
27
28

On August 30, 2006, the '126 patent which had been issued to the Defendant, and assigned to a third party, was ordered re-examined by the USPTO, in view of the '613. On March 12, 2007, the Examiner initially rejected each and every claim of the '126

patent as anticipated by Ellipso's '613 patent under 35 USC §102(e).  The rejection in the form of a Patent Office "Office Action" is included as Plaintiff's Exhibit 1.

Plaintiff's Exhibit 1 shows that each and every claim of the Defendant's '126 Application was (initially) rejected in Reexamination as anticipated by Ellipso's '613 patent, indicating that (the alleged) trade secrets included in the '613 patent (the '215 application) may have been misappropriated, claimed by the Defendant, and then assigned to a third party.

Further, Exhibit 2 shows that the Defendant declared (under penalties defined in 28 USC §1001) that he was the "first, sole and original inventor"…"of the subject matter ***claimed"*** (not "disclosed," emphasis added) in the '126 patent.

Ellipso asserts that the initial Reexamination decision and subsequent rejection of each and every claim of the '126 patent under a prior-filed Ellipso patent application, is clearly illustrative that a genuine material fact exists in the present case as to whether the Defendant misappropriated material that should be considered as trade secrets, namely the content of Ellipso's confidential patent applications, in the form of both technical subject matter (disclosure) and claimed subject matter (the claims).  The decision(s) by Commissioner for Patents are illustrative that Ellipso clearly had a reason to have a good faith belief that its trade secrets had been misappropriated by the Defendant, fraudulently **claimed** for himself as sole inventor under US Patent law (Exhibit 2), and subsequently **assigned** to a third party.

b. The '289 and '215 patent applications include material that includes trade secrets as defined by the Act.

The Defendant mistakenly asserts that the FCC Application of January 8, 1999 included all of the material that was included in the '289 provisional (and subsequent '215 non-provisional) applications, namely, that the files themselves and content of those applications were valuable trade secrets. The Act defines a trade secret as "information that derived actual or potential independent economic value from not being generally known to another and the information is the subject of reasonable efforts to maintain secrecy."   Clearly, the '289 provisional and subsequent '215 non-provisional qualify as trade secrets independently of the material in the FCC application.

The Declaration of John Anderson, filed May 15, 2007, states that "Plaintiffs took no efforts to maintain the secrecy of their inventions once a patent application had been filed and their allegation of "trade secret" protection for those inventions is baseless."   The Defendant improperly asserts that Ellipso made the patent applications themselves public and that Ellipso lost their entire trade secret value in the confidential patent application, by applying for an FCC application and attracting investment and academic interest, Thus, the Defendant clear has failed to recognize that the disclosure and claimed subject matter of Ellipso's confidential patent application(s), clearly meets the definition of a trade secret as defined by the Act.

The Defendant states that "in fact, plaintiffs undertook concerted, public efforts to disclose and market the invention claims [sic] in those applications (P. 16, ¶2).  And further "plaintiff's disclosed that system in the FCC filing in January, 1999." (P.16, ¶3). Ellipso does not deny its efforts to procure FCC licenses and investment prior to September 10, 1999 (the day of the filing of '289 provisional application) for related technologies and inventions.  However, that does not mean: a) that Ellipso intended for the technical and claimed subject matter of the '289 provisional application and the '215 non-provisional application, to lose their status as a trade secret; and that: 2) all technical subject matter in the form of a trade secret in those applications was lost by the FCC application.

The Defendant appears to ignore the definition of a trade secret as defined in the Act, to argue that material related to the inventions that may be claimed in a patent application, of the fact that an unpublished patent application is clearly a trade secret.  The "trade secret value" of the technical and claimed subject matter of a confidential patent application can only be ferociously apparent to the owner of a patent application who discovers that a former employee has subsequently **claimed** (not merely disclosed) and patented those inventions all for himself.  In the present case, the trade secret value, as defined by the Act, is made more apparent by considering the astronomical odds that each and every element of all 27 claims of the Defendant's '280 application would be fully anticipated by a single Ellipso patent application that happened to be filed 7-1/2 months before the Defendant's departure.  Thus, Ellipso clearly has a good faith reason to believe that its confidential patent applications, in the form of the '289 provisional and the '215 non-provisional, included trade secrets that had not been made public.

c. The Defendant's actions before the patent office are inconsistent with the assertions that the FCC application of January 8, 1999 was "public material." (i.e. not a trade secret.)

Defendant cannot both simultaneously avail himself of a "public disclosure" defense to a trade secret, claiming that the subject matter of the FCC Application of January 8, 1999 was "public material," *id est,* that the FCC application of January 8, 1999, was not a trade secret, thereby removing the trade secret status of the '289 provisional application, while the Defendant's failed to reveal the FCC application "public material" to the Patent Office during the prosecution of the '280 application.

