EXHIBIT 1

 United States Patent and Trademark Office "Office Action" dated March 12, 2007 in support for OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS



UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,974 | 03/18/2006 | 6701126 | MISC.R001 | 2512 |

7590      03/12/2007

RABIN & BERDO PC
1101 14TH STREET NW, SUITE 500
WASHINGTON, DC  20005

| EXAMINER |
|---|
| Joseph R. Pokrzywa |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | IFW |

DATE MAILED: 03/12/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

DAVID BOGART DORT
RUBINSTEIN LAW GROUP PC
1700 DIAGONAL ROAD, SUITE 300
ALEXANDRIA, VA  22314

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/007,974*.

PATENT NO. *6701126*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Ex Parte R   xamination Communication* | Contr. l No. 90/007,974 | Patent Und  r Reexamination 6701126 | |
|---|---|---|---|
| | Examiner | Art Unit | |
| | Joseph R. Pokrzywa | 3992 | |

**A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS ACTION IS SET TO EXPIRE <u>2</u> MONTH(S) FROM THE MAILING DATE OF THIS LETTER. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).** If the specified period for response is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Joseph R. Pokrzywa
Primary Examiner
Art Unit: 3992

cc: Requester (if third party requester)

| *Office Action in Ex Parte R  xamination* | C  ntrol No. 90/007,974 | Patent Under Re xamination 6701126 |
|---|---|---|
| | Examiner Joseph R. Pokrzywa | Art Unit 3992 | |

*-- The MAILING DATE of this communication appears on th  cover sheet with the correspondenc  address --*

a ☐ Responsive to the communication(s) filed on _____ .    b ☐ This action is made FINAL.
c ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____ .

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-27* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims *1-27* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been  (7a)☐ approved  (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

　　a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have

　　　1☐ been received.

　　　2☐ not been received.

　　　3☐ been filed in Application No. _____ .

　　　4☐ been filed in reexamination Control No. _____ .

　　　5☐ been received by the International Bureau in PCT application No. _____ .

　　　* See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

JOSEPH R. POKRZYWA
PRIMARY EXAMINER

cc: Requester (if third party requester)

Application/Control Number: 90/007,974                                    Page 2

Art Unit: 3992

# DETAILED ACTION

## *Reexamination*

1.     Currently, **claims 1-27** of U.S. Patent Number 6,701,126 are subject to reexamination.

## *Claim Rejections - 35 USC § 102*

2.     The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed
> in the United States before the invention by the applicant for patent or (2) a patent granted on an application for
> patent by another filed in the United States before the invention by the applicant for patent, except that an
> international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this
> subsection of an application filed in the United States only if the international application designated the United
> States and was published under Article 21(2) of such treaty in the English language.

3.     **Claims 1-27** are rejected under 35 U.S.C. 102(e) as being anticipated by Castiel *et al*.

(U.S. Patent Number 6,954,613, hereafter "Castiel")

The applied reference has a common inventor with the instant application that became the

'126 Patent.  Based upon the earlier effective U.S. filing date of the reference "Castiel", it

constitutes prior art under 35 U.S.C. 102(e).  This rejection under 35 U.S.C. 102(e) might be

overcome either by a showing under 37 CFR 1.132 that any invention disclosed but not claimed

in the reference was derived from the inventor of this application that became the '126 Patent,

and is thus not the invention "by another," or by an appropriate showing under 37 CFR 1.131.

Application/Control Number: 90/007,974                                    Page 3

Art Unit: 3992

Regarding *claim 1*, Castiel discloses a satellite communications system, comprising:

a ground station, including communications equipment and an antenna, located at a position on the earth [see col. 1, lines 34-47; also see 3, line 53-col. 4, line 16];

a plurality of satellites in orbits around the earth having apogees and perigees [see Figs. 1 and 3, see col. 2, lines 20-51],

each of the satellites having communications equipment thereon configured to communicate with the ground station only during a predetermined portion of the satellite's orbit proximate to apogee [col. 2, lines 48-51, and col. 17, lines 34-42],

the orbits of the plurality of satellites being configured to form at least two ground tracks on the earth displaced from each other longitudinally [see col. 17, lines 11-52; also see Table 1 in col. 18, lines 1-32; also see Fig. 9],

each of the ground tracks repeating daily and having a number of active arcs [see col. 5, lines 3-8; also see Table 2 in col. 18, lines 30-48, being the "Locations of the VIRGO Active Arcs"],

each active arc corresponding to the portion of the orbit of each satellite during which the communications equipment on the satellite is enabled to communicate with the ground station [col. 17, lines 11-57],

the orbits of the plurality of satellites being further configured such that at all times there are at least two of the satellites in each of the active arcs [col. 17, lines 34-42, wherein "*This requires three satellites out of a total of five to be active at any time.*"] and such that at all times each of the satellites in any one of the active arcs is separated by at least a predetermined angle, as observed from the ground station, from each other satellite in the same active arc and from

any satellite in any other active arc [col. 17, lines 34-42; also see Table 3 in col. 18, line 48-col.

