UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.,                          )
a Delaware Corporation                  )
                                        )
and                                     )
                                        )
VIRTUAL GEOSATELLITE LLC,               )        Civil Action No. 1:06cv01373 (JR)
a Delaware Limited Liability Company,   )
                                        )
       Plaintiffs,                      )
                                        )
             v.                         )
                                        )
JOHN E. DRAIM,                          )
                                        )
       Defendant.                       )
                                        )

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR AN AWARD OF ATTORNEYS FEES AND COSTS**

        John E. Draim ("Draim"), by counsel, submits this reply in support of his motion

for an award of attorneys fees and costs.  As shown below, this action was not filed in

good faith as claimed by the plaintiffs in their opposition filed on July 9, 2007 and

plaintiffs continued to maintain this action against Mr. Draim even after Mr. Draim

presented the various bases for which this action should be dismissed.  Accordingly, Mr.

Draim requests that the Court award Mr. Draim reasonable attorneys fees as the

prevailing party pursuant to D.C. Code § 36-404(1) and order a post-judgment

conference in accordance with Local Civil Rule 54.2.

**Background**

        As detailed in Mr. Draim's opening memorandum, this action was filed in July

2006, soon after Magistrate Judge Facciola denied plaintiffs' post-trial motions in the

earlier filed action that was tried in this Court.  In their Complaint in the earlier filed

action (Exhibit 11 to the Anderson Declaration filed on May 15, 2007) plaintiffs made an identical claim to the claim asserted in this case -- that Mr. Draim had filed patent applications based on proprietary technology of the plaintiffs in violation of the District of Columbia Trade Secrets Act.  There is no real dispute that as a result of several settlement conferences with Magistrate Judge Facciola, the parties agreed to dismiss all claims asserted by the parties in that action except the claim of whether Mr. Draim was entitled to payment of certain patent bonuses.  (Joint Pretrial Statement filed on March 17, 2006, Anderson Decl. Exhibit 15).  As stated in that Joint Pretrial Statement, Mr. Draim agreed to dismiss his claims for rescission of the patent assignments and his claim for an equity interest in VGHI and in return the claims against Mr. Draim (including the Trade Secrets claim) were dismissed.

In their opposition plaintiffs also acknowledge that in April 2003 the documents described and attached to Mr. Draim's opening memorandum were produced in discovery in the earlier action.  Similarly, plaintiffs admit that there was a Settlement Agreement executed on July 20, 2005 (attached as Exhibit 16 to the Anderson Declaration) and that the Settlement Agreement includes a General Release releasing John Draim (among others) from all actions and claims, known and unknown.  Finally, there is no dispute that the publications, presentations and filings attached to the opening papers were in fact, made available to the public prior to May 2000, when Mr. Draim left his employment with the plaintiffs.

Even in the face of admitting that: (1) they were aware of the patent applications filed by Mr. Draim and were provided with copies of those applications in April 2003 during discovery in the earlier action; (2) that they agreed to dismiss the earlier filed

trade secret claim against Mr. Draim; (3) that they publicly disclosed the systems claimed in their patent applications once those applications had been submitted to the Patent Office; and (4) that in July 2005 a General Release was executed releasing Mr. Draim from all known and unknown claims, the plaintiffs argue that this action was filed in "good faith".  They claim that this action was not filed in bad faith because: (1) an initial office action taken by the PTO in a reexamination proceeding concerning U.S. Patent No. 6,701,126 (the '126 Patent) issued after this lawsuit was filed states that the claims in the '126 Patent were anticipated by U.S. Patent No. 6,954,613 (the '613 Patent); (2) that if given an opportunity, they would have been able to "survive" the motion for summary judgment; (3) that in Mr. Draim's trial testimony he admitted to assigning some unidentified "technical subject matter" that he had previously assigned to Ellipso; and (4) Mr. Draim was not released by the settlement agreement or the earlier litigation.

**<u>Argument</u>**

D.C. Code § 36-404 provides that reasonable attorneys fees can be awarded to the prevailing party if a claim of misappropriation is made in bad faith.  The obvious purpose of this provision is that a person should not be forced to pay the legal fees incurred in defending a claim that was made and pursued in bad faith.  The facts and circumstances in this case clearly reveal that the filing of this action was nothing more than a tactic to try and wear down Mr. Draim with another lawsuit in an effort to have him forego the judgment he obtained after years of litigation in the earlier action.  By asserting claims that were raised and dismissed in the earlier action, claims that are clearly barred by a three-year statute of limitations, by claiming "trade secret" protection

to matters that they knowingly made public in publications, presentations and filings and by asserting claims that had been released, it is obvious that this case was filed in bad faith.  Not only was it filed in bad faith, but plaintiffs' failure to agree to dismiss the case after the filing of the motion to dismiss in which all of these matters were raised, shows that it was also maintained in bad faith.  Mr. Draim should not have to pay for the significant attorneys fees that were incurred in the defense of this action.

