# EXHIBIT A

COPY

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| John E. Draim | Docket No. CA 01-2690 JMF |
| Plaintiff | |
| | Washington, D.C. |
| vs. | Tuesday, April 18, 2006 |
| | 9:38 a.m. |
| Virtual Geosatellite Holdings, et al. | |
| Defendants | |

Transcript of Bench Trial
Before the Honorable John M. Facciola
United States Magistrate Judge

APPEARANCES:

For the Plaintiff:      John F. Anderson, Esq.

For the Defendant:      David Taylor, Esq.
                        Thomas E. Patton, Esq.

Reporter:               WILLIAM D. MC ALLISTER, CVR-CM
                        Official Court Reporter
                        Room 4806-B
                        333 Constitution Avenue, N.W.
                        Washington, D.C. 20001-8306
                        (202) 371-6446

Reported by Voice Writing and transcribed using SpeechCAT

Pages 1 through 171

2

1          P R O C E E D I N G S
2      THE CLERK: Civil Action 01-2690, John B. Draim
3  versus Virtual Geosatellite Holdings, et al.  John F. Anderson
4  for the plaintiff.  David Taylor and Thomas E. Patton for the
5  defendants.  This is a bench trial.
6      THE COURT: Good morning, everyone.
7      MR. ANDERSON: Good morning, Your Honor.
8      MR. PATTON: Good morning, Your Honor.
9      THE COURT: Are you ready to proceed?  We will hear
10 the opening statement for the plaintiff.
11     MR. ANDERSON: Good morning, Your Honor.  I'm John
12 Anderson here on behalf of the plaintiff, John E. Draim.
13     After several years and much back and forth, all that
14 remain for trial here today is a single fairly straightforward
15 claim by Mr. Draim against the corporate defendant for
16 approximately $82,000 for patents that issued since May of 2000
17 and for which he has not been paid.
18     Mr. Draim has agreed to forgo his claims against Mr.
19 Castiel and forgo his other claims against the corporate
20 defendants, and Mr. Castiel and the corporate defendants have
21 agreed to drop all of their affirmative claims against Mr.
22 Draim leaving the sole issue for the court to decide.
23     The facts relating to this single claim are for the
24 most part undisputed, Your Honor.  The evidence we will present
25 today to support our claim will consist of the testimony of Mr.

3

1  Draim and four exhibits that we have marked, exchanged with the
2  other side, and have not been objected to by the defendants.
3       Exhibit 1 is going to be the consulting agreement
4  that was entered into in November of 1992 under which Mr. Draim
5  worked for several years before he had became an employee of
6  the companies.
7       Exhibit number 2 are defendant's responses to
8  requests for admissions in which they admit that Mr. Draim
9  became an employee in 1997, that there was no written
10 employment agreement and that the amounts Mr. Draim was to be
11 paid for assigning his patents increased from $2000 to $2500
12 for patent applications and from $10,000 to $12,500 for patents
13 when they issued.
14      Exhibit number 3 is going to be our request for
15 admissions that were dated in January of 2006 and we've
16 attached the copies of the 12 patents that have issued since
17 May of 2000 in which Mr. Draim is named inventor and for which
18 he has not been paid.
19      Exhibit 4 is going to be the defendant's responses as
20 to those requests for admissions in which they admit that
21 they're copies of the patents, that Mr. Draim is an inventor
22 and that no payment has been made to Mr. Draim for those
23 patents since they issued.
24      Mr. Draim will testified that he worked as a
25 consultant for the corporate defendants in Mr. Castiel's

companies from November of 1992 to July of 1997. During that time he was paid on an hourly basis.

He also agreed to a assign his rights in the inventions in which he conceived during the terms of that consulting agreement for a payment of $2000 for a patent applications and $10,000 upon the issuance of each patent. Those amounts could be determined by the number of inventors that were listed in either the application or the patent that eventually issued from those applications.

In July of 1997 the consulting relationship ended and Mr. Draim became an employee. He was paid a salary, an annual salary of $72,000 and he also agreed to assign his inventions in return for the payments that we described above, that is, the $2000 for patent applications and $10,000 upon the issuance of the patent.

In 1999 his salary increased and the payment for the patent bonus increased as well from 2000 to 2500 for applications and from 10,000 to 12,500 for patent issuances.

Mr. Draim left his employment with Mr. Castiel's companies in May of 2000. At the time he left his employment there were various patent applications that were still pending that named him as an inventor.

