# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC.,<br>A Delaware Corporation,<br><br>and<br><br>VIRTUAL GEOSATELLITE LLC, a<br>Delaware Limited Liability Company,<br><br>Plaintiffs<br>v.<br><br>John E. DRAIM, an individual,<br><br>Defendant. | **MOTION FOR RECONSIDERATION**<br><br>**IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:06cv01373 (JR) |

The Plaintiff hereby respectfully requests that this court reconsider, and vacate, its Order Granting Defendant's Motion "as conceded" by Ellipso, granted June 28, 2007 and deny Defendant's Motion for Summary Judgment.   A Memorandum of Law and Points of Authorities in Opposition to Defendant's Motion for Summary Judgment is hereby submitted.

BY: counsel

/s/ David Bogart Dort

David Bogart Dort, DC. Bar No. 465,728

**Dort IP PLLC**
**(Rubinstein Law Group, P.C.)**
2020 14th Street N, Suite 700
Arlington, VA 22201
Telephone:   (202)-423-1085
Facsimile:    (202)-318-7729
Email: ddort@dort.com; ddort@rublaw.com
Attorneys for Plaintiff,
Ellipso, Inc.
Virtual Geosatellite LLC

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC.,<br>A Delaware Corporation,<br><br>and<br><br>VIRTUAL GEOSATELLITE LLC, a<br>Delaware Limited Liability Company,<br><br>          Plaintiffs<br>      v.<br>John E. DRAIM, an individual,<br>          Defendant. | **MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND POINTS AND AUTHORITIES**<br><br>Case No. 1:06cv01373 (JR) |

## MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendant, John E. Draim, is not entitled to summary judgment in the above captioned case as the Defendant has failed to show that there is no genuine issue of material fact regarding his alleged misappropriation of trade secrets pursuant to DC Code §36-404(1). Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56.* In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). As shown by the cases and analysis recited below, there are still definite questions of material fact when considering only a few undisputed facts in the light most favorable to Ellipso, and therefore Summary Judgment must be denied.

The Defendant has not been released from this action by previous litigation or a settlement agreement between Ellipso and a third party. The subject matter that Ellipso alleges that the Defendant misappropriated for his own patents was a trade secret at the time of the Defendant's alleged misappropriation, and Ellipso is not barred from the three-

year statute of limitations (§DC Code 36-404) from bringing the present action against the Defendant.

**BACKGROUND AND RELEVANT FACTS**

In a complaint filed in DC Superior Court on July 20, 2006 ("the Complaint") the Ellipso parties (herein "Ellipso") alleged that the Defendant's actions, primarily in the form of claiming intellectual property belonging to Ellipso as his own, and transferring that intellectual property to a third party, and then procuring patents on that intellectual property (particularly, but not limited to, US Patent 6,701,126, herein the '126 patent), constituted trade secret misappropriation under DC Code §36-404 ("the Act").  Thus, independent of any actions of a third party, the Defendant's alleged trade secret misappropriation of Ellipso's intellectual property has forced Ellipso to perform  worldwide "locate and recover operations" for its misappropriated intellectual property, at great expense.  Further, Ellipso contends that it has lost business opportunities due to the Defendant's alleged trade secret misappropriation.

In response to a denied Motion to Dismiss, the Defendant was invited by this Court to file a Motion for Summary Judgment to expedite the matters that had been asserted in the Defendant's Motion to Dismiss.  In summary, in the Motion for Summary Judgment, the Defendant asserted that: a) the technical subject matter set forth in the Complaint was not a "trade secret" under the Act as it had been revealed to the public in the form of Ellipso's FCC application and Ellipso's various presentations and lectures; b) that even if the subject matter set forth in the Complaint was a trade secret, Ellipso was barred by the statute of limitation of three years from discovery of the misappropriation or reasonable diligence, because Ellipso's counsel in a previous case had seen the Defendant's patent applications (as early as approximately April 24, 2003).  Further, the Defendant asserted that: c) he had been released by Ellipso in a settlement agreement of July 20, 2005 with third parties, and d) that the trade secret cause of action had been dismissed with prejudice in a previous cases between the parties.

