UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., <br> a Delaware Corporation, <br><br> and <br><br> VIRTUAL GEOSATELLITE LLC, <br> a Delaware Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN E. DRAIM, <br><br> Defendant. | Civil Action No. 1:06cv01373 (JR) |

**DEFENDANT'S RESPONSE TO MOTION FOR RECONSIDERATION
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

John E. Draim ("Mr. Draim"), by counsel, submits this response to the "motion for reconsideration in opposition to motion for summary judgment" filed by the plaintiffs on August 17, 2007. As shown below, this "motion for reconsideration in opposition" is not only untimely, it is without merit. The opposition fails to identify any specific facts establishing a genuine issue for trial on any of the multiple grounds upon which this case should be dismissed. This belated and insufficient opposition only supports Mr. Draim's motion for summary judgment and his request for an award of attorneys fees and costs under D.C. Code § 36-404.

**PROCEDURAL BACKGROUND**

Following the entry of the Final Judgment on May 23, 2006 in the earlier consolidated action before Magistrate Judge Facciola, plaintiffs filed this complaint on July 20, 2006, reasserting a claim for misappropriation of trade secrets under D.C. Code

§ 36-401 et seq. Mr. Draim filed and served a motion to dismiss on August 9, 2006 through the Court's electronic case filing system [4]. Plaintiffs filed their opposition to the motion on August 22, 2006 [6] and Mr. Draim filed a reply on August 28, 2006 [7]. On March 20, 2007, the Court entered a Memorandum Order denying the motion to dismiss [8]. Mr. Draim filed his answer to the complaint on April 2, 2007 [9].

On April 12, 2007, an initial scheduling conference was held with the Court. During that conference counsel discussed the filing of a motion for summary judgment in order to present the Court with a record on which it could decide the issues that were presented initially in the motion to dismiss. Pursuant to the discussions at the conference on April 12, Mr. Draim filed and served a motion for summary judgment and for an award of attorneys fees and costs through the Court's electronic case filing system on May 15, 2007 [10]. In accordance with Local Civil Rule 56.1, the memorandum in support of the motion for summary judgment included a statement of material facts containing 22 paragraphs of facts with citations to the record. A courtesy copy of the motion for summary judgment was delivered to the Court and a copy of the cover letter referring to the motion for summary judgment was mailed to plaintiffs' counsel at the address provided in the pleadings.

Even though the Court previously had provided plaintiffs with an enlarged period of thirty days to respond to the motion for summary judgment, no opposition was filed. On June 25, 2007 (forty-one days after the motion for summary judgment was filed and served), Mr. Draim filed a notice of failure to respond to motion for summary judgment [11]. Plaintiffs then filed a motion to extend period for opposition until July 20, 2007, stating that counsel had not received electronic service of the motion for summary

judgment filed on May 15, 2007 [12]. Mr. Draim responded to the motion to extend on June 26 pointing out that the motion for summary judgment was filed in accordance with the discussions held during the conference the previous month; that it was filed and served electronically through the Court's electronic case filing system in the same manner as the other pleadings previously filed in this case; and, that plaintiffs' counsel was sent a copy of the cover letter to the Court indicating that a motion for summary judgment had been filed [13]. On June 28, 2007 the Court entered a Memorandum and Order denying the motion to extend time, granting the motion for summary judgment and allowing the plaintiffs until July 9, 2007 to file a response to the motion for attorneys fees [14, 15].

On July 9, 2007, plaintiffs filed a motion to vacate the Order granting the motion for summary judgment [16] and an opposition to the motion for attorneys fees and costs [17, 18]. On July 12, 2007, Mr. Draim filed a reply in support of his motion for attorneys fees and costs [19] and an opposition to the motion to vacate order [20]. On July 13, 2007, the Court entered an Order denying the motion to vacate but providing that the plaintiffs could file a motion for reconsideration containing the memorandum they would have filed in opposition to the motion for summary judgment [21]. This Order provided that Mr. Draim did not need to respond to the motion for reconsideration unless the Court called for a response. Thirty-five days after the entry of the Order allowing the filing of a motion for reconsideration, plaintiffs filed a "motion for reconsideration in opposition to motion for summary judgment" [22]. On August 22, 2007, the Court entered an Order calling for a response to the motion for reconsideration in opposition to motion for summary judgment within 30 days from the date of the Order [23].

