UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC.,<br>a Delaware Corporation<br><br>and<br><br>VIRTUAL GEOSATELLITE LLC,<br>a Delaware Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN E. DRAIM,<br><br>Defendant. | Civil Action No. 1:06cv01373 (JR) |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

John E. Draim ("Mr. Draim"), by counsel, submits this reply in support of his motion for an award of attorney's fees and costs. On November 19, 2007, the Court entered a Memorandum Order denying the plaintiffs' motion for reconsideration of the Court's June 28, 2007 Order granting Mr. Draim's motion for summary judgment. (Docket Entry 28). The Memorandum Order also allowed the plaintiffs an opportunity to file a response to Mr. Draim's pending motion for attorney's fees under D.C. Code § 36-404 to provide any support they may have for the argument that misappropriation by disclosure is a wrong separate from a misappropriation by use and that each opens its own filing window. Given the plain text of the D.C. Trade Secrets Act that misappropriation means disclosure or use and that a continuing misappropriation constitutes a single claim for the purposes of the three-year statute of limitations (D.C. Code §§ 36-401(2)(B) and 406), some support in the case law for this argument was

sought to show that it was warranted. Instead of addressing the issues raised by the Court in the Memorandum Order, the plaintiffs merely revised slightly the opposition they filed on July 9, 2007, and then attached two versions of the earlier filed opposition as Appendix A.

A review of the plaintiffs' opposition reveals that it provides no support for the novel argument that under the statutory definition that "misappropriation means disclosure **or** use of a trade secret" that a trade secret claim can be split into two separate parts, one for the use of the information and the other for the disclosure of the information, each with its own three-year statute of limitations. Given that plaintiffs' opposition is little more that a rehash of their July 9, 2007 filing, this reply will incorporate many of the same arguments raised in the reply Mr. Draim filed on July 12, 2007 (Docket Entry 19).

The overwhelming evidence shows that this claim of trade secret misappropriation against Mr. Draim was made in bad faith. Not only did the plaintiffs not have a reasonable basis for filing this claim on July 20, 2006 – two months after Magistrate Judge Facciola denied their motion for a new trial in the earlier action – the plaintiffs continued to maintain this action against Mr. Draim even after Mr. Draim presented the various bases for which this action should be dismissed (and now has been dismissed). Accordingly, Mr. Draim requests that the Court enter an Order finding that Mr. Draim is entitled to an award of his reasonable attorney's fees pursuant to D.C. Code § 36-404(1), and order a post-judgment conference in accordance with Local Civil Rule 54.2 for the parties to attempt to agree on the amount of the fees and costs to be awarded.

**Background**

As detailed in Mr. Draim's opening memorandum (Docket Entry 10), this action was filed in July 2006, soon after Magistrate Judge Facciola denied plaintiffs' post-trial motions in the earlier filed action that was tried in this Court. In their Complaint in the earlier filed action in 2001 (Exhibit 11 to the Anderson Declaration filed on May 15, 2007) plaintiffs made an identical claim to the claim asserted in this case -- that Mr. Draim had filed patent applications based on proprietary technology of the plaintiffs in violation of the District of Columbia Trade Secrets Act. The parties agreed to dismiss all claims asserted by the parties in that action except the claim of whether Mr. Draim was entitled to payment of certain patent bonuses. (Joint Pretrial Statement filed on March 17, 2006, Anderson Decl. Exhibit 15). As stated in that Joint Pretrial Statement, Mr. Draim agreed to dismiss his claims for rescission of the patent assignments and his claim for an equity interest in VGHI and, in return, the claims against Mr. Draim (including the Trade Secrets claim) were dismissed.

In their opposition, plaintiffs acknowledge that in April 2003 the documents described and attached to Mr. Draim's opening memorandum were produced in discovery in the earlier action. Similarly, plaintiffs do not dispute that there was a Settlement Agreement executed on July 20, 2005 (attached as Exhibit 16 to the Anderson Declaration) and that the Settlement Agreement includes a General Release releasing John Draim (among others) from all actions and claims, known and unknown. Finally, there is no dispute that the publications, presentations and filings attached to the opening papers were in fact, made available to the public prior to May 2000, when Mr. Draim left his employment with the plaintiffs.

Even in the face of admitting that: (1) they were aware of the disclosure of their unspecified trade secrets in the patent applications filed by Mr. Draim more than three years before this action was filed; (2) that they agreed to dismiss the earlier filed trade secret claim against Mr. Draim; (3) that they publicly disclosed the systems claimed in their patent applications once those applications had been submitted to the Patent Office; and (4) that in July 2005 a General Release was executed releasing Mr. Draim from all known and unknown claims, the plaintiffs argue that this action was filed in "good faith". They claim that this action was not filed in bad faith because: (1) an initial office action taken by the PTO in a reexamination proceeding concerning U.S. Patent No. 6,701,126 (the '126 Patent) **issued almost nine months after this lawsuit was filed** states that the claims in the '126 Patent were anticipated by U.S. Patent No. 6,954,613 (the '613 Patent); (2) that in Mr. Draim's trial testimony he admitted to assigning some unidentified "technical subject matter" that he had previously assigned to Ellipso; (3) that they "assert" the action was brought in good faith and not time-barred; and (4) no previous litigation resolved this intellectual property trade secret dispute.

