## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ELLIPSO, INC.** *et al.* | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **Action No.  01 CV 06-1373 (JR)** |
| | ) | |
| **JOHN E. DRAIM** | ) | |
| | ) | |
| **Defendant** | ) | |
| _____ | ) | |

### MOTION FOR RECONSIDERATION OF ORDERS ENTERED OCTOBER 30, 2007 AND JANUARY 17, 2008 AND FOR RELIEF FROM FINAL JUDGMENT

Come Now Plaintiffs in the above-captioned action and move this Honorable Court, pursuant to Rule 59 of the Federal Rules of Civil Procedure, for a reconsideration of its previous final rulings. Plaintiffs Ellipso, Inc. *et al.* respectfully submit this Motion for Reconsideration of this Court's Orders of October 30, 2007 and January 17, 2008.  A Memorandum in Support is attached.

By:

February 1, 2008

/davidbogartdort/_____
/s/ David Bogart Dort
David Bogart Dort, DC. Bar No. 465,728
**Dort IP PLLC**
**(Rubinstein Law Group, P.C.)**
2020 14th Street N, Suite 700
Arlington, VA 22201
Telephone: (202)-423-1085
Facsimile: (202)-318-7729
Email: ddort@dort.com;
ddort@rublaw.com
Attorney(s) for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELLIPSO, INC.** *et al.*                    ) | |
|                                               ) | |
|     **Plaintiff**         ) | |
|                                               ) | |
| **v.**                                        ) | **Action No.  01 CV 06-1373 (JR)** |
|                                               ) | |
| **JOHN E. DRAIM**                             ) | |
|                                               ) | |
|     **Defendant**         ) | |
| _____) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
RECONSIDERATION OF ORDERS ENTERED OCTOBER 30, 2007 AND JANUARY
17, 2008 AND FOR RELIEF FROM FINAL JUDGMENT**

Come Now Plaintiffs in the above-captioned action and move this Honorable Court,

pursuant to Rule 59 of the Federal Rules of Civil Procedure, for a reconsideration of its previous

final rulings. Plaintiffs Ellipso, Inc. *et al.* respectfully submit this Motion for Reconsideration of

this Court's Orders of October 30, 2007 and January 17, 2008 on several grounds, one of which

is a confusion of identities of the parties in a settlement agreement cited by this Court as

justifying sanctions against Plaintiffs: see last sentence of page 3 of Order confusing the

obligations of Draim's employer with those of Ellipso (Exhibit 1). This Court is also urged to

take judicial notice of the Delaware Court Order of August 31, 2000, affirmed by the Delaware

Supreme Court in May 2001 enjoining Draim from taking the actions from which Plaintiffs

sought relief, a ruling all but ignored by this Court (see par. 12 through 16 of Plaintiffs'

Complaint, Exhibit 2) in its decision to grant Summary Judgment and later impose sanctions.

## SUMMARY OF ARGUMENT

This Court earlier ruled, and uses as a reason for imposing sanctions, the fact that Plaintiffs should not have brought suit in July 2006 against Draim for misappropriating its intellectual property (and in violation of the Delaware injunction) because they did not do so in time. There is a three-year statute of limitations imposed on a misappropriation of intellectual property by DC Code 36-404 et seq.  The court's decision should be reviewed in light of the fact that the theft of Ellipso's property, insofar as the complaint of July 20, 2006 is concerned – now supported[1]- could not have been consummated until Draim's application for patent was granted (on March 2, 2004, see Exhibit 3).  Had Ellipso sued Draim prior to March 2004 as the Court suggests for <u>merely applying</u> for a patent, of which it did not know the specifics, Ellipso's action would have been for a different type of intellectual property misappropriation, namely improper disclosure, and not "conversion."   In both its ruling of timeliness and fees and costs against Ellipso, this court has completely failed to address the difference in what the Plaintiff's cause of action would have been against the Defendant, prior to March 2, 2004.  Until a patent application is granted in the form of a patent and it can be established that "transfer" or the conversion of property has occurred, no action can or should be brought as there are no substantial damages to a plaintiff for conversion, as Ellipso did not bring an action against the Defendant for "revealing" a trade secret, another form of misappropriation.  This Court ruled otherwise: that Ellipso, since it suspected attempted misappropriation of its technology – the "threatening letters" of December, 2002, (which clearly show that the Plaintiff did not know the exact nature and the extent of the misappropriation in the Draim '126 patent) cited in the Order- should have brought