Exhibit 3, shows that the Defendant did not submit the FCC application of January 8, 1999 as a reference in the procurement of the '126 patent. Thus, the logic in Ellipso's assertion that the Defendant cannot is clear:

a) the Defendant asserts that Ellipso's '289 and '215 applications did not include trade secrets, because the FCC application of January 8, 1999 publicly disclosed the subject matter of the those application;

b) The Defendant did not submit the FCC application of January 8, 1999, as prior art in the '126 patent (Exhibit 3), during the prosecution of the '280 application.

c) the Commissioner for Patents has initially determined that all the claims of the '126 application were anticipated by the '289 and 215 applications.

The fact that the patent office (at least initially) opined that each and every claim of the '126 patent was anticipated by what the Defendant *now* alleges as so-called "publicly available material" presents the Defendant with a serious dilemma: either it appears as if the Defendant simply forgot about the so-called "publicly available material" insofar as it related to the "280" application, or the Defendant hid the material in the FCC application of January 8, 1999 ,from the Patent Office in violation of his obligations, *inter alia*, under 37 CFR §1.56 (see Exhibit 2). Either way, Ellipso's intellectual property has been severely compromised. [2]

_____

[2] Ellipso concedes that any failure of the Defendant to disclosure Ellipso's FCC Application of January 8, 1999 in the prosecution of the '280 application does not constitute trade secret misappropriation under the Act, but rather is a violation of 37 CFR 1.56 with regard to the '126 patent and may constitute fraud (or at least misrepresentation) on the Patent Office as defined by, *inter alia*, 37 CFR 10.1 et seq..

Further, now that the Commissioner for Patents has stated that each and every claim of the '126 patent was anticipated by the '613 patent, the Defendant may be admitting that the claims of the '126 patent clearly belonged to Ellipso as early as January 8, 1999, at the time of filing the '280 application, and not to the defendant.  Thus, Ellipso has further proof that it had a good faith belief for filing a trade secret misappropriation action against the Defendant.

d. The Plaintiff's Cause of Action under DC Code §36-404 is not barred by the three-year statute of limitations.

    i. Ellipso is not barred from bringing the present action by the three-year statute of limitations as it was unaware of the particulars and extent of the Defendant's alleged misappropriation until at least March 2, 2004.

Defendant is correct that it provided documents to Plaintiff's Counsel in a previous case between the parties on April 24, 2003 (see Defendant's Exhibits 3-9) and Ellipso has not made any "blatantly false allegations" regarding such disclosure.  In contrast, Ellipso asserts that: a) the Defendant is clearly incorrect as to the implications of providing "attorney's eyes only" documents to the Plaintiff's counsel in a previous case; and 2) that the extent and particularity of the Defendant's trade secret misappropriation could not have been discovered prior to the issuance of the '126 patent, as the Defendant had until the issuance of the '126 patent to remedy the mistake that Ellipso has now had to undertake to recover its intellectual property and pursue compensation from the Defendant for such an undertaking.

First, Ellipso would not have been able to "copy" or otherwise use the claims of the Defendant's '280 application, from the documents provided to Ellipso attorneys in the previous case, as "attorneys eyes only" would clearly have not allowed Ellipso to see the files, nor pursue any administrative remedy (e.g. interference, protest, etc.) to recover its own intellectual property that had been misappropriated, *inter alia*, in the Defendant's '280 application.

Further, the Defendant mistakenly states that Ellipso knew of **the** alleged misappropriation as early as 2001.  Ellipso may have known of **a misappropriation by the Defendant,** but not the particular misappropriation(s) set forth in the complaint of July

20, 2006.  A cause of action does not accrue until a party knows, or should have known, of a particular injury.  Here, Ellipso did not become aware of any injury because the '126 patent had not issued (and the Defendant could have still corrected the situation), and could not have been aware of any such injury, prior to July 20, 2003.

ii) Defendant misstates that "the patent applications filed by Mr. Draim in 2000 and 2002 were *all* publicly available in 2002.

The Defendant mistakenly asserts that Ellipso knew of the nature and extent of the Defendant's trade secret misappropriation due to the publication of the PCT applications in May, 2002.   A PCT application *may* be based on, but need not be, the same as, an (United States) application to which it claims priority.  Further, the claims of a PCT application may be completely different than those of a corresponding or priority US Application.  As the Defendant may well be aware, the PCT publications of May 2002, clearly may not have been informative as to the extent of the Defendant's misappropriation.

Further, a PCT application does not confer patent ownership and/or rights, as it is not a patent application in any particular country but rather a method for preparation for filing in many countries.  A Published PCT application is therefore only *disclosure and does not confer ownership rights on the Applicant until* a "national stage entry" application has been filed in a specific country (see footnote 1).

   iii)    The Defendant's Exhibits 10 and 12-14 illustrate that the Plaintiff was not aware of the particular misappropriation and extent of the Defendant's trade secret misappropriation as late as April 24, 2003.