19, line 13, whereby the satellites are shown to be separated by the angles in the Mean Anomaly

"MA"].

Regarding *claim 2*, Castiel discloses the system discussed above in claim 1, and further

teaches that the orbit of each of the plurality of satellites has a mean motion that is one of 2, 3

and 4 [see col. 5, lines 19-23; also see col. 6, lines 5-10, whereby "12-hour satellites" have a

mean motion of 2; also see col. 12, lines 25-30].

Regarding *claim 3*, Castiel discloses the system discussed above in claim 1, and further

teaches that the orbits of each of the plurality of satellites is inclined at critical inclination [see

Table 3 on col. 18, line 48-col. 19, line 13].

Regarding *claim 4*, Castiel discloses the system discussed above in claim 1, and further

teaches that the argument of perigee of the orbits of each of the plurality of satellites is in the

range of 195 degrees to 345 degrees for apogees in the northern hemisphere and in the range of

15 degrees to 165 degrees for apogees in the southern hemisphere [see Table 1 in col. 18, lines 1-

25, whereby the Aurora I and II, which are in the northern hemisphere, have an "Argument of

Perigee" of 270 degrees, while the Australis, being in the southern hemisphere, has an

"Argument of Perigee" of 90 degrees, each of which are within the claimed range].

Application/Control Number: 90/007,974                                   Page 5

Art Unit: 3992

Regarding *claim 5*, Castiel discloses the system discussed above in claim 1, and further

teaches that each of the plurality of satellites has throughout its orbit an orbital height lower than

a height necessary for geostationary orbits [see col. 3, lines 26-33, wherein "these satellites

according to the disclosed system orbit at about half the altitude of the geo systems."].

Regarding *claim 6*, Castiel discloses the system discussed above in claim 1, and further

teaches that the plurality of satellites are equally spaced in mean anomaly within their respective

ground tracks [see Table 3 on col. 18, line 48-col. 19, line 13, whereby the mean anomaly "MA"

of the satellites are seen to be equally spaced].

Regarding *claim 7*, Castiel discloses the system discussed above in claim 1, and further

teaches that the orbits of the plurality of satellites are further configured such that the portion of

the orbits during which the communications equipment on the satellites is enabled to

communicate, is separated from the equatorial plane of the earth by at least a predetermined

amount [see col. 1, lines 34-48; also see col. 5, lines 24-59].

Regarding *claim 8*, Castiel discloses the system discussed above in claim 1, and further

teaches that the communications equipment on the plurality of satellites is further configured to

communicate at frequencies allocated to geostationary satellites [col. 3, line 53-col. 4, line 16].

Regarding *claim 9*, Castiel discloses the system discussed above in claim 1, and further

teaches that each of the plurality of satellites has a power system configured to generate a first

Application/Control Number: 90/007,974                                      Page 6

Art Unit: 3992

amount of power when the communications equipment on the satellite is enabled and a second

amount of power more than the first amount of power when the communications equipment is

not enabled [col. 2, lines 39-64; also see col. 4, lines 23-43], to store excess power generated

when the communications equipment is not enabled [col. 2, lines 39-64], and to enable the

communications equipment with both the stored excess power and the generated first amount of

power [col. 2, lines 52-64].


      Regarding *claim 10*, Castiel discloses a constellation of satellites, comprising:

      a plurality of satellites in orbits around the earth having apogees and perigees [see Figs. 1

and 3, see col. 2, lines 20-51],

      each of the satellites having communications equipment thereon configured to

communicate only during a predetermined portion of the satellite's orbit proximate to apogee

[col. 2, lines 48-51, and col. 17, lines 34-42],

      the orbits of the plurality of satellites being configured to form at least two ground tracks

on the earth displaced from each other longitudinally [see col. 17, lines 11-52; also see Table 1 in

col. 18, lines 1-32; also see Fig. 9],

      each of the ground tracks repeating daily and having a number of active arcs [see col. 5,

lines 3-8; also see Table 2 in col. 18, lines 30-48, being the "Locations of the VIRGO Active

Arcs"],

      each active arc corresponding to the portion of the orbit of each satellite during which the

communications equipment on the satellite is enabled to communicate [col. 17, lines 11-57],

the orbits of the plurality of satellites being further configured such that at all times there

are at least two of the satellites in each of the active arcs [col. 17, lines 34-42, wherein *"This

requires three satellites out of a total of five to be active at any time."*] and such that at all times

each of the satellites in any one of the active arcs is separated by at least a predetermined angle,

as observed from the earth, from each other satellite in the same active arc and from any satellite

in any other active arc [col. 17, lines 34-42; also see Table 3 in col. 18, line 48-col. 19, line 13,

whereby the satellites are shown to be separated by the angles in the Mean Anomaly "MA"].