### The '126 Patent and Reexamination

The argument that plaintiffs appear to be making relating to the '126 Patent is as follows.  They admit that in April 2003 during discovery in the earlier filed action they were provided with a copy of the file history for the '126 Patent that included the patent application filed with the USPTO on November 13, 2000 and the International Patent Application relating to the '126 Patent.  (Anderson Decl. ¶ 6; Exhibit 9).  They also acknowledge that the International Patent Application was published on May 23, 2002 and was publicly available at that time.  This International Patent Application (Ex. 9) indicates as one of the Designated States (regional) a European Patent.[1]  Plaintiffs also acknowledge that on December 26, 2002, Mr. Castiel sent Mr. Draim a letter referring to the November 13, 2000 patent application that matured into the '126 Patent claiming that Mr. Draim had "fenced" Ellipso's property and demanding that the application be assigned to Ellipso.  (Anderson Decl., Ex. 10, pg. 2).

On July 20, 2006, plaintiffs filed this action reasserting a misappropriation of trade secrets claim against Mr. Draim.  On March 12, 2007 (almost nine months **after**

---

[1] Plaintiffs claim that through their "investigative efforts" they learned of this fact.  In reality, a copy of this application was produced in discovery in April 2003 and it was available to anyone over the Internet after the publication date of May 23, 2002.

the lawsuit was filed), the PTO issued an initial office action in a reexamination proceeding concerning the '126 Patent (Opposition Ex. 1). Plaintiffs claim that this initial office action somehow shows their good faith in filing this action **some nine months earlier**. Obviously plaintiffs cannot rely on a document that was not even in existence at the time the action was filed to support an argument that the action was filed in good faith. As admitted in plaintiffs' opposition, the office action indicates that the claims were "initially" rejected. The office action provides that this initial rejection can be overcome by at least two means and the patent owner was given two months to file a response.[2] The only bases upon which plaintiffs relied in filing this action was the material that had been produced in discovery in April 2003 in the earlier litigation. Any subsequent decision by the PTO as to "anticipation" of the claims in the '126 Patent cannot provide a good faith basis for the filing of this trade secrets claim in July 2006.

### Public Disclosure of Inventions

Plaintiffs argue that the FCC Application filed in January 1999 may not have included all the material that was included in the '289 and '215 patent applications. However, plaintiffs fail to provide any support for this claim. Plaintiffs provide no explanation of what, if any, information contained in the '289 and '215 applications was not disclosed in the FCC Application and what evidence they have that Mr. Draim made use of any undisclosed material. It is clear that the FCC application describes the same satellite constellation as the one claimed in the '289 provisional application including the reprints of the charts in that application. (Anderson Decl. ¶ 19; Draim Decl. ¶ 5).

---

[2] The patent owner (no longer Mr. Draim) has filed a response to this initial office action and the matter is currently under advisement with the PTO.

Plaintiffs next argue that their admitted public disclosures of the inventions claimed in patent applications once the applications have been filed in order to attract investors, obtain academic interest and obtain an FCC license does not result in the loss of "trade secret" protection for those inventions.[3]  Plaintiffs claim that Mr. Draim appears to ignore the definition of trade secret under the Act.  However, the Act clearly states that a trade secret must be something "not being generally known to, and not being readily ascertainable by, proper means by another" and it must be "the subject of reasonable efforts to maintain its secrecy."  D.C. Code § 36-401(4) (A) and (B). Publishing articles describing the inventions claimed in a patent application, making presentations describing and showing the satellite systems claimed in a patent application and submitting an application to the FCC detailing the satellite system claimed in a patent application makes that information generally known and readily ascertainable to another.  As such, that public information cannot be considered a trade secret under the Act.

## Defendant's Actions Concerning the FCC License

As a further example of plaintiffs' bad faith in this action, they make the argument on pages 7 and 8 of their opposition that Mr. Draim failed to disclose the FCC application to the Patent Office and they argue that Mr. Draim is trying to have it both

---

[3] Mr. Draim has not argued that plaintiffs made the patent applications themselves public.  However, the plaintiffs through various publications, presentations and filings disclosed to the public the substance of the inventions claimed in those applications.  In fact, Mr. Draim has provided copies of the various materials showing that the inventions claimed in those applications were publicly disclosed.  As stated by Mr. Draim (not Anderson) in paragraph 9 of his Declaration filed on May 15, 2007,  while he was employed at MCHI it was common practice to write articles, give presentations and to describe publicly those satellite systems and other inventions that were the subject of patent applications filed with the USPTO.

ways by saying it was a public disclosure of the inventions described therein when he did not disclose that public information to the PTO.  A review of the patent application submitted by Mr. Draim and the '126 Patent itself shows that plaintiffs must not have even read those documents before making this argument.  As shown in the Background of Invention section of the '126 Patent, there is a full paragraph referring to the January 1999 FCC license application submitted by Virtual Geo and a description of that system. (Anderson Decl. Ex. 8, pg. 7).  This is the same language in the patent application that was filed by Mr. Draim with the PTO. (Anderson Decl. Ex. 9. Bates No. SRA 00623).  In addition, Mr. Draim cites the March 4, 1999 article Virtual Geosatellite Orbits Better for New Satellite Systems which also discusses the recent FCC filing and lists the parameters of the Virtual Geo satellite system.  Mr. Draim fully disclosed the existence of this FCC license application in his patent application.