12 patents have issued based on those applications since May of 2000 of which Mr. Draim is the named inventor and for which he has not been paid. The total amount of these

1  unpaid payments that we believe Mr. Draim is entitled to is
2  $82,291.69 plus interest.
3          At the end of the evidence, we'll ask the court to
4  enter a judgment in that amount.
5          Thank you.
6          THE COURT:  Counsel.
7          MR. TAYLOR:  Good morning, Your Honor.  My name is
8  David Taylor.  I am counsel for the defendants, the remaining
9  defendants in this case.
10         Mr. Draim would have you believe that this is a very
11 simple case.  There was a contract.  It was breached.  Money is
12 owed and the amount is as stated.  Nothing could be further
13 from the truth.  This case is much more complicated than that.
14         Had it been tried in all of its facets, nuances and
15 with all of its witnesses, it would have become very clear that
16 there was a much more complex situation here.
17         As it relates specifically the remaining issue in the
18 case, however, we have admitted that they were patents which
19 were issued.  We have also admitted there were multiple named
20 inventors on those patents.
21         You will hear testimony from Dr. Castiel that at
22 various times patent bonuses were paid to Mr. Draim and that on
23 occasion he was paid a full either application or patent bonus
24 of either 2500, well, 2000 or 2500, 10,000 or 12,500 depending
25 on the timing, even though there were multiple inventors.  In

6

1  other words, he was overpaid because the usage, custom and
2  usage in the company at the time was when Mr. Draim submitted
3  an invoice, it was paid and the understanding was that they
4  would settle up later on differences between what was paid and
5  what might have actually been owed.
6        There is another issue which needs to be addressed
7  and that is the division of patents by the patent office
8  itself. When an application is made for a patent, it is made
9  in what's called a provisional patent application.
10       On occasion the examiner at the patent office divides
11 that application for a patent into multiple applications and
12 assigns them new application numbers.
13       He may say, for example, if there are 20 claims on a
14 patent, he may say, well, I'm going to assign divisional
15 application number XYZ to your claims, 1 through 7 and 9
16 through 12 and I'm going to assign different application number
17 to claims 8 through 10, et cetera.
18       That happened on four occasions in the multiple
19 applications that were made here and it is defendants' position
20 that the agreement between the parties and the understanding
21 and the custom and usage in the business generally is that when
22 you agree to pay for a patent application you pay for that
23 application, not the four applications that the patent office
24 may break it down into later.
25       And you pay for a patent which is on the invention

7

1  and the provisional patent for the four which may ultimately
2  result from the patent office's division.
3          Furthermore and most importantly, it is defendants'
4  position that under District of Columbia law, a party who
5  breaches an agreement or contract or a duty is not entitled to
6  the benefits of that same agreement.
7          You will hear testimony today that Mr. Draim did
8  leave the company on May the 24th.  He also joined VGS, the
9  company formed by Peter Sahagen, Neel Howard, Tom Quinn and a
10 number of other former either investors in or employees of Dr.
11 Castiel's company.  They formed that company for the sole
12 purpose of stealing, and I use that word knowing what it means,
13 stealing the inventions and the company owned and brought to
14 fruition by Dr. Castiel.
15         There were multiple trials in the State of Delaware
16 in which it was determined that through the ruse of a reverse
17 merger, Mr. Sahagen had tried to steal Dr. Castiel's company.
18 That was undone by the Delaware courts.
19         Mr. Draim joined that company, was aware of those
20 proceedings and participated with them in the conspiracy to
21 steal both the technology and the company.  Therefore, he has
22 violated the terms of his consultant agreement.  He has
23 violated a duty to his for employers.  He has violated the D.C.
24 Uniform Trade Secrets Act and there will be testimony that he
25 has violated -- that he has misappropriated and converted

8

1  personal property in the form of computers and computer
2  software.
3          As Mr. Anderson has stated, the other issues in the
4  case have gone by the board.  But one of the issues of which
5  Mr. Draim raised in his initial complaint was for a rescission
6  of his assignment of patents to the Castiel companies on the
7  grounds that he had been promised something that was not
8  delivered to him.
9          Interestingly, in that complained he never asked for
10 specific performance.  If he had been promised something, he
11 never tried to get that which he had been promised.  He simply
12 went straight for rescission.
13         You will hear testimony today that he was induced to
14 bring a lawsuit with the specific intent to gain, regain
15 control over patents of which he was a, you will hear
16 testimony, a minor player and through that, to gain control of
17 those patents.
18         Thank you, Your Honor.
19         THE COURT:  Call your first witness.
20         MR. ANDERSON:  Mr. Draim.
21         Your Honor, I have our four exhibits in a notebook I
22 could hand to the court.
23         THE COURT:  Please.
24         MR. ANDERSON:  And I also have a notebook for the
25 witness.

9

1       THE COURT: Thank you.

2       JOHN EMORY DRAIM, PLAINTIFF'S WITNESS SWORN

3              DIRECT EXAMINATION

4 BY MR. ANDERSON:

5 Q.  Mr. Draim, would state your full name for the record?

6 A.  My name is John Emory Draim.

7 Q.  Where do you reside, Mr. Draim?

8 A.  9310 Teleford Court, Vienna, Virginia.

9 Q.  How old are you, Mr. Draim?

10 A.  78 years old.

11 Q.  Would you tell the court a little bit about your formal

12 education after high school, please?

13 A.  I attended and graduated from the Naval Academy in

14 Annapolis and was later sent by the Navy to a number of post

15 graduate schools.

16 Q.  When did you graduate from the Naval Academy, what year?

17 A.  In 1949.

18 Q.  And you say you went to some other postgraduate studies.

19 Where were they?

20 A.  At the Naval postgraduate school, Monterey, California,

21 and twice at MIT in Cambridge, Mass.

22 Q.  Did you received a masters from MIT?

23 A.  Yes, I did.

24 Q.  When was that?

25 A.  That was around 1956.