On June 28, 2007, this Court granted the Defendant's Motion for Summary Judgment of May 15, 2007 "as conceded" by the Plaintiff, due to the Court's Order that the Plaintiff would not be granted additional time to answer the Defendant's Motion for Summary Judgment in the expanded thirty day period agreed to by the parties on April 12, 2007.  However, with evidence that Ellipso was not served by the electronic delivery system, this

court invited Ellipso to file a Motion for reconsideration of the "as conceded" order of June 28, 2007 in response.

For the reasons stated below, the Defendant is not entitled to Summary Judgment.  The Defendant has not been "released" by any settlement agreement, and there was no estoppel or dismissal with prejudice for the asserted trade secret issues in the previous litigation between the parties. There are clearly remaining issues of material fact regarding the Defendant's alleged trade secret misappropriation and it is not time-barred by the three-year stature of limitations.

However, even if the court grants the Defendant's Motion for Summary Judgment (and denies the previously filed Plaintiff's Motion to Vacate), the defendant is not entitled to fees or costs in this case as it was filed (and maintained) in good faith.

I. The Defendant has not been released by any settlement agreement (Defendant's Exhibit  and/or previous judgments or litigation

a) The Defendant clearly has not been released by any previous settlement agreement.

The Defendant has not been "released" by Ellipso in any settlement agreement for the causes of action brought in the present action.  Under District of Columbia law, a valid and enforceable contract requires both: (1) intention of the parties to be bound; and (2) agreement as to all material terms. *Perles v. Kagy*, 473 F.3d 1244, 1249  (D.C. Cir. 1/16/07). Clearly, neither of these conditions have been met by either Ellipso or the Defendant.  Of all of the Defendant's defenses raised in the Summary Judgment Motion of May 15, 2007, the assertion that he has been released by any settlement agreement is the most bizarre and erroneous.   Herein included as Ellipso's Exhibit 2 (which differs notably from the Defendant's Exhibit 16) is a settlement agreement achieved in litigation between the Ellipso companies and the Sahagen companies.  The Defendant does not deny that he did not execute his signature on the settlement agreement, but yet asserts that he was released by the agreement between Ellipso and the Sahagen Parties, executed on July 20, 2005, and therefore was not obligated by the terms of the agreement to release Ellipso in his own previously pending lawsuits (which he did not).

-4-

Clearly, this assertion is not only completely erroneous, the assertion that the Defendant has been released but that Ellipso has not, flies in the face of all contract law, as there was clear no intention of the Defendant to release Ellipso, and he certainly did not agree to the material terms of the settlement agreement, mainly, he did not dismiss the previous litigation as required by the settlement agreement.

The terms of the agreement required that any party who wished to obtain the benefit of mutual waivers and releases of claims must execute the agreement.  Defendant, as he concedes, did not.  Article I, Section 1.1. of the agreement clearly states that:

> each and every party to this Settlement Agreement who is a party in one or more of the Actions, shall, through their counsel of record in said Action, execute Stipulations of Dismissal with Prejudice in the form deemed appropriate by their counsel.

It is undisputed that the Defendant did not execute the July 20, 2005, agreement either by signing the agreement or by dismissing the prior action against Ellipso. Therefore, because Draim was not a party to the Settlement Agreement, Ellipso did not release Draim in the Settlement Agreement of July 20, 2005.   Any other conclusion would result in the absurd reasoning that the Defendant would have the right to sue Ellipso at any time for any reason, but that the Defendant was protected from any actions brought by Ellipso. Further, it is notable that an examination of the original documents shows that there was a signature page for John Draim that clearly remains unsigned in direct contradiction to the assertion in the Defendant's Reply of July 12, 2007 that the Settlement Agreement was exclusively for Castiel and Sahagen parties.  The undersigned can only speculate that Defendant's misunderstanding of the Settlement agreement of July 20, 2005 can only be attributed as a result of receiving an incorrect or incomplete copy of the original document in July, 2005.  In fact, Exhibit 16 of the Defendant's Motion for Summary Judgment was not the entire document as executed! Exhibit 2 of Ellipso's Opposition shows that there were an additional 7 pages (not including the unexecuted pages left unsigned by the Defendant).  Defendant's assertion in his Reply of July 12, 2007 was simply wrong; the settlement agreement was clearly intended for third parties (including the Defendant who did not execute his signature page): third parties Neil Howard, Jill