3

## ARGUMENT

**The motion for reconsideration in opposition is untimely**.

On July 13, 2007, the Court entered an Order allowing plaintiffs to file a motion for reconsideration containing the memorandum they would have filed in opposition to the motion for summary judgment [21]. The plaintiffs had previously requested an enlargement of time to July 20, 2007 to file an opposition to the motion for summary judgment or 15 days from the granting of the motion [12].

The time period for filing a motion for reconsideration is ten days. Fed.R.Civ.P. 59(e); W.C. & A.N. Miller Companies v. United States of America, 173 F.R.D. 1, 3 (D.D.C. 1997); Derrington-Bey v. District of Columbia, 39 F.3d 1224, 1225 (D.C. Cir. 1994). The Court granted plaintiffs leave to file a motion for reconsideration on July 13. Plaintiffs did not file their motion for reconsideration until August 17 – thirty-five days after the Order was entered allowing the filing of a motion for reconsideration and twenty-eight days after the previously requested time for filing an opposition (July 20). As shown by the belated filing of this opposition, the granting of the motion for summary judgment after plaintiffs failed to file a timely response has not altered their cavalier approach to the Court's rules and procedures. Under these circumstances, this motion could, and should, be denied as untimely.

**Plaintiffs have failed to set forth specific facts showing a genuine issue for trial on any of the grounds contained in the motion for summary judgment.**

The motion for summary judgment filed by Mr. Draim contained a ten-page statement of material facts section with 22 paragraphs referring to the two declarations and 21 exhibits identified in the declarations filed with the motion. Those facts,

4

declarations and exhibits established that plaintiffs' claims were time-barred, that plaintiffs had publicly disclosed the inventions claimed in the subject patent applications, that Mr. Draim had been released of all claims by the plaintiffs and that plaintiffs had previously brought and dismissed the same misappropriation of trade secrets claim against Mr. Draim.

In order to overcome summary judgment, plaintiffs are required to identify "specific facts showing there is a *genuine issue for trial.*"  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original).  The plaintiffs must do more than "simply show there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  A party opposing a motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing there is a genuine issue for trial.  Fed.R.Civ.P. 56, Celotex Corp. v. Catrett, 477 U.S. 317, 321-26 (1986).

Plaintiffs' opposition in this case does not contain a separate, concise statement of material facts as to which they contend a genuine issue exists with references to any part of the record as required by the Local Rules.  As such, Mr. Draim's statement of material facts may and should be deemed admitted.  Local Civil Rule 56.1.  As shown below, to the extent the opposition addresses the substantive issues presented in the motion for summary judgment, it merely contains bare, unsupported allegations and denials without any reference to specific facts or evidence that would support those allegations and denials.

**The basis of plaintiffs' trade secret claim.**

Plaintiffs filed this complaint reasserting a cause of action against Mr. Draim for "theft of trade secrets" under D.C. Code § 36-401 et seq. Plaintiffs claim that Mr. Draim misappropriated their trade secrets when he applied for and obtained U.S. Patent No. 6,701,126 (the '126 patent) and when that patent application was assigned to Mr. Draim's new employer.[1] A copy of the '126 patent is attached as Exhibit 8 to the motion for summary judgment. This patent issued from application number 09/709,280 filed on November 13, 2000 (the '280 application). The invention described in the '126 patent is a constellation of non-geostationary satellites arranged in a manner that would provide the potential of having 2880 active slots without interfering with the existing geostationary satellite ring. This constellation has been called the COBRA system.

Plaintiffs claim that Mr. Draim misappropriated trade secrets contained in provisional patent application number 60/153,289 (the '289 provisional application) filed on September 10, 1999 and provisional patent application number 60/180,025 (the '025 provisional application) filed on February 3, 2000. (Draim Decl. ¶¶ 2, 3 and MSJ Exhibit 1 and 2).[2] Even after the filing of this motion for summary judgment, plaintiffs have not

---

[1] While the complaint mentions other patent applications filed by Mr. Draim on behalf of his employer, the complaint acknowledges that they were either made public more than three years before the filing of this action or were abandoned. Complaint ¶¶ 22 and 25 (the '047 application was published on September 19, 2002) and ¶¶ 24-26 (the '411 application was published on September 26, 2002 and abandoned). Plaintiffs state on page 3 of the opposition that their claim relates "particularly, but not limited to" the '126 patent but they do not identify or address any other patents or patent applications.