## Argument

D.C. Code § 36-404 provides that reasonable attorney's fees can be awarded to the prevailing party if a claim of misappropriation is made in bad faith. The obvious purpose of this provision is that a person should not be forced to pay the legal fees incurred in defending a claim that was made and pursued in bad faith. The facts and circumstances in this case clearly reveal that the filing of this action was nothing more than a tactic to try and wear down Mr. Draim with another lawsuit in an effort to have him forego the judgment he obtained after years of litigation in the earlier action. This

4

bad faith is shown by plaintiffs asserting: (1) claims that are clearly barred by the three-year statute of limitations; (2) claims that were raised and dismissed in the earlier action; (3) "trade secret" protection to matters that they knowingly made public in publications, presentations and filings; and (4) claims that had been released.  Not only was the case filed in bad faith, but plaintiffs' failure to agree to dismiss the case after the filing of the motion to dismiss in which all of these matters were raised, shows that it was also maintained in bad faith.  Mr. Draim should not have to pay for the significant attorney's fees that were incurred in the defense of this action.[1]

### The '126 Patent and Reexamination

The argument that plaintiffs appear to be making relating to the '126 Patent is as follows.  They admit that in April 2003, during discovery in the earlier filed action, they were provided with a copy of the file history for the '126 Patent that included the patent application filed with the USPTO on November 13, 2000 and the International Patent Application relating to the '126 Patent.  (Anderson Decl. ¶ 6; Exhibit 9).  They also acknowledge that the International Patent Application was published on May 23, 2002 and was publicly available at that time.  This International Patent Application indicates as one of the Designated States (regional) a European Patent.[2]  Plaintiffs also acknowledge that on December 26, 2002, Mr. Castiel sent Mr. Draim a letter referring to the November 13, 2000, patent application that matured into the '126 Patent claiming

---

[1] While the Court has found that the plaintiffs' trade secrets claim was barred by the three-year statute of limitations, much of the opposition discusses the other grounds raised in the motion for summary judgment.  In an abundance of caution, Mr. Draim responds to each of those arguments in this reply.

[2] Plaintiffs claim that through their "investigative efforts" they learned of this fact.  In reality, a copy of this application was produced in discovery in April 2003 and it was available to anyone over the Internet after the publication date of May 23, 2002.

that Mr. Draim had "fenced" Ellipso's property and demanding that the application be assigned to Ellipso. (Anderson Decl., Ex. 10, pg. 2).

On July 20, 2006, plaintiffs filed this action reasserting a misappropriation of trade secrets claim against Mr. Draim. On March 12, 2007 (almost nine months **after the lawsuit was filed**), the PTO issued an initial office action in a reexamination proceeding concerning the '126 Patent (Opposition, Appendix A, Ex. 1). Plaintiffs claim that this initial office action somehow shows their good faith **in filing this action some nine months earlier**. Obviously plaintiffs cannot rely on a document that was not even in existence at the time the action was filed to support an argument that the action was filed in good faith. As admitted in plaintiffs' opposition, the office action indicates that the claims were "initially" rejected. The office action provides that this initial rejection can be overcome by at least two means and the patent owner was given two months to file a response.[3] This post-filing "initial" decision by the PTO as to "anticipation" of the claims in the '126 Patent in March 2007 cannot provide a good faith basis for the filing of this trade secrets claim in July 2006.

## Public Disclosure of Inventions

Plaintiffs argue that the FCC Application filed in January 1999 may not have included all the material that was included in the '289 and '215 patent applications. However, plaintiffs fail to provide any support for this claim. Plaintiffs provide no explanation of what, if any, information contained in the '289 and '215 applications was not disclosed in the FCC Application (or elsewhere) and what evidence they have that

---

[3] The patent owner (no longer Mr. Draim) did file a response to this initial office action and the reexamination process with the PTO is ongoing.

6

Mr. Draim made use of any undisclosed material. It is clear that the FCC application describes the same satellite constellation as the one claimed in the '289 provisional application including the reprints of the charts in that application. (Anderson Decl. ¶ 19; Draim Decl. ¶ 5).

Plaintiffs next argue that their admitted public disclosures of the inventions claimed in patent applications once the applications have been filed in order to attract investors, obtain academic interest and obtain a FCC license does not result in the loss of "trade secret" protection for those inventions.[4] Plaintiffs claim that Mr. Draim appears to ignore the definition of a trade secret under the Act. However, the Act clearly states that a trade secret must be something "not being generally known to, and not being readily ascertainable by, proper means by another" and it must be "the subject of reasonable efforts to maintain its secrecy." D.C. Code § 36-401(4) (A) and (B). Publishing articles describing the inventions claimed in a patent application, making presentations describing and showing the satellite systems claimed in a patent application and submitting an application to the FCC detailing the satellite system claimed in a patent application makes that information generally known and readily ascertainable to another. As such, that **public information** cannot be considered a trade secret under the Act.