---

[1] The "patent conversion" for which Ellipso brought this action, namely patent '126, was rejected in Reexamination by the US Patent and Trademark Office in several actions including its final determination on November 8, 2007 on the basis if being a copy of  Ellipso's subsidiary Virtual Geo's patent '613. Of note is the fact that MJ Facciola

suit then, despite the fact that the letters did not address the particular conversion in the complaint in the present case .  Unlike physical objects such as jewelry for which a suspicion of misappropriation may be sufficient to bring suit, a patent not yet granted <u>does not exist</u> until it is granted and a mere application and suspicions do not rise to the level of harm unless the misappropriation is in the form of improper disclosure, which it was not in the present case. Ellipso's actions have therefore been conservative and measured and it is not until it could categorically establish that Draim misappropriated its technology, that it sought relief, only after the USPTO had granted reexamination of Draim's '126 in view of the previously filed Ellipso '613 patent.  This Court should not punish the victim of misappropriation perpetrated by Draim for this measured and careful approach.

Other arguments advanced by this Court to justify the dismissal of Plaintiffs' action against Draim and impose sanctions should also be reviewed:

1) that Ellipso released Draim in a Settlement Agreement that Draim refused to execute and is not bound to in clear conflict with contract law requiring the agreement of <u>two </u>parties to an agreement, not just one;

2) that if said Settlement Agreement is in effect and thus protects Draim from any action by Ellipso, then Draim should have sought recovery of his "patent bonuses" not from his purported releasor, but from his Employer Sahagen as stipulated by this same agreement at 1.2 – erroneously cited in the Order as meaning Ellipso[2]; this settlement agreement on which Draim relies requires <u>Sahagen </u>to satisfy Draim, not MCHI, a subsidiary of Ellipso and Draim's former

---

awarded a bonus to Draim for '613, although Draim had already received a bonus from Sahagen for attempting to duplicate that same '613 through the now revoked '126.
[2] Despite attempts by Plaintiff to collect from Sahagen <u>on behalf of Draim</u> (Exhibit 4), Plaintiff has received no responses from Sahagen and thus Plaintiff cannot benefit from a Settlement Agreement which Draim refused to execute.

employer. Yet Draim chose to sue MCHI for recovery of "patent bonuses" in the case cited by this Court in its ruling and now on appeal;

3) that the consideration that Ellipso received from the Settlement Agreement, a general release from Sahagen, but not from Draim, should nonetheless render Draim immune from any action from Ellipso, but not Ellipso from Draim. Following the Settlement Agreement, Draim in fact did not dismiss the action with Magistrate Judge Facciola as was required under the Settlement Agreement as he did not consider himself bound by an agreement he did not execute but still seeks here protection from that same Agreement. This lack of symmetry defies logic, is in clear contrast to established contract law in the District of Columbia, and is clearly not just;

4) that Ellipso had in a previous action before this Court asserted that Draim had *"filed several patent applications based upon purported inventions that are actually based upon the proprietary technology of the Ellipso System"*. In the instant action Ellipso sought relief for the theft of its Virtual Geo technology not that of the Ellipso system, two different sets of intellectual property assets owned by two different companies, a distinction that escaped this Court. It is not until patent '126 was issued that theft (or conversion) occurred, and the basis of the reexamination (and ultimately revocation of claims of the patent '126) established that there was misappropriation (Draim's '126 patent being improper use of the of 'Virtual Geo's previous filed '613 patent, see Exhibits 5 and 6). These rulings by the US Patent and Trademark Office (PTO) and the European Patent office (EPO) should not have been ignored when considering whether the current litigation was "vexatious."