The Defendant's own Exhibits numbered 10 and 12-14 clearly undercut his argument that Ellipso knew exactly which trade secrets, in both the form of disclosed and claimed technical subject matter, had been misappropriated the Defendant.  Defendant's Exhibit 10 (letters from David Castiel to John Draim, December 2002) illustrates that Ellipso had thought that the Defendant had misappropriated technical subject matter from *US Patent 5,957,409 (*issued September 28, 1999*)*, an allegation that has clearly not been asserted in the present action.   Defendant's Exhibits 12, 13 and 14 also support that conclusion that Ellipso thought that the Defendant had misappropriated technical subject matter from US Patent 5,957,409.  US Patent 5,957,409 issued on September 28, 1999, and was

filed based on a priority dating back to March, 1995.  Whether or not the Defendant was entitled to appropriate material from the '409 patent in his own patent application(s) is not the subject of the present action, was not set forth in the Complaint, and therefore must be considered irrelevant to the determination of whether Ellipso filed this action within the required three-year statute of limitations of discovery or discovery with reasonable diligence.

Therefore, clearly Ellipso had a good faith belief that the: 1) Defendant misappropriated trade secrets in the form of confidential patent applications that: 2) Ellipso had taken steps to keep confidential in the form of the '289 and '215 patent applications, and that 3) Ellipso filed the Complaint within three years of the discovery (or discovery with diligence) of the Defendant's alleged misappropriation and that documents provided by counsel in a previous case did not impart the particular knowledge to Ellipso to know the particular trade secrets that had been misappropriated.

**II. The defendant was not released by the Settlement Agreement of July 20, 2005 because he refused to execute the agreement or perform the condition required to asset to the agreement.**

The Defendant was not released by the Ellipso parties in the settlement agreement of July 20, 2005 (Defendant's Exhibit 16).  The Defendant states that he was released by Ellispo's agreement to settle with the Sahagen parties, yet he conspicuously is not a signatory to this agreement.   Ellipso could not release Draim, if Draim did not release Ellipso.  Article I, Section 1.1. of the agreement clearly states that:

> each and every party to this Settlement Agreement who is a party in one or more of the Actions, shall, through their counsel of record in said Action, execute Stipulations of Dismissal with Prejudice in the form deemed appropriate by their counsel.

It is undisputed that the Defendant did not execute the July 20, 2005, agreement either by signing the agreement or by dismissing the prior action against Ellipso. Therefore, because Draim was not a party to the Settlement Agreement, Ellipso did not and could not have released Draim in the Settlement Agreement of July 20, 2005.   In essence, Draim provided no consideration for Ellipso's purported release of its claims against Draim.  Thus, any purported release is unenforceable.  Any other conclusion would result

-10-

in the absurd reasoning that the Defendant would have the right to sue Ellipso at any time for any reason because he refused to execute the July 20, 2005 settlement agreement but that the Defendant was protected from any actions brought by Ellipso.

**III. The defendant has not been released by any prior adjudication**

The Defendant states that the plaintiff has filed the present action in bad faith because they agreed to "dismiss their claims" in a previous case.  Ellipso believes that the Defendant's position that all of the claims in the Complaint had been dismissed with prejudice is erroneous.  A review of Defendant's exhibit No. 15 illustrates that the Defendant is simply mistaken about an agreement to "dismiss" any and all claims of trade secret misappropriation against the Defendant.

In 2005, the parties agreed to limit the claims to be presented to the Court for determination of the patent bonus issue.  However, it does not appear anywhere in the record that any and all claims were dismissed <u>with prejudice</u> or that any of the trade secret misappropriations specifically set forth in the Complaint had been either dismissed or adjudicated.[3]

Furthermore, as shown in Judge Facciola's Conclusion of Facts and Law of May 15, 2006 in a previous case between the parties, (**Exhibit 4**) there simply was no conclusion of any kind related to any allegations of Trade Secret misappropriation.   Judge Facciola only reached conclusions of fact and law with regard to the patent bonus issue and the civil conspiracy defense.

**Conclusion**

Ellipso asserts that the above arguments, the Plaintiff's Exhibits, and even most of the Defendant's Exhibits are supportive of the Ellipso's position that the present action was brought in good faith against the Defendant.

---

[3] Cleverly, Defendant does not contend, because he cannot, that the parties' mutual dismissals were done with prejudice.  It is absurd even to consider, as Defendant would have this Court believe, that the parties, absent a settlement agreement, each would dismiss hotly contested claims with prejudice simply to expedite litigation of a single issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BY: counsel

/s/ David Bogart Dort

David Bogart Dort, DC. Bar No. 465,728

**Dort IP PLLC**
**(Rubinstein Law Group, P.C.)**
2020 14th Street N, Suite 700
Arlington, VA 22201
Telephone:    (202)-423-1085
Facsimile:    (202)-318-7729
Email: ddort@dort.com; ddort@rublaw.com
Attorneys for Plaintiff,
Ellipso, Inc.,Virtual Geosatellite LLC