Regarding *claim 11*, Castiel discloses the constellation discussed above in claim 10, and

further teaches that the orbit of each of the plurality of satellites has a mean motion that is one of

2, 3 and 4 [see col. 5, lines 19-23; also see col. 6, lines 5-10, whereby "12-hour satellites" have a

mean motion of 2; also see col. 12, lines 25-30].

Regarding *claim 12*, Castiel discloses the constellation discussed above in claim 10, and

further teaches that the orbit of each of the plurality of satellites is inclined at critical inclination

[see Table 3 on col. 18, line 48-col. 19, line 13].

Regarding *claim 13*, Castiel discloses the constellation discussed above in claim 10, and

further teaches that the argument of perigee of the orbits of each of the plurality of satellites is in

the range of 195 degrees to 345 degrees for apogees in the northern hemisphere and in the range

of 15 degrees to 165 degrees for apogees in the southern hemisphere [see Table 1 in col. 18, lines

1-25, whereby the Aurora I and II, which are in the northern hemisphere, have an "Argument of

Application/Control Number: 90/007,974                                    Page 8

Art Unit: 3992

Perigee" of 270 degrees, while the Australis, being in the southern hemisphere, has an

"Argument of Perigee" of 90 degrees, each of which are within the claimed range].


Regarding *claim 14*, Castiel discloses the constellation discussed above in claim 10, and

further teaches that each of the plurality of satellites has throughout its orbit a orbital height

lower than a height necessary for geostationary orbits [see col. 3, lines 26-33, wherein "these

satellites according to the disclosed system orbit at about half the altitude of the geo systems."].


Regarding *claim 15*, Castiel discloses the constellation discussed above in claim 10, and

further teaches that the satellites in each of the two or more ground tracks are equally spaced in

mean anomaly [see Table 3 on col. 18, line 48-col. 19, line 13, whereby the mean anomaly

"MA" of the satellites are seen to be equally spaced].


Regarding *claim 16*, Castiel discloses the constellation discussed above in claim 10, and

further teaches that the orbit of each of the plurality of satellites is further configured such that

the portion of the orbits during which the communications equipment on the satellites is enabled

to communicate, is separated from the equatorial plane of the earth by a least a predetermined

amount [see col. 1, lines 34-48; also see col. 5, lines 24-59].


Regarding *claim 17*, Castiel discloses the constellation discussed above in claim 10, and

further teaches that the communications equipment on each of the plurality of satellites is further

Application/Control Number: 90/007,974                                Page 9

Art Unit: 3992

configured to communicate at frequencies allocated to geostationary satellites [col. 3, line 53-col.

4, line 16].


Regarding *claim 18*, Castiel discloses the constellation discussed above in claim 10, and

further teaches that each of the plurality of satellites has a power system configured to generate a

first amount of power when the communications equipment on the satellite is enabled and a

second amount of power more than the first amount of power when the communications

equipment is not enabled [col. 2, lines 39-64; also see col. 4, lines 23-43], to store excess power

generated when the communications equipment is not enabled [col. 2, lines 39-64], and to enable

the communications equipment with both the stored excess power and the generated first amount

of power [col. 2, lines 52-64].


Regarding *claim 19*, Castiel discloses a method for satellite communications, comprising:

orbiting a plurality of communications satellites about the earth, the orbits having

apogees and perigees [see Figs. 1 and 3, see col. 2, lines 20-51]; and

enabling each of the plurality of communications satellites to communicate only during a

predetermined portion of the orbits proximate to apogee [col. 2, lines 48-51, and col. 17, lines

34-42];

wherein the orbits of the plurality satellites form at least two ground tracks on the earth

displaced from each other longitudinally [see col. 17, lines 11-52; also see Table 1 in col. 18,

lines 1-32; also see Fig. 9],

Application/Control Number: 90/007,974                                        Page 10

Art Unit: 3992

each of the ground tracks repeating daily and having a number of active arcs [see col. 5, lines 3-8; also see Table 2 in col. 18, lines 30-48, being the "Locations of the VIRGO Active Arcs"],

each active arc corresponding to the portion of the orbit of each satellite during which the communications equipment on the satellite is enabled to communicate [col. 17, lines 11-57]; and

wherein the satellites are orbited such that at all times at least two of the satellites are in each of the active arcs [col. 17, lines 34-42, wherein *"This requires three satellites out of a total of five to be active at any time."*] and such that at all times each of the satellites in any one of the active arcs is separated by at least a predetermined angle, as observed from the earth, from each other satellite in the same active arc and from any satellite in any other active arc [col. 17, lines 34-42; also see Table 3 in col. 18, line 48-col. 19, line 13, whereby the satellites are shown to be separated by the angles in the Mean Anomaly "MA"].

Regarding *claim 20*, Castiel discloses the method discussed above in claim 19, and further teaches of configuring the orbits of each of the plurality of satellites to have a mean motion that is one of 2, 3 and 4 [see col. 5, lines 19-23; also see col. 6, lines 5-10, whereby "12-hour satellites" have a mean motion of 2; also see col. 12, lines 25-30].