<u>**The Three-Year Statute of Limitations**</u>

Plaintiffs admit that the patent applications relating to the '126 Patent were provided in discovery in the earlier action in April 2003 but they claim that they could not have been aware of the "extent" of the misappropriation until the '126 Patent issued on March 2, 2004.  While it is true that the '126 Patent did not issue until March 2, 2004, there is no question that prior to that time plaintiffs were fully aware that Mr. Draim had filed a patent application on November 13, 2000, and that they believed Mr. Draim had "fenced" Ellipso's property by filing that application.  (Anderson Decl. Ex. 10, pg. 2).  In fact, the International Application was published and available to anyone over the Internet as of May 23, 2002.  (Anderson Decl. Ex. 9).  The materials produced in discovery in April 2003 and published in May 2002, clearly show what Mr. Draim was

claiming as his invention in the application that eventually culminated in the '126 Patent.

The fact that the patent may not have issued until March 2, 2004, does not alter the fact

that the disclosure and use of the alleged "trade secret" had occurred and plaintiffs were

well aware of that use and disclosure by at least April 2003.  Misappropriation of a trade

secret is complete upon the "disclosure or use of a trade secret of another without

express or implied consent".  D.C. Code § 36-401(2)(B).  If there was a

"misappropriation" of a "trade secret" by Mr. Draim, it was complete upon the disclosure

of that information to another without consent – whether the patent issued or not is

irrelevant.  The full extent of the disclosure was known to the plaintiffs by at least April

2003 and the plaintiffs' claim is clearly time-barred.[4]

### The July 20, 2005 Settlement Agreement and General Release

Plaintiffs argue that since Mr. Draim did not sign the July 20, 2005 Settlement

Agreement that the claims against him could not have been released because no

"compensation" was provided for the release.  While it is true that Mr. Draim did not sign

the Settlement Agreement, it was prepared so that only David Castiel would be signing

it for the various companies he controlled and Peter Sahagen would be signing it for the

various entities he controlled.  (See Settlement Agreement attached to Anderson

Declaration as Exhibit 16).  Page 2 of the Settlement Agreement states that the

individuals (including Mr. Draim) are not necessary parties to this settlement and there

---

[4] Plaintiffs claim that the May 2002 publication of the PCT application is only a "disclosure" and it does not confer any ownership rights.  They also argue that the PCT "may" be based on the application to which it claims priority but it may also be different. However, it is clear in this case that the public disclosure made in the application published in May 2002 is identical to the application filed with the PTO.  Again, it is the unauthorized disclosure of an alleged trade secret that forms the basis of a claim for misappropriation.

was no signature block in the Settlement Agreement for any of the individuals other than Mr. Castiel and Mr. Sahagen.  However, included as a part of that Settlement Agreement was a General Release whereby all claims, known and unknown, against Mr. Draim (and others) were released and discharged.  (Ex. 16, page 18/21).  Both the Settlement Agreement and the General Release recite and acknowledge that good and valuable consideration had been provided.  It is clear that Mr. Draim was a person released under the General Release, that the General Release was executed as a part of the global Settlement Agreement and that this claim was released in the General Release.

## The Dismissal of Claims in the Earlier Lawsuit

It appears that plaintiffs' counsel in this case is claiming that the Joint Pretrial Statement submitted by counsel in the earlier action is incorrect in stating that the parties had agreed to dismiss certain claims.  (Anderson Decl. Ex. 15).  However, the counsel who represented the plaintiffs in this action (defendants in the earlier action) acknowledged in his opening statement before Judge Facciola during the trial on April 18, 2006 "the other issues in this case have gone by the board."  (Transcript 4/18/2006, pg. 8, attached as Exhibit A).  There is no real dispute that in the earlier action plaintiffs asserted various claims against Mr. Draim, including a claim under the D.C. Trade Secrets Act, and that they agreed to dismiss those claims in return for Mr. Draim dismissing his claims for rescission and for an equity interest in VGHI.  The reassertion of those claims once Judge Facciola denied their post-trial motion is further evidence of their bad faith and improper motive in filing this action.

## CONCLUSION

For the reasons stated in the opening papers and for the reasons stated above,

Mr. Draim respectfully requests that the Court find that this action was filed and

maintained in bad faith under D.C. Code § 36-404 (1) and order the parties to comply

with Local Civil Rule 54.2 in an effort to agree on the amount of the fees to be awarded.

JOHN E. DRAIM

By Counsel

TROUTMAN SANDERS, LLP
1660 International Drive, Suite 600
McLean, Virginia  22102
(703) 734-4356

By:    ___/s/ John F. Anderson____
        John F. Anderson
        (D.C. Bar No. 393764)