1
2
3
4
5
6

Stern and Richard Inciardi signed the settlement agreement and originally there was a signature page for the Defendant to sign. The 26 page settlement agreement is herein included as **Exhibit 2**. Finally, the Defendant's assertion that "not all parties are necessary" clause, does not result in the conclusion that parties who do not execute the settlement are protected by the agreement only that the exchange of promises between Ellipso and the Sahagen parties could proceed in the absence of all third parties becoming signatories thereto.

7
8
9
10

Moreover, and alternatively, Defendant's argument that, even absent his signature, Ellipso's claims against him were waived but that he did not waive his claims against Ellipso only serves to demonstrate that Ellipso's alleged waiver was made in the absence of any consideration and agreement on the material terms and thus is unenforceable.

11
12

    b). The Defendant was not released from the trade secret misappropriation allegations in the present case by any estoppel, settlement or judgment in previous litigation.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Defendant mistakenly alleges that he has been released by all the claims in the present case because of a pre-trial statement(s) (written and oral) made by Ellipso's counsel in a previous litigation *Draim v. Virtual Geosatellite Holdings, Inc. et al.* (1:01 cv 2690). The claims in the present case were not released or dismissed with prejudice by Ellipso in the previous litigation. In the Motion of May 15, 2007 and Reply of July 12, 2007, the Defendant asserted that this court should consider the pre-trial statement(s) and/or a mere passing statement regarding evidence as the "equivalent" of a dismissal with prejudice barring Ellipso from bringing the present action. The statement by Mr. (David J.) Taylor in a previous litigation between the parties that "the other issues in this case have gone by the board" cannot seriously be considered to have the effect of a "dismissal with prejudice" as argued by the Defendant. Ellipso asserts that the Defendant's assertion that a statement by Mr. (David J. ) Taylor to Judge Facciola in the opening moments in the previous litigation on April 18, 2006, that the "other" issues "have gone by the board" in response to Judge Facciola's inquiry, cannot be serious be considered as a dismissal with prejudice by Ellipso.[1]

27
28

---

[1] The undersigned is startled that a seasoned Federal Court litigator would represent to this court that absent a settlement agreement that such a statement(s) would be believed to have a binding effect as an executed settlement agreement with the effect of a dismissal with prejudice, particularly in view of the importance of settling any previously claims regarding the intellectual property disputes.

Even if Mr. Taylor's statement was considered part of the trial as an opening statement, it would not have the effect of creating any kind of dismissal with prejudice or estoppel on the unresolved issues brought in the present case.  An opening statement of counsel is ordinarily intended to do no more than to inform the jury [fact-finder] in a general way of the nature of the action and defense so that they may better be prepared to understand the evidence. *Boland v. Love,* 222 F.2d. 27, 35-36 (DC Cir. 1955). Thus, Mr. Taylor's statement to Judge Facciola in the previous litigation between the parties that particular issues had "gone by the board" as well as the pre-trial joint statement by the parties should be considered no more than remarks indicating which evidence would be presented during the trial in the previous litigation.  Thus, Mr. Taylor's statement cannot be considered more than an introduction to the evidence to be presented for the trial and is clearly not "dismissal with prejudice" or estoppel as the Defendant would have this court believe.