[2] Plaintiffs' opposition also refers to the non-provisional applications that were filed based on the '289 provisional application and the '025 provisional application **after** Mr. Draim left his employment with the plaintiffs. There is no allegation that Mr. Draim had access to these non-provisional patent applications that were filed in September 2000 and February 2001 -- months after he left the plaintiffs' employment in May 2000. Complaint ¶¶ 10, 17, 23.

6

identified any specific information in either of these two provisional patent applications that they claim was a trade secret. Instead, they merely state that the patent applications themselves were "trade secrets" and that while "it may have been theoretically possible to derive all the material in the '289 and '215 applications from a combination of previously available sources," they do "not need to show that material in the patent applications" because they include a "value added" combination of characteristics. (Opposition, pg. 10). However, "simply asserting that a trade secret resides in some combination of otherwise known information by itself is not sufficient to satisfy the requirements for a trade secret." Catalyst & Chemical Services, Inc. v. Global Ground Support, 350 F. Supp.2d 1, 9 (D.D.C. 2004), *citing*, Strategic Directions Group, Inc. v. Bristol-Myers Squibb Co., 293 F.3d 1062, 1065 (8th Cir. 2002).

Before examining each of the four grounds upon which summary judgment is appropriate in this case, two other items relating to the "trade secret" claim should be noted. First, plaintiffs acknowledge that the patent applications containing the alleged trade secrets were published on October 31, 2002 and that Mr. Draim would have been able to copy that information as of that date. (Opposition, pg. 10). Given that this "trade secret" information has been in the public domain for over four years, there is no reason why plaintiffs could not set forth with specificity the elements of the claimed trade secret.

The second point is that even though plaintiffs sued Mr. Draim again on July 20, 2006, claiming that he misappropriated trade secrets in applying for and assigning the '126 patent to his new employer, **a year before this lawsuit was filed**, plaintiffs agreed that Mr. Draim's new employer is the "lawful owner of the patents, claims and protectable improvements" set forth in the '126 patent. In the Acknowledgement of

7

Ownership section of the Settlement Agreement that plaintiffs entered into in July 2005, the plaintiffs agreed that the "Sahagen Parties" are the lawful owners of the patents described in Exhibit A, which lists the '126 patent as a patent owned by the Sahagen Parties. (MSJ Exhibit 16).

> **The trade secret claim is barred by the statute of limitations.**

Plaintiffs admit in their opposition that in April 2003 (more than three years before this action was filed) documents were provided to their counsel during discovery in the earlier matter that contained copies of the '280 patent application filed with the U.S. Patent and Trademark Office by Mr. Draim's new employer on November 13, 2000 (along with the file history) and the corresponding International Patent Application that was published and available to the public in May 2002. (MSJ Statement of Facts ¶ 6). Plaintiffs also do not dispute that on December 26, 2002 they wrote a threatening letter to Mr. Draim concerning the filing of the November 13, 2000 patent application (MSJ Exhibit 10) and that the pretrial statement they filed in the earlier action on April 24, 2003, specifically referred to the November 13, 2000 patent application claiming that Mr. Draim had used plaintiffs' proprietary information in submitting that application and that he had sold that information to his new employer (MSJ Exhibit 14, ¶¶ 28-30).

Plaintiffs argue that even in light of these admissions, some element of their misappropriation claim is not time-barred because they were not aware of the full extent and particularity of the misappropriation until the applied for patent actually issued. Plaintiffs claim that since the '126 patent did not issue until March 2, 2004, this case is not "entirely" untimely. A review of the definition of "misappropriation" contained in the

8

D.C. Trade Secrets Act and the law relating to the accrual of a cause of action reveals the lack of merit to this argument.

D.C. Code § 36-401 (2)(B) defines misappropriation as the "[d]isclosure or use of a trade secret of another without express or implied consent." There is nothing in the D.C. Trade Secrets Act that supports the argument that when a party misappropriates a trade secret and files a patent application using that information, the cause of action for misappropriation does not arise until the patent issues.[3] The cause of action for misappropriation accrues upon the disclosure or use of the alleged trade secret and not upon the issuance of any property right or other benefit based on that disclosure or use.

D.C. Code § 36-406 provides that "[a]n action for misappropriation must be brought with 3 years after the misappropriation is discovered or, by exercise of reasonable diligence, should have been discovered." There is no dispute that in 2002 plaintiffs were aware that Mr. Draim had filed a patent application on November 13, 2000 allegedly disclosing and using their trade secrets -- as shown in their threatening letters and the allegations in their earlier lawsuit for misappropriation of trade secrets against Mr. Draim. (MSJ Ex. 10-12). In addition, in April 2003 a copy of the '280 patent application and prosecution file (including the International Patent Application that had been published on May 23, 2002) was produced in discovery.[4] While plaintiffs actually

---

[3] At one point plaintiffs state that they are not seeking to recover for revealing trade secrets by using them in filing patent applications – however that is precisely what they allege in the complaint and is the only basis for asserting a misappropriation of trade secrets claim – the disclosure or use of the trade secret.