---

[4] Mr. Draim has not argued that plaintiffs made the patent applications themselves public. However, the plaintiffs through various publications, presentations and filings disclosed to the public the substance of the inventions claimed in those applications. In fact, Mr. Draim has provided copies of the various materials showing that the inventions claimed in those applications were disclosed publicly. As stated by Mr. Draim (not Anderson) in paragraph 9 of his Declaration filed on May 15, 2007, while he was employed at MCHI it was common practice to write articles, give presentations and to describe publicly those satellite systems and other inventions that were the subject of patent applications filed with the USPTO.

7

**The Three-Year Statute of Limitations**

Plaintiffs admit that the patent applications relating to the '126 Patent were provided in discovery in the earlier action in April 2003 but they claim that they could not have been aware of the "extent" of the misappropriation until the '126 Patent issued on March 2, 2004. While it is true that the '126 Patent did not issue until March 2, 2004, there is no question that prior to that time plaintiffs were fully aware that Mr. Draim had filed a patent application on November 13, 2000, and that they believed Mr. Draim had "fenced" Ellipso's property by filing that application. (Anderson Decl. Ex. 10, pg. 2). In fact, the International Application was published and available to anyone over the Internet as of May 23, 2002. (Anderson Decl. Ex. 9). The materials produced in discovery in April 2003 and published in May 2002, clearly show everything that Mr. Draim was claiming as his invention in the application that eventually culminated in the '126 Patent. The fact that the patent may not have issued until March 2, 2004, does not alter the fact that the disclosure and use of the alleged "trade secret" had occurred and **plaintiffs were well aware of that use and disclosure by at least April 2003**.

Misappropriation of a trade secret is complete upon the "disclosure or use of a trade secret of another without express or implied consent". D.C. Code § 36-401(2)(B). If there was a "misappropriation" of a "trade secret" by Mr. Draim, it was complete upon the disclosure of that information to another without consent – whether the patent issued or not is irrelevant. The full extent of the disclosure was known to the plaintiffs by at least April 2003 and the plaintiffs' claim is clearly time-barred.

Curiously, plaintiffs continue to claim that the May 2002 publication of the PCT application is **only** a "disclosure" and it does not confer any "ownership rights." No

argument is presented as to why this admitted public disclosure and use in applying for a patent would not form the basis for a claim for misappropriation but the issuance of the requested patent from that disclosure would form the basis for a claim of misappropriation. This is especially troublesome since in this same opposition plaintiffs state that their claim for misappropriation is based on "Defendant's actions, primarily in the form of claiming intellectual property belonging to Ellipso as his own, and transferring that intellectual property to a third party." (Opposition pg. 3). Actions they admit they were aware of more than three years prior to the filing of this action.

Plaintiffs also argue that the PCT "may" be based on the application to which it claims priority but it may also be different. However, it is clear in this case that the public disclosure made in the application published in May 2002 is identical to the application filed with the PTO. Again, it is the unauthorized **disclosure or use** of an alleged trade secret that forms the basis of a claim for misappropriation. Whether that disclosure or use results in the issuance of a patent, the award of a contract or some other post-disclosure event does not form the basis of a new claim for relief or a new statute of limitations period.

### The Dismissal of Claims in the Earlier Lawsuit

It appears that plaintiffs' counsel in this case is claiming that the Joint Pretrial Statement submitted by counsel in the earlier action is incorrect in stating that the parties had agreed to dismiss certain claims. (Anderson Decl. Ex. 15). In support of this claim the plaintiffs refer to Magistrate Judge Facciola's Findings of Fact and Conclusions of Law (Opposition, Appendix A, Exhibit 4). As stated by Judge Facciola in those Findings and Conclusions, "[p]rior to trial, the parties agreed to the dismissal of all

9

claims except plaintiff John Draim's claim that he is entitled to the payment of bonuses for patents…." There is no real dispute that in the earlier action plaintiffs asserted various claims against Mr. Draim, including a claim under the D.C. Trade Secrets Act, and that they agreed to dismiss those claims in return for Mr. Draim dismissing his claims for rescission and for an equity interest in VGHI. The reassertion of those claims once Judge Facciola denied their post-trial motion is further evidence of their bad faith and improper motive in filing this action.

## **CONCLUSION**

For the reasons stated in the opening papers, in the reply filed on July 12, 2007 and for the reasons stated above, Mr. Draim respectfully requests that the Court find that Mr. Draim is entitled to an award of his reasonable attorney's fees under D.C. Code § 36-404 (1), and order counsel for the parties to meet within ten days to attempt to agree on the amount of fees and costs pursuant to Local Civil Rule 54.2 and to file a status report with the Court with fourteen days describing what, if any, aspects of the fee matter have been resolved.

          JOHN E. DRAIM

          By Counsel

TROUTMAN SANDERS, LLP
1660 International Drive, Suite 600
McLean, Virginia  22102
(703) 734-4356

By:     \_\_/s/ John F. Anderson\_\_\_
       John F. Anderson
       (D.C. Bar No. 393764)