Finally this Court failed to recognize the fact that Draim's actions, in coordination with Sahagen, were in violation of established law: the August 31, 2000 decision by the Delaware Chancery Court prohibiting Sahagen's VGS (Draim's employer of which Space Resource is the

successor) and its agents under Del. Ch. R65[3], including Draim, from "continue[ing] to assert

ownership" of Virtual Geo assets (Exhibit 7, page 16), a prohibition clearly ignored by Draim

and Sahagen by the very fact they even filed for patents using Virtual Geo technology, and

Virtual Geo's name (Exhibit 8), a fact unknown to Plaintiffs with any specificity until patent

'126 was issued in March 2004.  As a result Plaintiffs had not perfected their legal basis for

bringing action against Draim until a patent issued, in March 2004.  It did so in July 2006 well

within the statute of limitations or arguably within the statute of limitations for which it sought

relief for conversion.


**ARGUMENT**

I.    **The Judgment Should Be Set Aside**

   A.    **Standard of Review**

      Rule 59(e) of the Federal Rules of Civil Procedure permits this Court to alter or amend

the judgment entered in this case.  A Rule 59(e) motion is proper and should be granted when a

Court's judgment is based on a clear error which must be corrected to prevent manifest injustice.

Turkmani v. Republic of Bolivia, 273 F. Supp. 2d 45, 49 (D.D.C. 2002).  Here, the Court's

confusion concerning the terms of the settlement agreement between Ellipso *et al*. and Sahagen

*et al*., in addition to the Court's erroneous conclusion that Ellipso's misappropriation claim

accrued prior to the granting, in 2004, of the '126 patent to Draim, are clear errors which, if

uncorrected, will result in manifest injustice to Ellipso.

   B.    **Ellipso did not receive the Consideration it bargained for under the
         Settlement Agreement**

---

[3] Under Del. Ch. R. 65 the injunction against VGS, Inc. applies to VGS, Inc.'s "officers, agents, servants,
employees, and attorneys, and upon those persons in active concert or participation with them", hence to Draim who
joined VGS at its inception in May 2000 as a Vice President.

The Court's conclusion that the July 2005 settlement agreement (the "Agreement") prohibited Ellipso's instant action is clearly erroneous for several reasons.  First, and most obvious, the Court's citation to Paragraph 1.2 of the Agreement as requiring "Ellipso to satisfy claims made by Draim as an individual" is a clear misreading of the Agreement.  *See* Memorandum Order at 3.  Rather, Paragraph 1.2 (Exhibit 9) provides that <u>Sahagen</u>, and Sahagen alone, would bear all responsibility for compensating Draim for any claims he may have held against the Ellipso parties but were to be released via the Agreement. Thus, contrary to the Court's Order, it is remarkable, and significant, that Draim did not execute a release or dismiss his claims against the Ellipso parties as he was required to do pursuant to Paragraphs 1.1 and 4.2 of the Settlement Agreement if he were to benefit from that same Settlement Agreement.

It is precisely because of this failure to execute a release and dismiss his claims that the Agreement cannot be enforced against Ellipso by Draim.  The Court's view that despite Draim's failure to dismiss and release his claims against Ellipso, Ellipso nonetheless received sufficient consideration for its purported release of Draim via Sahagen's executed releases on behalf of his corporate entities demonstrates a fundamental misapplication of the actual terms of the Agreement.  First, there is no term in the Agreement establishing that any releases executed by a party are acknowledged to be sufficient consideration for the releases of any other party.  Thus, the Court's reliance on this fact is unfounded.