Regarding *claim 21*, Castiel discloses the method discussed above in claim 19, and further teaches of configuring the orbits of each of the plurality of satellites to be inclined at critical inclination [see Table 3 on col. 18, line 48-col. 19, line 13].

Application/Control Number: 90/007,974                    Page 11

Art Unit: 3992

Regarding *claim 22*, Castiel discloses the method discussed above in claim 19, and further teaches of configuring the argument of perigee of the orbits of each of the plurality of satellites to be in the range of 195 degrees to 345 degrees for apogees in the northern hemisphere and in the range of 15 degrees to 165 degrees for apogees in the southern hemisphere [see Table 1 in col. 18, lines 1-25, whereby the Aurora I and II, which are in the northern hemisphere, have an "Argument of Perigee" of 270 degrees, while the Australis, being in the southern hemisphere, has an "Argument of Perigee" of 90 degrees, each of which are within the claimed range].

Regarding *claim 23*, Castiel discloses the method discussed above in claim 19, and further teaches of configuring the orbits of each of the plurality of satellites to have throughout its orbit an orbital height lower than a height necessary for geostationary orbits [see col. 3, lines 26-33, wherein "these satellites according to the disclosed system orbit at about half the altitude of the geo systems."].

Regarding *claim 24*, Castiel discloses the method discussed above in claim 19, and further teaches of configuring the orbits of the plurality of satellites such that the satellites are equally spaced in mean anomaly within their respective ground tracks [see Table 3 on col. 18, line 48-col. 19, line 13, whereby the mean anomaly "MA" of the satellites are seen to be equally spaced].

Regarding *claim 25*, Castiel discloses the method discussed above in claim 19, and further teaches of configuring the orbits of the plurality of satellites such that the portion of the

Application/Control Number: 90/007,974                              Page 12

Art Unit: 3992

orbits during which the satellites are enabled for communication, is separated from the equatorial

plane of the earth by at least a predetermined amount [see col. 1, lines 34-48; also see col. 5,

lines 24-59].


     Regarding *claim 26*, Castiel discloses the method discussed above in claim 19, and

further teaches of communicating with the plurality of satellites at frequencies allocated to

geostationary satellites [col. 3, line 53-col. 4, line 16].


     Regarding *claim 27*, Castiel discloses the method discussed above in claim 19, and

further teaches that each of the plurality of satellites has a power system generating a first

amount of power when the communications equipment on the satellite is enabled and a second

amount of power more than the first amount of power when the communications equipment is

not enabled [col. 2, lines 39-64; also see col. 4, lines 23-43], and further comprising:

    storing excess power generated when the communications equipment is not enabled [col.

2, lines 39-64]; and

    enabling the communications equipment with both the stored excess power and the

generated first amount of power [col. 2, lines 52-64].

Application/Control Number: 90/007,974                                    Page 13

Art Unit: 3992

### *Conclusion*

4.       Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

5.       The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,701,126 throughout the course of this reexamination proceeding.

6.       ALL correspondence relating to this ex parte reexamination  proceeding  should  be

directed  as follows:

**Please mail any communications to:**

Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA 22313-1450

**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit

Application/Control Number: 90/007,974                                    Page 14

Art Unit: 3992

**Please hand-deliver any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

JOSEPH R. POKRZYWA
PRIMARY EXAMINER

Joseph R. Pokrzywa
Central Reexamination Unit 3992
(571) 272-7410

Conferees :

ROLAND G. FOSTER
CRU EXAMINER-AU 3992

Sue Lao

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 90/007,974 | 6701126 |
| **Examiner** | **Art Unit** |
| Joseph R. Pokrzywa | 3992 |

| √ | Rejected | — | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Claim (Final) | Claim (Original) | Date 3/5/07 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | | | | | | | |
| | 2 | √ | | | | | | | |
| | 3 | √ | | | | | | | |
| | 4 | √ | | | | | | | |
| | 5 | √ | | | | | | | |
| | 6 | √ | | | | | | | |
| | 7 | √ | | | | | | | |
| | 8 | √ | | | | | | | |
| | 9 | √ | | | | | | | |
| | 10 | √ | | | | | | | |
| | 11 | √ | | | | | | | |
| | 12 | √ | | | | | | | |
| | 13 | √ | | | | | | | |
| | 14 | √ | | | | | | | |
| | 15 | √ | | | | | | | |
| | 16 | √ | | | | | | | |
| | 17 | √ | | | | | | | |
| | 18 | √ | | | | | | | |
| | 19 | √ | | | | | | | |
| | 20 | √ | | | | | | | |
| | 21 | √ | | | | | | | |
| | 22 | √ | | | | | | | |
| | 23 | √ | | | | | | | |
| | 24 | √ | | | | | | | |
| | 25 | √ | | | | | | | |
| | 26 | √ | | | | | | | |
| | 27 | √ | | | | | | | |
| | 28 | | | | | | | | | |
| | 29 | | | | | | | | | |
| | 30 | | | | | | | | | |
| | 31 | | | | | | | | | |
| | 32 | | | | | | | | | |
| | 33 | | | | | | | | | |
| | 34 | | | | | | | | | |
| | 35 | | | | | | | | | |
| | 36 | | | | | | | | | |
| | 37 | | | | | | | | | |
| | 38 | | | | | | | | | |
| | 39 | | | | | | | | | |
| | 40 | | | | | | | | | |
| | 41 | | | | | | | | | |
| | 42 | | | | | | | | | |
| | 43 | | | | | | | | | |
| | 44 | | | | | | | | | |
| | 45 | | | | | | | | | |
| | 46 | | | | | | | | | |
| | 47 | | | | | | | | | |
| | 48 | | | | | | | | | |
| | 49 | | | | | | | | | |
| | 50 | | | | | | | | | |