Moreover, even if Mr. Taylor's words did have the effect of dismissing the claims at issue here, the dismissal only could have been without prejudice.  Pursuant to Federal Rule of Civil Procedure 41(a)(1), a dismissal which is not expressly designated as being with prejudice is deemed to be without prejudice.[2]

Furthermore, as shown in Judge Facciola's Conclusion of Facts and Law of May 15, 2006 in a previous case between the parties, (**Exhibit 4**) he simply issued no conclusion of any kind related to any the affirmative defense allegations of Trade Secret misappropriation which had been clearly raised as an affirmative defense.   Judge Facciola only reached conclusions of fact and law with regard to the patent bonus issue and the civil conspiracy defense.   The lack of fact-finding by Judge Facciola on Ellipso's trade secret affirmative defense is problematic to the previous case as well as this one.  Ellipso has taken special precautions to determine if there were any trade secret misappropriations that were asserted in the previous litigation between the parties, but cannot determine because Judge Facciola (so far) has not made any finding of facts

[2]  Not to mention that, at the time of Mr. Taylor's statements, Draim did not join in the voluntary "dismissal" as is required by Rule 41(a)(1) nor did the Court enter an order accepting the dismissal of the claims in question.

related to any of the Defendant's alleged trade secret misappropriation in the previous litigation, although it was clearly raised at trail as an affirmative defense.  Thus, contrary to Defendant's assertion, Judge Facciola's judgment (and subsequent refusal to grant a new trial or admit post-judgment evidence of trade secret misappropriation) of May 15, 2006 supports the assertion of the fact that the present action was filed in good faith, as Ellipso requires a finding of fact on all of its asserted trade secret misappropriation claims against the Defendant (and not just the ones asserted in the present case).

**II. There are questions of material fact whether the Defendant misappropriated Ellipso's trade secret material to obtain his own patent.**

In order to maintain an action for misappropriation of trade secrets and overcome the Defendant's Motion for Summary Judgment, Ellipso must show that there exist a question of material fact that: a) the material misappropriated by the Defendant was a trade secret (at the time of misappropriation); b) that the Defendant was in a position to misappropriate such trade secrets; and c) Ellipso was damaged as a result of the Defendant's misappropriation.

a) 1). The material in the '289, '215. '025 and '624 applications, as well as the applications themselves are trade secrets.

The applications and the material therein in the '289, '215, and '025 (which was subsequently filed as the '624 application) applications were trade secrets.  This court has stated clearly that a trade secret can exist, even if the "combination" of information may be derived from publicly available material.  *Catalyst & Chemical Services v. Global Ground Support,* 350 F.Supp.2d 1, 12 (D.D.C. 2004).  It is widely accepted that a trade secret can exist in a combination of characteristics each of which, by itself, is in the public domain, and even if all of the information about those characteristics is publicly available, a unique combination of that information, which adds value to the information may qualify as a trade secret. *Id.*   Prior to the grant of patents, trade secret protection applies if the matter otherwise meets trade secret standards. Consequently, wrongful use or disclosure of secret matter (which will be revealed by the patent) prior to the issuance of the patent is actionable.  Recovery for such wrongful use or disclosure, moreover, is entirely

independent of whether the patent application ripens into a valid patent, or the patent subsequently proves unenforceable. *Milgrim on Trade Secrets* § 8.02. Finally, this court has stated that the question of the existence of a trade secret is a question that is best left for the fact-finder and "whether certain information constitutes a trade secret ordinarily is best 'resolved by a fact finder after full presentation of evidence from each side.'" *DSMC, Inc. v. Convera Corp.***,** 479 F. Supp. 2d 68, (DDC. 4/20/2007)

It is clear in this case that Ellipso's '289, '215, '025 (and subsequently '624) patent applications were, at least partially, derived from at least a combination of its own resources, including the FCC license application of January 8, 1999, lectures, presentations, however, clearly none of the material in these applications was included singly in any so-called public in any one document, such as the FCC license or in a previous published patent application. For example, most of the Figures in the '289 and '215 applications were not included in the January 1999 FCC application. Even the Defendant stated in his own '126 patent (Exhibit 7) that  the FCC licenses were the "based on the teachings" of US Patents 5,845,206 and 5,957,409[3] which were Ellipso's previously issued patents (see Col. 3, lines 9-17).