[4] Plaintiffs argue that the International Patent Application may be different from the U.S. Patent Application, but they do not show that there was any difference between the two in this case. As shown in Exhibits 8 and 9 to the motion for summary judgment, there are no actual differences between the International Application and the issued patent.

acknowledge on page 14 of their opposition that they were aware of the alleged disclosure and use of their trade secrets by April 24, 2003 and admit that a least a portion of their trade secret claim is barred by the statute of limitations, they still argue their claim is not barred because the '126 patent did not issue until March 2004.

The law in the District of Columbia concerning the accrual of a cause of action for a misappropriation of trade secrets claim and the law relating to the running of the statute of limitations is clear. Under D.C. Code § 36-406, a cause of action for misappropriation of trade secrets accrues when the disclosure or use of the trade secret is discovered or, by the exercise of reasonable diligence, should have been discovered. The law is equally clear that once there is knowledge of **some injury**, its cause and related wrong doing, the cause of action exists and the statute of limitations begins to run. It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises. Any appreciable and actual harm from the complained of conduct establishes a cause of action upon with the client may sue. Colbert v. Georgetown University, 641 A.2d 469, 473 (D.C. App. 1994); Knight v. Furlow, 553 A.2d 1232, 1235 (D.C. App. 1989); Baker v. A.H. Robins Co., 613 F. Supp. 994 (D.D.C. 1985).

In this case, there is no dispute that more than three years prior to the filing of this action the plaintiffs were aware that Mr. Draim had filed the '280 patent application and they were aware of the contents of that application. In fact, more than three years before this action was filed, plaintiffs filed an earlier lawsuit against Mr. Draim alleging misappropriation of trade secrets relating to the '280 patent application. As such, the plaintiffs were aware of the "disclosure or use of a trade secret of another without

10

express or implied consent." The issuance of the '126 patent based on that application does not form a new cause of action for misappropriation or allow a new statute of limitations to begin. Since this complaint was filed more than three years after the plaintiffs discovered the disclosure and use of the alleged trade secret, this claim is barred by the statute of limitations and must be dismissed.

**Plaintiffs have failed to establish the existence of a trade secret.**

Plaintiffs opposition argues that a trade secret **can** exist even if it is a "combination" of information that may be derived from publicly available material and that patent applications **may** contain information that is entitled to trade secret protection if the matter otherwise meets trade secret protection. (Opposition pg. 8). However, notably absent from the opposition, is any **specific** description of what information in the patent applications the contend constitutes the alleged trade secret; how that trade secret was not disclosed in the FCC application and various articles and presentations made public by the plaintiffs; how that trade secret derives actual or potential independent economic value from not being generally known to or ascertainable by another; what reasonable efforts were used to maintain its secrecy; and, how Mr. Draim used that specific information. In opposing a properly supported motion for summary judgment, the opposing party cannot merely rely on its allegations and unsupported argument but is required to present affirmative **evidence** showing a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). To preclude summary judgment, the non-movant must proffer **evidence** on which a jury could reasonably return a verdict for the non-moving party. Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In opposition to Mr. Draim's properly supported

11

motion for summary judgment, the plaintiffs have not presented any specific facts or evidence to support the existence or misappropriation of any trade secrets.[5]

At best, the opposition states that information contained in the provisional patent applications **may** be entitled to trade secret protection but they do not attempt to show what specific information in those patent applications is entitled to trade secret protection.[6]  In addition, Mr. Castiel's declaration does little to help their case.  Mr. Castiel states that patent protection was a critical part of his business plan, that the plaintiffs "attempted to keep all pending patent applications as confidential" and that "to my knowledge" the plaintiffs took "all necessary steps to not reveal the contents of confidential pending patent applications to third parties."  The issue is not whether copies of the pending patent applications were distributed publicly, but whether the inventions claimed in those applications were disclosed to the public.  The position taken by Mr. Draim in the motion for summary judgment is that the inventions described and claimed in both the '289 and '025 provisional patent applications were made public through the FCC license application and various articles and presentations made by the plaintiffs.  (MSJ Statement of Facts ¶¶ 19-22, Draim Decl. ¶ 5-9, MSJ Exhibits 17-21). As stated in Mr. Draim's declaration (and not contested by the plaintiffs), it was the practice of the plaintiffs to publicize their inventions once a patent application had been

---

[5] Plaintiffs were allowed an opportunity to file "the memorandum they would have filed in opposition to defendant's motion for summary judgment" and any additional submission by the plaintiffs relating to the merits of the summary judgment motion or an attempt to supplement their opposition based on this response would be improper.