Second, the terms of the Agreement demonstrate that the Sahagen Parties, absent Draim, and the Ellipso parties promised considerable and valuable consideration in exchange for each others' releases of claims.  *See* Agreement at ¶¶ 1.1, 1.2, 1.3, 1.4, 2.1, 2.2, 3.1 and 3.2.

Again, Ellipso's release of Draim is not conditioned on the exchange of consideration with Sahagen.[4]

Third, and the most important point overlooked by the Court, is that the Agreement considers Draim as not necessary to the Agreement itself but, rather, necessary only to the settlement of the case(s) in which he is a party. *See* Agreement at 2. The import of this provision is two-fold. First, it establishes that Ellipso's release of Draim was not necessary to the Agreement and, therefore, could not have been obtained via consideration provided by Sahagen. Second, this provision establishes that, absent his dismissal and release of Ellipso, Draim was not entitled to, and could not enforce against Ellipso, the benefits of the Agreement; namely, Ellipso's putative release of Draim.[5]

While one might argue that the Agreement is not a model of clarity on these points nonetheless, the Court clearly overlooked – and, in the case of Paragraph 1.2, misconstrued – these provisions in its January 17, 2008 Order. Moreover, even if the Court is not persuaded to alter its October 30, 2007 judgment, that the Agreement does not unequivocally release Draim from the claims brought by Ellipso herein, as the Court found in its January 17 judgment, warrants that the January 17 judgment be amended to eliminate any sanction for vexatious

---

[4]    In other words, there is nothing in the Agreement to suggest that Draim was a third-party beneficiary of the Agreement. Indeed, that Draim was specifically required to dismiss his claims against the Ellipso parties clearly demonstrates that Draim was not a third-party beneficiary but, rather, an actual party to the Agreement who was expected to participate in the exchange of consideration.

[5]    This provision should assuage the Court's concern that no case law holds that "a signed release requires consideration to be enforceable." Aside from the legal truism that any legal promise – Ellipso's executed release assuredly was not a gift – requires a concomitant promise in order to be enforceable, the Agreement here, and the provision in question in particular, establishes that Draim's release was a necessary condition precedent for Draim to enforce the benefits of the Agreement against Ellipso.

litigation.  Manifest injustice will result if the Court declines to alter and amend one or both judgments given the clear errors and oversights[6].

Finally this Court should be reminded that Draim misled it by falsely claiming in his Response to Motion for Reconsideration in Opposition to Motion for Summary Judgment (Exhibit 10, page 14) and contrary to evidence (Exhibit 11) that there was '*no "signature page for John Draim that clearly remains unsigned", as stated in plaintiffs' opposition. Each and every signature block to the Settlement Agreement has been executed by either Peter Sahagen or David Castiel. Mr. Draim <u>was not a party to this Settlement Agreement</u> and neither he nor his counsel was involved in its negotiation, drafting or execution*' (emphasis added). This is simply untrue as every one of the parties, except for Draim executed the releases and all actions involving those parties, except for Draim, were dismissed. In the preamble to the Settlement Agreement (Exhibit 9) the Sahagen Parties are defined collectively and explicitly and they include Draim who refused, alone, to settle.

Article 1.1 of the Settlement Agreement states that "*Incident to the execution of this Settlement Agreement, each and every Party to this Settlement Agreement who is also a party in one or more of* the Actions [i.e. Draim], *"shall, through their counsel of record in said Action, execute Stipulations of Dismissal With Prejudice in the form deemed appropriate by their counsel*". Draim did not. Draim at best misled this Court into believing he had no part in the settlement negotiations. There was a release prepared for Draim and Draim refused to execute it despite repeated attempts (Exhibits 11 and 12). Thus Draim cannot be the beneficiary of an agreement he repudiated.