Claims 51–100 and 101–150: blank.

EXHIBIT 2

Declaration of John E. Draim (in US Patent 6,701,126), dated November 13, 2000 in support for OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS




Docket No.: 3700-02

# DECLARATION AND POWER OF ATTORNEY

As a below named inventor, I hereby declare that:

My residence, post office and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter claimed and for which a patent is sought on the invention entitled "An Improved System and Method for Implementing a Constellation of Non-Geostationary Satellites That Does Not Interfere With the Geostationary Satellite Ring" , the specification of which

[X] is attached hereto.    [ ] was filed on _____ as Application Serial No. _____ and was amended on _____ (if applicable) .

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is known to me to be material to patentability in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, Section 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

| | | | Priority Claimed | |
|---|---|---|---|---|
| Prior Foreign Application(s): | | | Yes | No |
| Number | Country | Day/Month/Year filed | | |

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| Prior U. S. Application(s): | | |
|---|---|---|
| Serial No. | Filing Date | Status: Patented, Pending, Abandoned |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint the following attorney(s) and/or agent(s): Alfred A. Stadnicki, Reg. No. 30,226; Peter N. Lalos, Reg. No. 19,789; Francis A. Keegan, Reg. No. 19,245; Phillip G. Avruch, Reg. No. 46,076; Michael N. Lau, Reg. No.39,479; Ron Snider, Reg. No. 24,962 all of:

LALOS & KEEGAN

1146 Nineteenth Street, N.W.

Fifth floor

Washington, D.C. 20036-3703

with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith, and all future correspondence should be addressed to Alfred A. Stadnicki @ LALOS & KEEGAN, 1146 Nineteenth Street, N.W., Washington, D.C. 20036-3703

Docket No.. 3700-02

Full name of sole or first inventor: John E. Drain          (JOHN EMERY DRAIM)

Inventor's signature: John E Drain                          Date: 13 Nov. 2000

Residence: 9310 Telfer Court, Vienna, Virginia 22182

Citizenship: USA

Post Office Address: Same as Residence

RCE/2684

$

PTO/SB/30 (01-03)
Approved for use through 4/30/2003. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| | |
|---|---|
| **REQUEST FOR CONTINUED EXAMINATION (RCE) TRANSMITTAL** Address to: **Mail Stop RCE Commissioner for Patents P.O. Box 1450 Alexandria, VA 22313-1450** | Application Number: 09/709,280 |
| | Filing Date: November 13, 2000 |
| | First Named Inventor: John E. Draim |
| | Group Art Unit: 2684 |
| | Examiner Name: Edan Orgad |
| | Attorney Docket Number: SRI 102 |

This is a Request for Continued Examination (RCE) under 37 C.F.R. § 1.114 of the above-identified application.

Request for Continued Examination (RCE) practice under 37 C.F.R. § 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

**RECEIVED**

**AUG 11 2003**

1. **Submission Required Under 37 C.F.R. § 1.114**

**Technology Center 2600**

   a. ☐ Previously Submitted

     i. ☐ Consider the amendment(s)reply under 37 C.F.R. §1.116 previously filed on _____
       (Any unentered amendment(s) referred to above will be entered).

     ii. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on_____

     iii.☐ Other _____

   b. **X** Enclosed

     i. ☐ Amendment/Reply

     ii. ☐ Affidavit(s)/Declaration(s)

     iii.**X** Information Disclosure Statement (IDS)

     iv.☐ Other     08/07/2003 ANABI1   00000081 09709280

2. **Miscellaneous**     01 FC:2801        375.00 OP

   a. ☐ Suspension of action on the above-identified application is requested under 37 C.F.R. §1.103(c) for
     a period of ___ months. (Period of suspension shall not exceed 3 months; Fee under 37 C.F.R. § 1.17 (i) **required**)

   b. ☐ Other _____

3. **FEES** The RCE fee under 37 C.F.R. §1.17(e) is required by 37 C.F.R. §1.114 when the RCE is filed.

   a. **X** The Director is hereby authorized to charge the following fees, or credit any overpayments, to Deposit Account No. 18-0002.