Further, Ellipso made reasonable efforts to maintain its trade secrets in the form of confidential patent application that it alleges were misappropriated by the Defendant (see Declaration of David Castiel).  In particular, Ellipso did not make the ("combination of trade secret material" in the '289, '215 and '025) patent applications public until their publication (through the publication of the '624 application on February 14, 2002 making the material in the '025 application public) and subsequently, October 31, 2002 (making the material in the '289 and '215 applications public through the '500 child application). Confidential patent applications are not only valuable for the material disclosed therein, but are also highly valuable as documents regarding market position and establishing the extremely important "right to exclude" granted by the patent (if issued).  The (now) eighteen months between the filing of a priority document and the publication of a patent (35 USC §122) gives the filer of a patent application an extremely important advantage

---

[3] Defendant contends that he "disclosed" the FCC application of January 8, 1999 to the USPTO by the reference to the FCC application.  However, it was not considered as a "reference" by the USPTO, nor submitted in an Information Disclosure Statement, nor "incorporated by reference."

over a competitor in the race to acquire important intellectual property rights, particularly in the present case where an intellectual property dispute under arise 35 USC §135 and may involve a costly and lengthy delay in the granting of intellectual property rights. Although it may have been theoretically possible to derive all the material in the '289 and '215 applications from a combination of previously available public sources, Ellipso asserts that it does not need to show that material in the patent applications and that the Defendant used his relationship with Ellipso to misappropriate that material. It is clear that Ellipso's confidential (not yet published) patent applications included the "value added" combination of characteristics defined in *Catalyst & Chemical Services*, in addition to being trade secrets themselves.  The '289 and '215, and especially the '025 and '624 patent applications included material that is not included in the FCC application of January 8, 1999 (Defendant's Exhibit 16), the publication. Clearly, Ellipso's '289 and '215 patent application themselves were undisputed as confidential material had great value of their accord, even if they included information that had been publicly available from a variety of Ellipso's sources.

Thus, the Defendant's argument that some, if not all, of the trade secret material in the ''289, 215 (and other) applications were disclosed in the FCC application of January 8, 1999 and various other lectures, presentation and publications, is therefore unavailing. The confidential '289, '215, '025  (and '624) applications were trade secrets and had value as trade secrets until the applications were made public, not as Defendant asserts, when some of the subject matter was derivable, with a measure of research from a variety of Ellipso's publicly available (yet, still proprietary) materials.  Thus, for example, the Defendant would have been able to copy the technical and claimed subject matter from the '289 and '215 applications on October 31, 2002 as the material passed into the public realm on that day.  However, clearly Ellipso would have had a 25-month advantage in the vital race to be granted a patent on the claimed material.  However, the Defendant apparently misappropriated the material (for this particular trade secret) on November 13, 2000, cutting Ellipso's natural legally-entitled trade secret advantage by almost two years (and subsequently being granted a patent first).

The Defendant appears to ignore the definition of a trade secret as defined in the Act, to argue that material related to the inventions that may be claimed in a patent application, of the fact that an unpublished patent application in this case is clearly a trade secret. The "trade secret value" of the technical and claimed subject matter of a confidential patent application can only be ferociously apparent to the owner of a patent application who discovers that a former employee has subsequently claimed (not merely disclosed) and patented those inventions all for himself.  In the present case, the trade secret value, as defined by the Act, is made more apparent by considering the astronomical odds that each and every element of **all 27 claims** of the Defendant's '280 application would be fully anticipated by a single Ellipso patent application that happened to be filed 7-1/2 months before the Defendant's departure.

   b).  The Defendant's relationship with Ellipso allowed him to misappropriate Ellipso's trade secrets.