[6] Curiously, plaintiffs state that on October 31, 2002, these applications became public and that Mr. Draim could have used any of the information contained in those applications as of that date but fail to address how this impacts the statute of limitations arguments it also makes since it became "public information" more than three years before this action was filed.

filed and the date of invention established. Draim Decl. ¶ 9. As shown in Exhibit 20, Mr. Castiel was a co-author of one of the articles describing the VIRGO system. To further rebut Mr. Castiel's statement that to the best of his knowledge his companies took all necessary steps not to reveal the contents of pending patent applications, attached as Exhibit 22 is an email from Mr. Draim to Mr. Castiel referring to Mr. Castiel's comments on an article they co-authored and that was distributed to the public at the 50th International Astronautical Congress in October 1999. As shown in the attached article, not only is the VIRGO system described in detail, references are made to the FCC filing for the VIRGO system and indicates that a U.S. Patent is pending on this "innovative" system. Like the article distributed a month later to the European Conference on Satellite Communication (MSJ Exhibit 20, Statement of Fact ¶ 21), this article describes the same satellite constellation that is claimed in the '289 provisional application.

      The motion for summary judgment establishes that the inventions claimed in the subject provisional patent applications were disclosed to the public before Mr. Draim left his employment with the plaintiffs. Plaintiffs' vague and unsupported claim that the provisional patent applications contain trade secrets because of some unidentified "combination" of publicly available information is not sufficient to overcome Mr. Draim's fully supported motion for summary judgment. In addition, plaintiffs have made no effort whatsoever to show that Mr. Draim used anything other than publicly available information when he filed for and obtained the '126 patent.

**The July 20, 2005 Settlement Agreement and General Release**

Plaintiffs characterize Mr. Draim's argument that the General Release executed on July 20, 2005 as a part of the global settlement between the Castiel and Sahagen entities released him from these claims as "the most bizarre and erroneous" because Mr. Draim did not sign the Settlement Agreement. In support of this claim, plaintiffs have attached a copy of the Settlement Agreement between Ellipso and SRA to their opposition (Opp. Exhibit 1). A review of the Settlement Agreement shows that it was to be executed by Peter Sahagen personally and on behalf of his various companies and by David Castiel personally and on behalf of his various companies. (Opp. Exhibit 1, pg. 13-16). There is no "signature page for John Draim that clearly remains unsigned" as stated in plaintiffs' opposition. Each and every signature block to the Settlement Agreement has been executed by either Peter Sahagen or David Castiel. Mr. Draim was not a party to this Settlement Agreement and neither he nor his counsel was involved in its negotiation, drafting or execution.

Plaintiffs do not contest that as a part of the global settlement with the Sahagen entities (Mr. Draim's employer) they executed a General Release in which they acknowledged receipt of "good and valuable consideration" and thereby released and discharged several entities and persons, **specifically including John Draim**, from "all actions, causes of action suits, debts… in law, admiralty or equity… whether known or unknown, from the beginning of the world to the day of the date of this release." A copy of the General Release is attached to plaintiffs' opposition as Exhibit 1, following page 16 of the Settlement Agreement. It appears that plaintiffs take the position that Mr.

Draim needed to sign this General Release and provide consideration in order for its express terms to apply to him.

As a part of the global settlement between the Castiel and Sahagen entities, there was an Acknowledgement of Ownership section (Article III) in which the Castiel entities acknowledged and agreed that the Sahagen entities were the lawful owner of the patents, claims and protectable improvements in Exhibit A. Exhibit A includes the '126 patent – the patent that plaintiffs now claim Mr. Draim obtained through the use of plaintiffs' trade secrets and assigned to his employer. (MSJ Exhibit 16). As set forth in Article IV of the Settlement (paragraph 4.1), as incident to the execution of the Settlement Agreement, the Castiel Parties were to execute this General Release fully releasing the Sahagen Parties, including claims of ownership of the intellectual property set forth in Exhibit A.