---

[6] Notwithstanding the fact that the releases under the Settlement Agreement obligated Sahagen, not Ellipso, to pay any and all consideration to Draim under 1.2, Draim never sued or even asked Sahagen to honor such clear stipulation. That was the consideration Ellipso bargained for. Draim instead, feeling protected by an agreement he

The truth is that Draim, through his counsel, actively participated in the settlement negotiations under the auspices of Magistrate Judge Facciola, and was asked to execute the Settlement Agreement. Plaintiffs during and after the execution of the Settlement Agreement, of which Draim excluded himself, acted in good faith, and Draim has not.

In sum Draim cannot have it both ways: either the Settlement Agreement is in effect and thus he should have sought payment for patent bonuses from Sahagen not Ellipso's MCHI and he would be protected from Ellipso in the instant case; or the Settlement Agreement is not in effect and he can sue MCHI for bonus payments as he did, but cannot claim protection for the misappropriation of technology he perpetrated against Ellipso.

## C.    This Action Was Timely Filed

Despite this Court's determination in its Order of October 30, 2007, Plaintiff had no basis for establishing theft of its property until the U.S. Patent and Trade Office actually issued the '126 patent to Draim in March 2004. Thus, the mere application for the a patent, which was kept secret by Draim and Sahagen, could not constitute the basis for this action as the application constituted, at best, *attempted* misappropriation and Ellipso's suspicions that the application would have consequences (the "threatening letters") could not have then supported the current claims. Defendant has argued that Ellipso should have known the tenor of documents submitted under "attorney's eyes only" and brought action against Draim when it had, or should have, discovered the attempted misappropriation of its intellectual property. Again, the mere application for a patent is not basis for legal action for conversion of a trade secret. Only the issuance of a patent establishes ownership of certain intellectual property, and if the new patent is similar, or exactly the same as that of another party, such as Ellipso's in this case -- as

---

did not sign sued Ellipso's subsidiary MCHI for payments he knew were to be paid by Sahagen pursuant that same Settlement Agreement under which he seeks protection.

determined by the PTO in March 2007 and the EPO in March 2005 (Exhibit 8) -- then a cause of action accrues and is justified.

Accordingly, given that the PTO granted the '126 patent application in March 2004, which it later revoked as a spoof of '613 in March and November 2007, Ellipso's action filed in July 2006 was clearly brought within the three-year statute of limitation. This Court should thus amend its October 30, 2007 judgment on this basis.

Moreover, even if the Court is not inclined to disturb its October 30, 2007 judgment, that the question of when Ellipso's cause of action for misappropriation accrued and the statute of limitations commenced is not as easily and unequivocally discerned as the Court declares in its January 17, 2008 judgment demonstrates that sanctions are not warranted.  If nothing else, there is, as demonstrated herein, considerable merit to Ellipso's contentions and the January 17 judgment should be amended to remove the award of sanctions to Draim who perpetrated the misappropriation Ellipso's property.

### D.      Draim is in Violation of the Delaware Injunction.

In the confusion introduced by Draim in his Motion for Summary Judgment (800 pages mostly of irrelevant documents which by its sheer volume failed to reach this counsel in electronic form on time), this Court, understandably, failed to recognize the context in which Draim's actions occurred. Following a strong-arm attempt by Sahagen to "merge" his company, VGS, with Plaintiffs' Virtual Geosatellite, LLC, the Delaware Chancery Court, on August 31, 2000, dissolved the merger and issued an injunction against VGS, and it agents, including Draim, a vice president of VGS, pursuant to Delaware Chancery Rule 65. The Delaware Supreme Court, in May 2001, affirmed the Chancery Court. In violation of the injunction and immediately following it, Draim, in conjunction with Sahagen, secretly applied for, and fleetingly obtained,

the '126 patent that mimics Virtual Geo's technology.[7] This Court should not reward, to include the award of attorney fees, such brazen behavior.