     i. **X** RCE fee (small entity) required under 37 C.F.R. § 1.17(e) **$375.00**

     ii. ☐ Extension of time fee (37 C.F.R. §§ 1.136 and 1.17)

     iii.☐ Other _____

   b. **X** Check in the amount of **$375.00** enclosed.

   c. ☐ Payment by credit card (Form PTO-2038 enclosed)

| **SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED** | | | |
|---|---|---|---|
| Name (Print or Type) | Phillip G. Avruch | Registration Number | 46,076 |
| Signature | | Date | August 6, 2003 |

*(handwritten margin note, vertical:)* FEE ENCLOSED:$ 375 Pleas charge any further fee to ur D p sit A c unt No. 18-0002



**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Group Art Unit: 2684
Examiner: Edan Orgad

In Re PATENT APPLICATION Of:

| | | |
|---|---|---|
| Applicants | : John E. Draim | ) |
| | | ) |
| Serial No. | : 09/709,280 | ) |
| | | ) **INFORMATION DISCLOSURE** |
| Filed | : November 13, 2000 | ) **STATEMENT** |
| | | ) |
| For: | SYSTEM AND METHOD FOR IMPLEMENTING | ) |
| | A CONSTELLATION OF NON-GEOSTATIONARY | ) |
| | SATELLITES THAT DOES NOT INTERFERE | ) |
| | WITH THE GEOSTATIONARY SATELLITE RING | ) |
| | | ) |
| Attorney Ref. : SRI 102 | | )_____ |

Mail Stop: <u>RCE</u>
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

RECEIVED

AUG 1 1 2003

Technology Center 2600

Sir:

This is an information disclosure statement submitted in compliance with the timing requirements of 37 C.F.R. §1.97 (b)(3), i.e., prior to a First Office Action on the Merits.

Attached are copies of a PCT International Search Report, 1 U.S. patent document, and 1 English-language publication. The documents and publication are listed on the attached Form PTO-1449.

Since this Information Disclosure Statement is being filed before the First Office Action, no certification or fee is required, and the requirements of 37 C.F.R. §§1.97 and 1.98 are deemed to be fully met as to all documents submitted. Consideration of the submitted documents is respectfully requested.

Respectfully submitted,

Phillip G. Avruch (Registration No. 46,076)
Customer No. 23995

PGA:tlc

| FORM PTO-1449 | | Atty. Docket | | Application No. | | |
|---|---|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT | | SRI 102 | | 09/709,280 | | |
| | | Applicant<br>John E. Draim | | | | |
| | | Filing Date<br>November 13, 2000 | | Group<br>2684 | | |

**U.S. PATENT DOCUMENTS**

| Examiner Initial | | Document Number | Date | Name | Class | Sub-Class | Filing Date |
|---|---|---|---|---|---|---|---|
| | AA | 5,845,206 | 12/1/98 | CASTIEL et al | | | 3/24/95 |
| | AB | | | | | | |
| | AC | | | | | | |
| | AD | | | | | | |
| | AE | | | | | | |
| | AF | | | | | | |
| | AG | | | | | | |
| | AH | | | | | | |

RECEIVED
AUG 1 1 2003
Technology Center 2600

**FOREIGN PATENT DOCUMENTS**

| | | Document Number | Date | Country | Class | Sub-Class | Trans-lation |
|---|---|---|---|---|---|---|---|
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |
| | AL | | | | | | |
| | AM | | | | | | |
| | AN | | | | | | |

**OTHER (Including Author, Title, Date, Pertinent Pages, etc.)**

| | AO | Internet Article from "Online!", <URL:http://www.virgualgeo.com/orbits_plain_print.htm>: "VIRTUAL GEOSATELLITE LLC: Virtual Geosatellite Orbits Better for New Satellite Systems Using the 'K' Frequency Band", March 4, 1999. |
|---|---|---|

| Examiner | Date Considered |
|---|---|
| | |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to Applicant.

EXHIBIT 4

Finding of Fact, Conclusion of Law and Order, May 15, 2006 (J. Facciola), in *Draim v. Virtual Geosatellite Holdings, Inc. et al.* (1:01 cv 2690) in support of OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN E. DRAIM,** | |
| **Plaintiff,** | |
| **v.** | |
| | **Civil Action No. 01-2690 (JMF)** |
| **VIRTUAL GEOSATELLITE HOLDINGS, INC.,** *et al.,* | |
| **Defendants.** | |
| | |
| **MOBILE COMMUNICATIONS HOLDINGS, INC.,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 02-0775 (JMF)** |
| **JOHN E. DRAIM,** | |
| **Defendant.** | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND ORDER**

These consolidated cases were referred to me, upon consent of the parties, for all purposes including trial. Prior to the trial, the parties agreed to the dismissal of all claims except plaintiff John Draim's claim that he is entitled to the payment of bonuses for patents issued after he resigned from the corporate defendants' employ and in which he was a named inventor. A bench trial was held on April 18, 2006 and, after considering the testimony of the witnesses, the exhibits, and the arguments of the parties, I reach the following findings of fact and conclusions

of law.