 The Defendant was in a position to misappropriate Ellipso's trade secrets as a former employee/consultant, and admitted that he may have misappropriated trade secret material belonging to Ellipso.  During the trial of April 18, 2006, in a trial in a previous litigations between the parties, *Draim v. Virtual Geosatellite Holdings, Inc. et al.* (1:01 cv 2690), the Defendant admitted to potentially misappropriating material belonging to Ellipso.  Ellipso's Exhibit 1 illustrates the dialogue in the trial of April 18, 2006 on page 43:

> **Q:** (Mr. Patton): So, let's get this straight, sir. In November, in October and November of 2000 you processed and filed as sole inventor a patent that you had assigned to SRA intended to interfere with the patent you had co-invented previously when you were with Dr. Castiel's company, correct, sir?
> **A**: (Mr. Draim): Yes.

Thus, from the Defendant's own words, Ellipso asserts there exists a genuine issue of material fact with regard to the trade secret misappropriation by the defendant as the Defendant admitted to assigning co-inventions with Dr. Castiel to a third party.  Ellipso asserts that the Defendant's statement under cross-examination leaves a clear question

of material fact as to the extent and nature of his misappropriation of Ellipso's trade secrets.

 The Defendant's admission to this fact is not in dispute; however it was unclear as to which technical subject matter he was referring to and therefore there is insufficient evidence to find that a genuine material of fact does not exist with regard to the present action.

Thus, Ellipso concludes that the Defendant, more likely than not, would not have filed, or been able to file without significant expense and research, at least the '280 application and claim material covered in Ellipso's previously filed '215 application (as evidences by the USPTO reexamination order of May 16, 2006, herein included as Ellipso's **Exhibit 3**) for himself, nor would he have been able to assign other inventions to a third party namely, from material in the '025 application,  from Ellipso's publicly available material had he not been privy to the confidential patent application information.

c) As a result of the Defendant's alleged trade secret misappropriation, Ellipso has been damaged.

It is undisputed that the Defendant was granted a patent on the subject matter in the '280 application.  It is also undisputed that the Patent Office initially stated that claims 1-27 of the '126 patent appeared (under 35 USC §102(e)) to be anticipated by Ellipso's previously-filed, but subsequently granted, '613 patent, which issued from the '289 and '215 applications (Exhibit 5).  Thus, the Defendant was granted a patent right on material included in Ellipso's patent application (Ellipso's patent rights) that was a trade secret misappropriated from Ellipso.

On May 16, 2006 (and again on August 30, 2006, but not included as an exhibit), the '126 patent which had been issued to the Defendant, and assigned to a third party, was ordered re-examined by the USPTO, in view of Ellipso's '613 patent.   On March 12, 2007, the Examiner initially rejected each and every claim of the '126 patent as anticipated by Ellipso's '613 patent under 35 USC §102(e).  The rejection in the form of a Patent Office "Office Action" is included as Plaintiff's **Exhibit 5**, which shows that each and every claim of the Defendant's '126 Patent was (initially) rejected in Reexamination as anticipated by Ellipso's '613 patent, indicating that (the alleged) trade secrets included

in the '613 patent (the '215 application) may have been misappropriated, claimed by the Defendant, and then assigned to a third party.

Further, Exhibit 6 shows that the Defendant declared (under penalties defined in 28 USC §1001) that he was the "first, sole and original inventor"…"of the subject matter claimed" (not "disclosed") in the '126 patent.

Ellipso asserts that the initial Reexamination decision (**Exhibit 3**) and subsequent rejection of each and every claim of the '126 patent (**Exhibit 5**) under a prior-filed Ellipso patent application, is clearly illustrative that a genuine material fact exists in the present case as to whether the Defendant misappropriated material that should be considered as trade secrets and damaged Ellipso, namely the content of Ellipso's confidential patent applications, in the form of both technical subject matter (disclosure) and claimed subject matter (the claims).  The decision(s) by Commissioner for Patents are illustrative that Ellipso clearly had a reason to have a good faith belief that its trade secrets had been misappropriated by the Defendant, fraudulently claimed for himself as sole inventor under US Patent law (Exhibit 6), and subsequently assigned to a third party.