While plaintiffs are correct that a settlement agreement is a type of contract and that general principals of contract law apply to settlement agreements, there is no requirement that each person who is **released** under the terms of a settlement agreement be a signatory to the settlement agreement or a general release that is executed releasing that person. In this case Mr. Draim's employer (one of the Sahagen entities) entered into a settlement agreement with the Castiel entities under which good and valuable consideration was provided by the Sahagen entities and the Castiel entities agreed to release the Sahagen entities and several of its employees.[7] There is

---

[7] John Draim, Neel Howard and Richard Inciardi were all employees of one or more of the Sahagen entities at some point in time. It is interesting to note the difference in paragraphs 1.2 and 1.3 of the Settlement Agreement in which paragraph 1.3 relating to Mr. Inciardi indicates that he has agreed to release the Castiel parties from any and all claims and there is no such statement in paragraph 1.2 relating to Mr. Draim.

no requirement that an employee such as Mr. Draim sign a settlement agreement or provide independent consideration when his employer undertakes to settle various claims relating to his employment. The agreement between the Castiel entities and the Sahagen entities contemplated the release of those persons contained in the General Release and it was executed by the Castiel entities as a part of that binding Settlement Agreement. As such, these claims against Mr. Draim were released under the express terms of the General Release.

**Plaintiffs agreed to dismiss these claims in the earlier action.**

While plaintiffs do not dispute that they asserted the same misappropriation of trade secrets claim against Mr. Draim in the earlier action and that they agreed to the dismissal of that claim prior to trial, they are "startled" by the argument that they are estopped from refiling and pursuing these claims after they decided not to proceed to trial with them in the earlier action. The refiling of these claims after the plaintiffs agreed to dismiss them in the earlier action only goes to show the bad faith nature of this action.

As stated in paragraph 10 of Mr. Draim's statement of material facts and as shown in Exhibits 11 and 12, the plaintiffs' earlier complaints included a claim for misappropriation of trade secrets under the D.C. Uniform Trade Secrets Act. Plaintiffs do not controvert the statements in paragraph 14 of Mr. Draim's statement of material facts indicating that they agreed to dismiss their claims against Mr. Draim and to proceed to trial on the sole issue of whether Mr. Draim was entitled to payment for certain patent bonuses. They also do not contest that the Joint Pretrial Statement filed with the Court in the earlier action is correct in stating that they "agreed to dismiss the

claims asserted Draim in their complaint." (Exhibit 15). Plaintiffs also admit that their counsel told the Court in the earlier action at the beginning of the trial that the "other issues in the case have gone by the board".

Plaintiffs argue that these filings and statements should be nothing more than "remarks indicating which evidence would be presented." If plaintiffs contend that these statements merely reflect a statement concerning the evidence that would be presented at trial, then the claims asserted but not prosecuted would be dismissed "as an adjudication on the merits" pursuant to Fed.R.Civ.P. 41(b). In either case, plaintiffs are precluded from re-litigating these claims.

Plaintiffs also make the argument that Judge Facciola issued no conclusion of any kind relating to the misappropriation of trade secrets claim. A review of his Findings and Conclusions reveals otherwise. (Opp. Ex 4). As an initial matter, Judge Facciola starts his Findings and Conclusions by stating that the "consolidated cases" were referred to him for trial and that prior to trial the parties agreed to the dismissal of all claims except Mr. Draim's claim for patent bonuses. In addition, Judge Facciola found that the evidence was insufficient to show that Mr. Draim was involved in any conspiracy to destroy or steal from the Castiel entities or that Mr. Draim agreed to take part in an unlawful action. (Opp. Exhibit 4, ¶ 16).

There is no question that the claims asserted in this case were raised in the earlier action and were either dismissed or abandoned and that plaintiffs are estopped from re-litigating these claims. The filing of this action was nothing more than a tactic to attempt to force Mr. Draim to forego the judgment he obtained in the trial before Judge Facciola.

**Conclusion**

For the reasons stated in the motion for summary judgment and for an award of attorneys fees and costs and for the reasons stated above, Mr. Draim requests that the Court re-affirm the granting of summary judgment in this matter and enter an Order awarding Mr. Draim his attorneys fees and costs in accordance with D.C. Code § 36-404.

JOHN E. DRAIM

By Counsel

TROUTMAN SANDERS, LLP
1660 International Drive, Suite 600
McLean, Virginia  22102
(703) 734-4356

By:      /s/ John F. Anderson
         John F. Anderson
         (D.C. Bar No. 393764)