     **E.**  **The Twin Denials of Draim's Patent Requests: Revocation by the PTO and Denial of Application by the EPO Establish Misappropriation as of the Date of these Decisions not Before.**

The PTO's full scale rejection of patent '126 in **all its 27 claims** and the EPO's denials of Draim's patent applications, which were based on the same technology contained in Virtual Geo's existing patents, aptly demonstrate, by clear and convincing evidence, that Draim, among other wrongs, (1) breached his fiduciary obligations to MCHI, his former employer; (2) has unclean hands; and (3) likely was involved in the conspiracy among former employees of MCHI to misappropriate Virtual Geo's technology and breached the Delaware injunction.  Since the patents applied for are basically copies of existing patents and differ only as to the assignees (Virtual Geo vs. SRA/Sahagen), it is clear that Draim's intent when filing duplicative patent applications had only one goal: reassign the intellectual property to his new employer, Sahagen of SRA.  Draim, according to his own testimony in the MJ Facciola case cited by this Court received "bonuses" from Sahagen for these ill-fated patents. Given that evidence, it is quite likely that this Court would reconsider its decision in a broader context and reach a vastly different conclusion with respect to Plaintiffs' rights and their violation by Draim.


### CONCLUSION

Draim and Sahagen cooperated since mid-2000 to illegally acquire Virtual Geo's technology by enacting a "merger" declared illegal by the Delaware Chancery Court and

---

[7] It is not until mid 2007 that Plaintiffs were able to connect the dots and establish that Draim had filed for a "Virtual Geo" patent applications with the European Patent Office which denied it in 2005 on the basis that it was a copy Virtual Geo's own patent '613 (Exhibit 6.), an action in violation of the Delaware ruling of August 2000. Similarly

affirmed by the Delaware Chancery Court.  When this tactic failed, Draim and Sahagen engaged

in a campaign to emulate and thus dissolve the value of Virtual Geo's intellectual property by

filing, illegally pursuant to the Delaware injunction, patent applications that mimic and copy

Virtual Geo's own patents. When Plaintiffs entered into a Settlement Agreement with Sahagen,

Draim refused to become a party to the Agreement <u>or obtain the benefits thereof</u>, thus allowing

Draim to, among other things, continue his attempts to misappropriate Virtual Geo's intellectual

property.  This Court has an opportunity to correct the record.

Accordingly, based upon the foregoing, Plaintiffs respectfully request that this Court

grant the instant motion and alter and amend its October 30 and January 16 judgments as

discussed herein.


Respectfully submitted


___/davidbogartdort/_____
February 1, 2008                        BY: counsel
                                       /s/ David Bogart Dort
                                       David Bogart Dort, DC. Bar No. 465,728
                                       **Dort IP PLLC**
                                       **(Rubinstein Law Group, P.C.)**
                                       2020 14th Street N, Suite 700
                                       Arlington, VA 22201
                                       Telephone: (202)-423-1085
                                       Facsimile: (202)-318-7729
                                       Email: ddort@dort.com; ddort@rublaw.com
                                       Attorneys for Plaintiffs

---

Draim filed with the US PTO a similar application which was granted as patent '126 in March 2004 and then
revoked in 2007 in all its claims in 2007 on the basis that it was a copy of '613.

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Rule 60b Motion was served by ecf this February 1, 2008 on:

> Mary C. Zinsner
> TROUTMAN SANDERS, LLP
> 1660 International Drive, Suite 600
> McLean, Virginia 22102

/s/_____

David B. Dort

## List of Exhibits

1.      Order of January 17, 2008

2.      Complaint

3.      Patent '126 award of March 2, 2004

4.      Request by Ellipso to Sahagen to pay Draim

5.      PTO Revocation Order of '126

6.      EPO Rejection of Draim's Application

7.      Delaware Injunction and Delaware Supreme Court Affirmance

8.      Draim's Applications to EPO and PTO

9.      Settlement Agreement

10.     Response to Motion for Reconsideration in Opposition to Motion for Summary Judgment

11.     Notice that all parties, except Draim, executed the releases per the Settlement Agreement

12.     Letter of Ellipso Counsel to Sahagen Counsel re Draim's refusal to execute the releases.