## FINDINGS OF FACT

1.    In 1992, plaintiff John Draim ("Draim") began working for defendant Mobile

Communications Holdings, Inc. ("MCHI") as a consultant.  Draim and the

president of MCHI, David Castiel ("Castiel") signed a Consulting Agreement

under which Draim agreed to assign to MCHI all rights in his inventions

conceived during the term of the Consulting Agreement and MCHI agreed to pay

Draim a $2,000 bonus upon the filing of a patent application, and a $10,000 bonus

upon the successful issuance of any one patent.  According to the Consulting

Agreement, the actual amount of the bonus would be determined in inverse

proportion to the number of co-inventors listed on the patent application.  Draim

worked for MCHI as a consultant through June 1997.

2.    In July 1997, Draim became an employee of MCHI, but a written employment

agreement was never drafted or signed.  During Draim's employment, the parties

continued to operate under the understanding that Draim's inventions would be

assigned to MCHI, or to other Castiel affiliated entities, and that he would be paid

$2,000 for each patent application and $10,000 for each successful issuance of a

patent.

3.    While employed at MCHI, Draim also performed work for affiliated Castiel

companies (*e.g.*, Defendant Virtual Geosatellite Holdings, Inc. and Ellipso, Inc.)

(collectively the "Castiel entities").

4.    At some point during Draim's employment, the bonus for filing a patent

2

application increased from $2,000 to $2,500, and the bonus for the issuance of a patent increased from $10,000 to $12,500.

5.  In May 2000, Draim terminated his employment and began working for a company named VGS, Inc. ("VGS"), which later became known as Space Resource America Corporation ("SRA").

6.  At the time Draim terminated his employment with the Castiel entities, there were numerous outstanding patent applications in which he was a named inventor. These applications have since resulted in the issuance of eleven patents. The patents name various Castiel entities as the assignees. In some of these patents Draim is listed as the sole inventor, and in some he is listed as one of three or four inventors.

7.  Draim has not been paid a bonus for the issuance of any of these eleven patents.

8.  When the patent office decides that a patent application should be divided into multiple patents, the resulting patents are called "divisional patents." Two of these eleven patents were divisional patents.

9.  In February 2000, three months before Draim resigned, Draim and Castiel filed a provisional patent application for an invention that the parties referred to as the "168 slot" invention. In this provisional application, Castiel and Draim were listed as co-inventors. Provisional applications function as "place holders" and are generally not reviewed by the patent board. The applicant has one year from filing the provisional application to file the actual patent application.

10. In November 2000, SRA filed an "interfering" patent application for the "168

3

slot" invention, naming Draim as the sole inventor.  Subsequently, in February

2001, Castiel filed an application for the "168 slot" invention, but did not name

Draim as an inventor.  Ultimately, the patent was issued to Virtual Geosatellite,

LLC, a Castiel company, as assignee and Draim was not listed as an inventor.

11.    Draim was never paid a bonus for the issuance of the "168 slot" patent.

12.    Around the time of Draim's resignation, several other Castiel employees also left

the Castiel entities to work for VGS.  At trial, defendants presented testimony

about VGS having tried to take over the Castiel entities, steal the Castiel entities'

property, and use the Castiel entities' marketing materials as its own.

### CONCLUSIONS OF LAW

13.    The parties do not dispute that there was a contract between the Castiel entities

and Draim under which Draim was to be paid bonuses for the filing of patent

applications and for the issuance of patents.  Defendants did not argue that, under

the contract, Draim was not entitled the payment of bonuses for patents issued

after the termination of his employment in which he was a named inventor and the

application was filed while he was still employed with the Castiel entities.

Accordingly, I find that there was an enforceable contract and, under that contract,

Draim was entitled to bonuses for the issuance of patents, in which he was a

named inventor, that were based on applications filed during his employment,

regardless of whether the patents were issued after his employment ended.

14.    In defense of the enforcement of this contract, defendants raised three arguments.

First, defendants argued that Draim has already been paid more then he was

4

entitled to receive under the contract.  However, defendants presented no evidence

at trial that Draim was paid more than he was entitled to under the employment

contract and, therefore, I will not deny enforcement of the contract on that ground.

15.    Second, defendants argued that Draim is not entitled to the payment of bonuses

for the issuance of divisional patents.  Two of the twelve patents at issue are

divisional patents.  The only written guidance on this issue is the Consulting

Agreement, which states that Draim will be paid a bonus "upon successful

issuance of any one patent." Plaintiff's Exhibit # 1.  That language indicates that

Draim was to paid a bonus upon the issuance of any one patent, regardless of

whether or not it was a divisional patent.  In contradiction of this language,

defendants argued that it was not Castiel's practice to pay bonuses for divisional

patents.  According to Castiel's testimony, he remembers only two prior divisional

patents.  No evidence was presented at trial as to whether or not bonuses were

paid on these two divisional patents.  Accordingly, I do not find sufficient

evidence of a past practice of not paying bonuses for divisional patents and I will

not deny enforcement of the contract, in whole or in part, on the ground that two

of the patents were divisional patents.