III. The Plaintiff's Cause of Action under DC Code §36-404 is not barred by the three-year statute of limitations.

       a). Ellipso is not barred from bringing the present action by the three-year statute of limitations as it was unaware of the particulars and extent of the Defendant's alleged misappropriation prior to March 2, 2004 (and subsequently April 18, 2006).

Defendant is correct that it provided documents to Plaintiff's Counsel in a previous case between the parties on April 24, 2003 (see Defendant's Exhibits 3-9) and Ellipso has not made any "blatantly false allegations" regarding this disclosure.  In contrast, Ellipso asserts that: a) the Defendant is clearly incorrect as to the implications of providing "attorney's eyes only" documents to the Plaintiff's counsel in a previous case; and 2) that the extent and particularity of the Defendant's trade secret misappropriation could not have been discovered prior to the issuance of the '126 patent, as the Defendant had until the issuance of the '126 patent to remedy the mistake that Ellipso had to undertake to recover its intellectual property. In general, if a party misappropriates a trade secret and files a patent application on it, until a patent right to the misappropriating party is granted, the extent of the trade secret misappropriation cannot be known.  In the present case,

1
2
Ellipso does not seek to recover from the Defendant for "revealing" the trade secret[4], but rather for the alleged conversion of the trade secret.

3
4
5
6
7
8
9
10
11
Ellipso attempts to recover from the Defendant under several theories.  Firstly, Ellipso seeks damages for the loss of its intellectual property and the costs of recovering such intellectual property, if possible.  Secondly, Ellipso seeks damages for the losses associated with the Defendant representing that the misappropriated intellectual property was his to assign to a third party (and their subsequent representations).  Thirdly, Ellipso seeks to recover for the Defendant's unjust enrichment for assigning trade secret material to a third party.  The first two recovery theories are clearly not barred by the statute of limitations, as Ellipso could not have known the nature and extent of these until at least the Defendant was given an (allegedly misappropriated) property right on March 2, 2004, on being granted a first patent.

12
13
14
15
16
17
18
Because Ellipso may have been aware from the Defendant's disclosure of (or prior to) April 24, 2003 in a previous case that the Defendant had been compensated for assigning the misappropriated trade secret material to a third party, Ellipso will concede that recovery from the Defendant for unjust enrichment prior to July 20, 2003 (but not for unjust enrichment after July 20, 2003) is barred by the statute of limitations.   However, recovery under the first two theories is clearly not barred by the three-year statute of limitations.

19
20
21
22
23
First, Ellipso asserts that it is clear that it would not have been able to "copy" the claims of the Defendant's '280 application from the documents provided to Ellipso attorneys in the previous case, as "attorneys eyes only,[5] would clearly have not allowed Ellipso to see the files, nor pursue any administrative remedy to recover its own intellectual property that had been misappropriated, *inter alia*, in the Defendant's '280 application, namely an "interference" with (at least) the '280 application under 35 USC §135 et seq..

24

25

26
27
[4] The Defendant's position that Ellipso would have known the extent of the trade secret misappropriation on April 24, 2003 is not relevant to the present action. The Defendant's position would only be relevant if Ellipso sought to recover from the Defendant for **revealing** trade secrets (therefore destroying them) rather than misappropriating them and "**converting**" them.

28
[5] The Defendant's patent applications were not provided to Ellipso's patent counsel at the time, Scott Harris of Fish & Richardson of San Diego, CA.

1
2
3
4
5
6
7
8
9

Further, the Defendant mistakenly states that Ellipso knew of **the** alleged misappropriation as early as 2001.  Ellipso may have known of a misappropriation by the Defendant, but not the particular misappropriation(s) set forth in the complaint of July 20, 2006.  The Complaint does not allege a general trade secret misappropriation that it may have known of prior to July 20, 2003, but only those in which Ellipso became aware of after July 20, 2003.  Further, the Defendant's clear statements in the trial of April 18, 2006 (see Exhibit 1), brought his particular trade secret misappropriations to light.  Namely, that he assigned co-inventions made with Ellipso employees (in the form of the '289, 215 and '025 applications) and already assigned to Ellipso companies to SRA, after leaving Ellipso and filed for patent applications on them.