16.    Third, defendants argued that Draim breached a fiduciary duty to the Castiel

entities by going to work for VGS and by participating in a conspiracy to take

over the Castiel entities and steal their property and that, therefore, Draim is not

entitled to the patent bonuses.  I do not find that it is more likely than not that

Draim participated in a conspiracy to destroy or steal from the Castile entities.

5

Defendants presented little to no evidence linking Draim to the alleged VGS conduct, let alone evidence that Draim agreed to take part in an unlawful action. See, e.g., Hall v. Clinton, 285 F.3d 73, 83 (D.C. Cir. 2002) (the two essential elements of civil conspiracy [under District of Columbia law] are (1) an agreement to take part in an unlawful action or a lawful action in an unlawful manner and (2) an overt tortious act in furtherance of the agreement that causes injury).  To the contrary, I find that Castiel's anger at the behavior of his former employees, like Draim, who went to work for VGS, led him not to pay Draim for the bonuses.  Therefore, even if Draim owed a fiduciary duty to the Castiel entities, I find that enforcement of the contract cannot be denied on the ground that Draim breached any such fiduciary duty by participating in a conspiracy.

17. Accordingly, I find that Draim is entitled to the payment of bonuses based on the $12,500 rate and in an amount in inverse proportion to the number of co-inventors listed on the patent for each of the eleven patents in which he is a named inventor. Specifically, Draim is entitled to the following bonuses:

a.     United States Patent # 6102335; four inventors; bonus = $3,125

b.     United States Patent # 6227497; one inventor; bonus = $12,500

c.     United States Patent # 6263188; three inventors; bonus = $4,166.67

d.     United States Patent # 6457678; one inventor; bonus = $12,500

e.     United States Patent # 6487476; one inventor; bonus = $12,500

f.     United States Patent # 6577864; three inventors; bonus = $4,166.67

g.     United States Patent # 6611683; three inventors; bonus = $4,166.67

h.    United States Patent # 6678519; three inventors; bonus = $4,166.67

i.    United States Patent # 6766166; one inventor; bonus = $12,500

j.    United States Patent # 6795687; three inventors; bonus = $4,166.67

k.    United States Patent # 6954613; three inventors; bonus = $4,166.67

18.    With regard to the "168 slot" patent, Draim was not named as an inventor in either

the patent application or in the resulting patent; Draim was only named as an

inventor in the *provisional* application.  Under the Consulting Agreement, Draim

was entitled to a bonus upon "the completion of successful filing for any one

patent." Plaintiff's Exhibit # 1.  Based on the testimony at trial, I find that it was

the parties' understanding that, with regard to the assignment of patent rights and

the payment of bonuses, the terms of the Consulting Agreement carried over into

Draim's oral employment agreement.  No evidence or argument was presented at

trial regarding the expansion of that language to include provisional applications,

nor did plaintiff present any evidence that he had been paid bonuses for the filing

of provisional applications in the past.  Therefore, I find that Draim is not entitled

to a bonus for the issuance of patent number 6695260 (*i.e.*, the "168 slot" patent).


19.    Draim is also entitled to pre-judgment interest on the patent bonuses, to be

calculated from the date each patent was issued and at the statutory rate of six-

percent per annum. See D.C. Code § 15-108[1]; Bragdon v. Twenty-Five Twelve

---

[1] All citations to the District of Columbia Code are to the electronic versions available
through Westlaw and Lexis.

Assocs. Ltd. P'ship, 856 A.2d 1165 (D.C. 2004) (awarding pre-judgment interest

under D.C. Code § 15-508 because it was customary to pay interest on funds that

are withheld and not paid when due and that prejudgment interest is an element of

complete compensation); D.C. Code § 28-3302; District of Columbia v. Pierce

Assocs., Inc., 527 A.2d 306, 311 (D.C. 1987) ("the trial court cannot award

interest at a rate greater than 6% under § 15-508 . . . unless an express contractual

provision is to the contrary.")

## CONCLUSION

Based on the proceeding findings of fact and conclusions of law, plaintiff shall be

awarded $78,125.02 plus prejudgment interest, calculated from the date of the issuance of each

patent through the date of judgment at the rate of six-percent per annum, and costs.  To that end,

the parties are, hereby, **ORDERED** to submit, within ten days of this order, a joint praecipe

detailing the prejudgment interest calculation through the date of the filing of the praecipe.  By

agreeing to the joint praecipe, the parties do not concede any arguments or waive any rights on

appeal.

**SO ORDERED.**

_____

JOHN M. FACCIOLA

Dated:                          UNITED STATES MAGISTRATE JUDGE

8