10
11

b) Defendant misstates that "the patent applications filed by Mr. Draim in 2000 and 2002 were *all* publicly available in 2002.

12
13
14
15
16
17
18
19

The Defendant mistakenly asserts that Ellipso knew of the nature and extent of the Defendant's trade secret misappropriation due to the publication of the PCT applications in May, 2002.   A PCT application *may* be based on, but need not be, the same as, an (United States) application to which it claims priority.  Further, the claims of a PCT application may be completely different than those of a corresponding or priority US Application.  As the Defendant may well be aware, the PCT publications of May 2002, clearly may not have been informative as to the extent of the Defendant's misappropriation.

20
21
22
23

Further, a PCT application does not confer patent ownership and/or rights, as it is not a patent application in any particular country but rather a method for preparation for filing in many countries.  A Published PCT application is therefore only *disclosure and does not confer ownership rights on the Applicant until* a "national stage entry" application has been filed in a specific country.[6]

24
25
26
27
28

---

[6] Once again, the Defendant's position that Ellipso would have known the extent of the trade secret misappropriation from the PCT applications, is based on the theory that the Defendant destroyed the trade secret through disclosure, not Ellipso's allegations that the Defendant converted the trade secrets as claiming them as his own and misappropriating intellectual property rights.  Thus, Ellipso could not have known the extent of the Defendant's misappropriation from the PCT Applications published in May, 2002 (and subsequently).

1
2
    iii)    The Defendant's Exhibits 10 and 12-14 illustrate that the Plaintiff was not aware of the particular misappropriation and extent of the Defendant's trade secret misappropriation as late as April 24, 2003.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
The Defendant's own Exhibits number 10 and 12-14 clearly undercut his argument that Ellipso knew exactly which trade secrets, in both the form of disclosed and claimed technical subject matter, had been misappropriated the Defendant.  Defendant's Exhibit 10 (letters from David Castiel to John Draim, December 2002) illustrates that Ellipso had thought that the Defendant had misappropriated technical subject matter from *US Patent 5,957,409 (*issued September 28, 1999*)*, an allegation that has clearly not been asserted in the present action.   Defendant's Exhibits 12, 13 and 14 also support that conclusion that Ellipso thought that the Defendant had misappropriated technical subject matter from US Patent 5,957,409.   US Patent 5,957,409 issued on September 28, 1999, and was filed based on a priority dating back to March, 1995.  Whether or not the Defendant was entitled to appropriate material from the '409 patent in his own patent application(s) is not the subject of the present action, was not set forth in the Complaint, and therefore must be considered irrelevant to the determination of whether Ellipso filed this action within the required three-year statute of limitations of discovery or discovery with reasonable diligence.

17
18
**Conclusion**

19
20
21
22
23
24
25
26
27
Ellipso asserts that the above arguments, the Plaintiff's Exhibits, and even most of the Defendant's Exhibits are supportive that a genuine issue of material fact still exists with regard to the Defendant's alleged trade secret misappropriation, and that such an action is not barred by the statute of limitations.  Thus, Ellipso respectfully requests that this court reconsider its decision of June 28, 2007, that the Motion for Summary Judgment by the Defendant was "conceded" by plaintiff, and vacated, and that the Defendant's Motion for Summary Judgment be denied and the present action proceed to discovery.  If the Motion for Summary Judgment is denied, Ellipso will amend its complaint on the sole concession that recovery for the Defendant's unjust enrichment prior to July 20, 2003 is time-barred.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BY: counsel

/s/ David Bogart Dort

David Bogart Dort, DC. Bar No. 465,728

**Dort IP PLLC**
**(Rubinstein Law Group, P.C.)**
2020 14th Street N, Suite 700
Arlington, VA 22201
Telephone:    (202)-423-1085
Facsimile:    (202)-318-7729
Email: ddort@dort.com; ddort@rublaw.com
Attorneys for Plaintiff,
Ellipso, Inc.,Virtual Geosatellite LLC